1

2

3

4

5                         IN THE UNITED STATES DISTRICT COURT

6                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    DOLLAR TREE STORES INC.,                      No. C 10-00325 SI

9            Plaintiff,                            **ORDER GRANTING MOTION TO
                                                  DISMISS WITH LEAVE TO AMEND AS**
10       v.                                        **TO DEFENDANT COMERICA**

11   TOYAMA PARTNERS, LLC and COMERICA
     BANK,
12
             Defendants.
13   _____/

14
         On April 2, 2010, the Court held a hearing on Comerica Bank's motion to dismiss.  For the
15
     reasons set forth below, the Court GRANTS the motion and GRANTS plaintiff leave to amend.
16

17
                                        **BACKGROUND**
18
         From approximately August 25, 2003 through September 15, 2008, plaintiff Dollar Tree Stores,
19
     Inc. ("Dollar"), operated a Dollar Tree Store in the Mowrey Crossing Shopping Center in Newark,
20
     California.  Plaintiff ceased operations due to a construction renovation project that began in 2008;
21
     construction remains incomplete and Dollar Store is unable to resume operations at the Mowrey
22
     Crossing location.  Plaintiff alleges contract and tort claims against both the landlord Toyama Partners,
23
     LLC ("Toyama"), and the construction lender Comerica Bank ("Comerica").  Dollar has alleged the
24
     following claims against Comerica: (1) tortious interference with the original lease and amended and
25
     restated lease; (2) tortious interference with prospective economic advantage; (3) breach of the
26
     Subordination, Non-Disturbance and Attornment Agreement (SNDA); (4) breach of implied covenant
27

28

*(left margin, rotated)* **United States District Court**
**For the Northern District of California**

United States District Court
For the Northern District of California

1   of good faith and fair dealing in the SNDA; (5) lender liability/negligence; and (6) unfair competition.[1]

2       The following facts are drawn from plaintiff's complaint, as well as copies of the contracts

3   themselves.[2]  In August of 2007, Toyama sought and secured a loan from Comerica (the Building and

4   Loan Agreement, or "BLA")  to finance an improvement and redevelopment project at the Mowrey

5   Crossing center.  Compl. ¶ 7.  Prior to securing the loan, Dollar, Comerica and Toyama agreed in a

6   Subordination, Non-Disturbance and Attornment Agreement ("SNDA") that Dollar would subordinate

7   its lease to the interests of Comerica and, so long as Dollar was not in default on its lease, "[Dollar's]

8   possession of the [p]remises . . . [would] not be diminished or interfered with by [Comerica]."

9   Declaration of Brian J. Horton ("Horton Decl."), Ex. 2, at ¶ 2.  In the Building and Loan Agreement

10  itself,  Toyama warrantied to Comerica that the loan would "not result in any breach of or constitute a

11  default under any . . . lease" to which Toyama was bound.  *Id.* Ex. 1, ("BLA") at § 7.9.

12      After construction began in 2008, Dollar complained to Toyama that the construction interfered

13  with the Dollar Store's visibility, and that items such as a construction trailer, a chain link fence,

14  construction vehicles, and construction equipment interfered with its right to quiet enjoyment of the

15  premises, and accordingly, was a breach of the lease.  Compl. ¶ 17.  As part of settlement negotiations

16  stemming from this dispute, on July 18, 2008 ,Toyama and Dollar entered into an Amended and

17  Restated lease wherein Dollar agreed to vacate the premises within 60 days and for nine months, after

18  which time Toyama would provide a replacement premises in the newly constructed center.  *Id.* ¶ 8;

19  Horton Decl., Ex. 3. The settlement also provided for rent abatement and other monetary compensation,

20  including a closing fee of $500,000.  Compl. ¶ 8.  Although Comerica was not a party to the negotiations

21  _____

22      [1] Plaintiff's claims against Toyama are for breach of the amended and restated lease, declaratory
    judgment for breach of amended and restated lease, and unfair competition.  Toyama answered the

23  complaint on March 9, 2010.

24      [2] Although generally "a district court may not consider any material beyond the pleadings in
    ruling on a Rule 12(b)(6) motion," it may consider documents properly submitted with the complaint

25  and any documents not attached to the complaint if their authenticity is undisputed and the complaint
    necessarily relies on them.  *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (internal

26  quotation marks and citation omitted).  Because neither party has questioned the authenticity of the
    exhibits submitted with the motion, opposition and reply briefs (the BLA, SNDA, Original Lease,

27  Amended Lease) and the complaint relies on these documents, the Court may consider their contents
    in deciding this matter.  However, because the exhibit submitted with plaintiff's surreply is not a

28  document upon which the complaint relies, the Court sustains Comerica's objection to the evidence
    (Doc. No. 49).

1   or the new lease, it apparently agreed to either lend the money to cover the $500,000 closing fee, or

2   permitted Toyama to pay the closing fee from the already-approved loan. *Id.* After Dollar Tree vacated

3   its store, construction at the shopping center continued and the original premises became unusable. *Id.*

4   ¶ 7

5          Mervyn's, LLC, was a major lessee in the Mowrey Center with a twenty-year lease term; the

6   parties anticipated Mervyn's would continue leasing in the newly renovated center.  Under the Building

7   and Loan Agreement , both Dollar Tree Stores and Mervyn's were considered to be major leases, and

8   the BLA expressly stated that "if Mervyn's exercises its right to terminate its lease with [Toyama]" it

9   would constitute an event of default under the loan. BLA, Exs. D, E ¶ 5.  In 2008, Mervyn's terminated

10  its lease agreement and Comerica discontinued the loan disbursements in or around November of 2008.

11  Compl. ¶ 38.  The shopping center remains incomplete and Toyama has not provided Dollar with a

12  replacement store.  *Id.* ¶ 22.

13

14                                    **LEGAL STANDARD**

15         Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

16  fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss,

17  the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

18  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff

19  to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."

20  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  While courts do not require "heightened fact pleading

21  of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative

22  level." *Twombly*, 550 U.S. at 544, 555.

23         In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court

24  must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the

25  plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the

26  court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions

27  of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

28  Moreover, even in the face of factual allegations that appear unlikely, "so long as the plaintiff alleges

**United States District Court**
For the Northern District of California

facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Id.* at 1057.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

## I.    Plaintiff's third cause of action: tortious interference with contract

Under California law, to state a claim for intentional interference with a contract, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guaranty Co.,* 960 P.2d 513, 530 (Cal. 1998).  Intent to interfere with the contract does not need to be the primary purpose of the defendant's acts; rather, intent may be shown if the defendant "knows that the interference is certain or substantially certain to occur as a result of his action." *Id.* at 531 (*quoting* Rest.2d Torts, § 766, com. j, p. 12).

Comerica contends that plaintiff has failed to plead facts that would give rise to an inference that Comerica intended to interfere with Dollar's contracts.[3]  The complaint alleges Comerica's acts caused two separate contractual interferences.  First, plaintiff alleges that by financing the reconstruction project, "Comerica conspired with [Toyama] to cause a breach of the Original Lease." Compl. ¶ 39. Second, plaintiff alleges that Comerica "caused [Toyama] to breach the Amended and Restated Lease" when it failed "to provide the financing to construct Dollar Tree's Replacement Premises." *Id.*

---

[3]  As a preliminary matter, plaintiff argues the amended and restated lease is merely an amendment to the original lease.  It further argues it did not constitute a novation and that the original lease was not extinguished.  However, resolution of this issue is not necessary or proper on the facts before the Court.

**United States District Court**
For the Northern District of California

### A.    Original lease

To state a claim against Comerica, the complaint must allege facts to make it plausible that when Comerica loaned money to Toyama, it was substantially certain that Toyama would breach Dollar's right to quiet enjoyment under the original lease. *See Twombly*, 550 U.S. at 570; *Quelimane*, 960 P.2d at 531. Plaintiff's complaint alleges "Comerica knowingly and intentionally provided substantial assistance to, materially cooperated with, aided and abetted and was the proximate cause of, Toyama's acts and omissions that resulted in breach of the Original Lease and the Amended and Restated Lease," Compl. ¶ 42, and that "Comerica's acts were intentionally designed to induce Toyama to breach the Original Lease and as restated by the Amended and Restated Lease." *Id.* ¶ 43.

These conclusory allegations are insufficient to state a claim. The only facts plaintiff alleges to show intent and/or knowledge is that because the Building and Loan Agreement budgeted $1,425,000 for "building improvements" and $450,000 for "tenant improvements" for Dollar Tree, "Comerica . . . knew that the redevelopment of the Original Premises would require Dollar Tree to, at a minimum, disrupt its business operations and require it to vacate its Original Premises" and knew "it would make Dollar Tree's premises unusable." Compl. ¶ 35. However, as a condition of the loan approval, Toyama warrantied to Comerica that the loan would not result in a breach of any lease agreements. BLA § 7.9. The facts alleged in the complaint, taken with the documents themselves, do not give rise to a plausible theory that by Comerica funding a reconstruction project, it was substantially certain that Toyama would breach the parties' Original Lease agreement. Absent additional facts to show that Comerica intended to induce Toyama to breach the original lease, the complaint fails to allege a cause of action for tortious interference with that lease. Accordingly, the Court GRANTS defendant's motion to dismiss this claim, with leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

### B.    Amended lease

The complaint also alleges that "Comerica expressly consented to the Amended and Restated Lease [and a]fter its review and consent to the terms of the Amended and Restated Lease, [it] financed the $500,000 paid to Dollar Tree under the Amended and Restated Lease." *Id.* ¶ 36. It further alleges

that Comerica ceased financing "in or about November 2008" which was "approximately one month after Dollar Tree vacated its Original Premises and the Shopping Center's surrounding infrastructure was put under construction." *Id.* ¶ 37. Subsequently, Toyama informed Dollar "in spring 2009 that it was unable to continue the redevelopment." *Id.* Plaintiff's claim for tortious interference with the amended lease is thus based on the fact that Comerica allegedly knew that by ceasing funding it would prevent Toyama from providing a replacement premises as required under the new lease.

However, the complaint also alleges that Comerica ceased its funding "because the prospective anchor tenant of the redeveloped shopping center, Mervyn's, LLC, filed bankruptcy and thereafter chose to liquidate." *Id.* ¶ 38. Indeed, the Building and Loan Agreement states that "it shall be an event of default under the Agreement if Mervyn's exercises its right to terminate its lease with [Toyama]." BLA, Ex. E ¶ 5. Plaintiff has failed to state a claim for tortious interference with the amended lease because the complaint and the BLA disclose that Comerica was acting with a legitimate business purpose and was justified in discontinuing the loan disbursements. Accordingly, as pled the facts do not plausibly indicate that by ceasing funding Comerica intended to interfere with plaintiff's right to receive a replacement store under its contract with Toyama. Thus, defendant's motion to dismiss this claim is GRANTED, with leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

## II.     Fourth cause of action: tortious interference with prospective economic advantage

The elements for tortious interference with prospective relations is similar to those of tortious interference with a contract claim. Generally, a plaintiff must plead: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.,* 63 P.3d 937, 950 (Cal. 2003). Moreover, "while intentionally interfering with an existing contract is 'a wrong in and of itself,' intentionally interfering with a plaintiff's prospective economic advantage is not. To establish a claim for interference with prospective economic advantage, therefore,

a plaintiff must plead that the defendant engaged in an independently wrongful act." *Id.* at 954 (citation omitted).

Plaintiff alleges that Comerica's "intentional wrongful acts included financing Toyama's breach of the Original Lease, conspiring with Toyama to force Plaintiff to abandon the Original Premises and after this wrongful conduct had taken place, refusing to finance the construction of the Replacement Premises for Plaintiff." Compl. ¶ 49. These allegations merely restate acts of the alleged interference with the contracts themselves and are insufficient to state a claim. Accordingly, defendant's motion to dismiss this claim is GRANTED, with leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

**III.     Fifth claim for relief: breach of SNDA**

The complaint alleges that "Comerica at the time of the execution of the SNDA knew that Dollar Tree's tenancy would be disturbed by the terms of the Building Loan Agreement" and that " Comerica violated the SNDA, more specifically paragraph 3,[4] by disturbing, diminishing and interfering with Dollar Tree's possession of the Original and Replacement Premises." Compl. ¶ 57. As discussed in section I, *supra*, the facts alleged do not support an inference that Comerica knew that lending money to Toyama would cause an interference with Dollar's occupancy. On the facts alleged, the Court cannot infer that the act of lending money alone would result in a breach of this agreement. Accordingly, this claim is also DISMISSED, with leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

---

[4]  Paragraph 3 of the SNDA provides:

<u>Tenant Not to be Disturbed:</u> So long as Tenant is not in default (beyond any period under the Lease given to Tenant to cure such default) in the payment of rent to be paid under the Lease or in the performance of any of the terms, covenants or conditions of the Lease on Tenant's part to be performed, Tenant's possession of the Premises under all of the terms, covenants and conditions of the Lease and any extensions or renewals thereof which may be affected in accordance with any renewal rights therefore in the Lease, shall not be diminished or interfered with by Lender, and Tenant's occupancy of the Premises under all of the terms, covenants and conditions of the Lease shall not be disturbed by Lender during the terms of the Lease or any such extensions or renewals thereof.

United States District Court
For the Northern District of California

**IV.    Sixth claim for relief: breach of the implied covenant of good faith and fair dealing in the SNDA**

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 349 (2000). "The implied covenant imposes certain obligations on contracting parties as a matter of law - specifically, that they will discharge their contractual obligations fairly and in good faith." *Mundy v. Household Fin. Corp.,* 885 F.2d 542, 544 (9th Cir. 1989). The covenant, however, "cannot be endowed with an existence independent of its contractual underpinnings" and it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz,* 24 Cal. 4th at 349.

Plaintiff alleges that "an implied term of the SNDA was that Comerica would not finance redevelopment that forced Dollar Tree to vacate the Original Premises, and thereafter refuse to finance the construction of the Replacement Premises." Compl. ¶ 61. Plaintiff further alleges that "[t]he express terms of the SNDA contemplated that Comerica would not disturb, interfere with or diminish Dollar Tree's ability to operate a retail business at the Shopping Center." *Id.* ¶ 62.

Plaintiff's implied terms are not plausible. First, the express terms of the SNDA in fact only state that Comerica would not diminish or interfere with the tenant's possession and occupancy, and nothing in the agreement extends to a broader covenant not to interfere with Dollar Tree's ability to operate a retail business at the shopping center after Dollar Tree voluntarily vacated the original premises. Moreover, there is no justification for implying that Comerica agreed to continue financing the construction even in the event of default by the borrower. Plaintiff's allegations seek to "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement" and are inappropriate. *Guz,* 24 Cal. 4th at 349. Under this theory plaintiff may not allege that substantive duties outside the contract exist and as pled it has failed to state a claim. Accordingly plaintiff's sixth claim for relief is DISMISSED, with leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

United States District Court
For the Northern District of California

## V.     Seventh claim for relief: lender liability/negligence

Plaintiff, as a third party retail tenant, seeks to hold Comerica, the lender, liable for its injuries on a theory of negligent lending. However, "as a general rule, a financial institution owes no duty of care to a *borrower* when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991) (emphasis added).[5] Dollar has not alleged facts that indicate Comerica was more than a mere lender of money, and it is essentially arguing that Comerica owes it a greater duty under the law than it would owe to Toyama. Dollar alleges that "[m]oral and legal blame attaches to Comerica's conduct because it caused a breach of the Original Lease and thereafter caused the breach of Dollar Tree's settlement with Toyama embodied in the Amended and Restated Lease," and thus Comerica "had a moral (and legal) duty to finance the construction of Dollar Tree's Replacement Premises." Compl. ¶ 70. Plaintiff has not cited any authority in support of its negligence claim, and at the hearing on this motion, plaintiff's counsel stated that he was not aware of any cases holding a lender liable under these or similar circumstances.

In order to impose a duty of care on a third party not in privity, the Court must make "various policy considerations and balance[] such factors as '[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'" *The Ratcliff Architects v. Vanir Construction Management,* 106 Cal. Rptr. 2d 1, 8 (Cal. Ct. App. 2001) (quoting *Biakanja  v. Irving,* 320 P.2d 16, 19 (Cal. 1958)). A court should also consider whether imposition of liability would be out of proportion to fault. *Bily v. Arthur Young & Co.,* 834 P.2d 745, 761 (Cal. 1992).

---

[5]  Relying on California Civil Code § 3434, Comerica argues that it has no duty of care as a matter of law. The express language of this provision shields lenders from liability to third parties for "loss or damage resulting from the failure of the borrower to use due care in the design, manufacture, construction, repair, modification or improvement of" property. It is not clear that this provision applies to the facts alleged here because the complaint does not allege that Toyama failed to use due care in constructing the premises itself. Instead, the loss is allegedly due to the ceased funding following Mervyn's decision to liquidate.

Based on the facts alleged here, the Court finds that Comerica did not owe a duty of care to Dollar Tree. As Dollar Tree admits, under its theory Comerica would owe it a greater duty of care than Comerica owed the borrower, Toyama. There are numerous issues that factor into banks' decisions to continue or cease loaning money. The duty for which plaintiff advocates would make banks reluctant to loan money for any construction project for fear that it would incur liability from a tenant. If the law imposed on banks a duty that would require continued lending on a defaulted construction loan, the country's lending institutions would be in even greater peril than they are today. *See Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.*, 125 Cal. Rptr. 549, 552 (Cal. Ct. App. 1975) ("[A] strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure every business venture . . . [and] this policy is particularly necessary in the construction lending business where the risks are so great."). Accordingly, plaintiff has not stated a claim against Comerica for lender liability and this claim is DISMISSED. Although the Court believes it is unlikely that plaintiff can state a claim under this theory, the Court will GRANT leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

## VI.   Eighth claim for relief: unfair competition under California Business and Professions Code § 17200

Plaintiff alleges that defendant's actions "constituted unlawful, unfair and fraudulent business acts and practices pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq." Compl. ¶75. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., prohibits "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Communic'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 973 P.2d 527, 540 (Cal. 1999). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id*. at 539-40 (citation omitted). Under this claim for relief, plaintiff simply incorporates all of its previous allegations. Because the Court has dismissed all claims against Comerica, this claim is also be

DISMISSED as to Comerica, with leave to amend if plaintiff can do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss (Doc. No. 24).  Plaintiff is GRANTED leave to amend; any amended complaint must be filed no later than **May 10, 2010.**

**IT IS SO ORDERED.**

Dated: April 26, 2010

SUSAN ILLSTON
United States District Judge