IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLLAR TREE STORES INC., <br><br> Plaintiff, <br><br> v. <br><br> TOYAMA PARTNERS LLC, <br><br> Defendant. | No. C 10-0325 SI; Related Case No. C 11-2696 SI <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE; DENYING DEFENDANTS' MOTIONS TO DISMISS** |

On July 29, 2011, the Court held a hearing on plaintiff's motion to consolidate cases and defendants' motions to dismiss *Dollar Tree v. Pau et al.*, C 11-2696 SI. For the reasons set forth below, the Court GRANTS plaintiff's motion to consolidate cases, and DENIES defendants' motions to dismiss C 11-2696 SI.

**BACKGROUND**

The factual background of *Dollar Tree v. Toyama et al.*, C 10-325 SI has been set forth in detail in numerous prior orders and is hereby incorporated by reference. As relevant to the instant motions, Dollar Tree has amended the 10-325 SI complaint three times, most recently on April 5, 2011, pursuant to a stipulation by the parties. The third amended complaint added successor liability claims against defendant Capella-Mowry LLC ("Capella"), based upon Capella's acquisition of the Shopping Center.

The parties dispute when defendants Toyama and Pau disclosed to Dollar Tree that the Shopping Center would be sold to Capella, as well as when defendants produced the documents related to the sale to Dollar Tree. According to the complaint filed in *Dollar Tree v. Pau et al.*, C 11-2696 SI, Toyama entered into the Sale Agreement agreeing to sell the Shopping Center to Capella on January 18, 2011.

Compl. ¶ 32. The complaint alleges that the Sale Agreement was signed by defendant Peter Pau, on behalf of Toyama, and by Peter Pau, on behalf of Capella. *Id*. ¶ 33. Pau is both the manager of Toyama and the manager of Capella, and the complaint alleges that Pau "had complete control over the management and decision-making authority of both entities." *Id*.

The complaint alleges that the Sale Agreement (i) affirmatively obligated Toyama to settle Dollar Tree's claims and (ii) affirmatively obligated Capella to construct a store in the Shopping Center for Dollar Tree, secured by a Letter of Credit. *Id*. ¶ 38. Paragraph 7.3(b) of the Sale Agreement states,

> **Dollar Claims.**  Seller shall enter into a full settlement with Dollar Tree and shall make such cash payments required thereunder as may be required by Dollar Tree; however, it is currently contemplated that Dollar Tree will require (i) construction of its leased premises, and (ii) the posting of Letter of Credit in favor of Dollar Tree in the amount of [REDACTED], as security for such construction obligation; and upon Closing Buyer shall assume such obligations.

Compl. ¶ 38 & Ex. 2 (Sale Agreement ¶ 7.3(b)). Pursuant to Paragraphs 6.3.1(2) and 6.3.2(2) of the Sale Agreement, Toyama and Capella were required at closing to deliver an executed Assignment and Bill of Sale attached to the Sale Agreement, attached as Exhibit B to the Sale Agreement. Compl. ¶ 38 & Sale Agreement, Ex. B. The Assignment and Bill of Sale provided in part that:

> [Toyama] assigns, transfers, sets over and conveys to [Capella] all of [Toyama's] right, title and interest in, to and under . . .[t]he existing leases of any of the Land or improvements thereon ("Leases") . . .

Sale Agreement, Ex. B ¶ 1(1). The Assignment and Bill of Sale also provided that "[Capella] accepts the Leases" and "assumes all obligations under the Leases," which included Dollar Tree's Amended Lease. Sale Agreement, Ex. B ¶ 2.

Section R of Dollar Tree's Amended Lease provides in relevant part that "any successor to Landlord's interest in the Premises . . . shall, so long as Tenant [Dollar Tree] is not in material default under this Lease is beyond applicable notice and cure periods, recognize and accept this Lease and all terms, conditions, and obligations of Landlord contained herein." Compl. ¶ 41. The Amended Lease also states in relevant part, "This Lease and all of the covenants, provisions, and conditions herein contained shall inure to the benefit of and be binding upon the heirs, personal representatives, successors, and assigns, respectively, of the parties hereto . . ." Compl. ¶ 21 (Amended Lease ¶ W(16)). In addition, in Paragraph 8.3 of the Sale Agreement, Toyama represented and warranted that, as of the

2

Effective Date of the Sale Agreement, "The execution, delivery and performance of this Agreement and the Closing hereunder will not conflict with any agreement, contract or law applicable to [Toyama] nor constitute a default under any agreement or instrument to which [Toyama] is a party or by which [Toyama] or the Property are bound." Sale Agreement ¶ 8.3.

On January 24, 2011, Toyama and Capella entered into a First Amendment to the Sale Agreement ("First Amendment") in which they reduced the purchase price of the Shopping Center. Compl. ¶ 45 & Ex. 3. The First Amendment did not modify Toyama's assignment of Leases to Capella, nor did it modify Capella's assumption of all obligations under the Leases. Compl. ¶ 47 & Ex. 3. The First Amendment was signed by Peter Pau on behalf of both Toyama and Capella. Compl. ¶ 48 & Ex. 3.

On February 15, 2011, Toyama and Capella entered into a Second Amendment to the Sale Agreement. Compl. ¶ 49 & Ex. 4. The complaint alleges that "[t]he sole purpose of the Second Amendment was to revoke Toyama's obligation to settle Dollar Tree's claims and revoke Capella's obligations to construct the Replacement Premises and accept and assume Dollar Tree's Amended Lease." Compl. ¶ 49. Peter Pau signed the Second Amendment on behalf of both Toyama and Capella. Compl. ¶ 50 & Ex. 4. The complaint alleges,

> While Section 7.3(b) of the Sale Agreement stated that Toyama "*shall* enter into a full settlement with Dollar Tree," the Second Amendment, without consideration, provided that Toyama "*may, but shall not be required*, to enter into a full settlement with Dollar Tree within a reasonable time after Closing."

*Id*. ¶ 51 (emphasis in original, quoting Sale Agreement ¶ 7.3(b) and Second Amendment).

The Second Amendment also revised the Assignment and Bill of Sale to state that Toyama would assign to Capella all of Toyama's "right, title, and interest" in "[t]he existing leases of any of the Land or improvements thereon . . . but specifically excluding the Dollar Tree Lease ('Leases')." Compl. Ex. 4, Ex. B ¶ 1(1). The Second Amendment provided in the Assignment and Bill of Sale that Capella would accept the Leases, but also stated, "As set forth above, the Leases specifically exclude the Dollar Tree Lease, and Buyer does not accept or assume the Dollar Tree Lease." *Id*. ¶ 2.

The complaint alleges that "[b]y executing the Second Amendment on behalf of Toyama and Capella, Pau (i) breached Toyama's obligations in Sections R and W(16) of the Amended Lease to

3

1 ensure that any successor to the Shopping Center would accept and assume all of Toyama's obligations
2 under the Amended Lease and (ii) breached Toyama's representation and warranty to Capella in Section
3 8.3 of the Sale Agreement that the transaction would not breach any agreement by which Toyama or the
4 Property was bound." Compl. ¶ 54.

5 The complaint also alleges that "[a]t and prior to the time of closing, Toyama was unable to pay
6 its debts as they became due in the normal course of business and was insolvent under one or more of
7 the generally-accepted financial accounting tests." *Id*. ¶ 56. The complaint alleges that Toyama paid
8 the majority of the proceeds from the sale fo the Shopping Center to its mortgagor, Comerica. *Id*. ¶ 57.
9 "From the remaining proceeds of the sale of the Shopping Center, Pau (i) repaid himself [the money]
10 that he purportedly loaned to Toyama and (ii) paid claims to other creditors of Toyama." *Id*.

11 On June 3, 2011, Dollar Tree filed the complaint in C 11-2696 SI. The complaint alleges two
12 claims: (1) fraudulent conveyance under California's Uniform Fraudulent Transfer Act, Cal. Civ. Code
13 § 3439 *et seq.*, against Pau, Toyama and Capella, and (2) breach of fiduciary duty, against Pau.

14

### DISCUSSION

16 Now before the Court are three interrelated motions: (1) plaintiffs' motion to consolidate 10-325
17 SI and 11-2696 SI, (2) defendants' motion to dismiss 11-2696 SI as improperly filed, and (3)
18 defendant's motion to dismiss 11-2696 SI pursuant to Rule 12(b)(6). Defendants oppose consolidation
19 of the two cases, and argue that plaintiff never should have filed the second action and instead should
20 have sought leave to amend the complaint in the first action. Defendants also contend that plaintiff has
21 failed to state claims for fraudulent conveyance and breach of fiduciary duty in the second action.

22 Plaintiff responds that it could not seek to amend the complaint in the first action because, *inter*
23 *alia*, the documents related to the sale, such as the January 18, 2011 Sale Agreement, the January 24,
24 2011 First Amendment, and the February 15, 2011 Second Amendment, were not provided to plaintiff
25 until April 22, 2011, after the deadline for amending the pleadings in 10-325 SI.

26 The parties devote much of their voluminous briefing to *ad hominem* attacks that do not aid the
27 Court in its determination of these motions. The parties also hotly dispute the facts regarding when
28 defendants disclosed the fact of, and the details regarding, the sale of the Shopping Center; for purposes

4

of these motions, the Court finds it unnecessary to resolve these factual disputes. The Court agrees with defendants that plaintiff should have sought leave to amend the complaint in the first action, even if such motion was filed after the deadline for amending the complaint, rather than filing a second case. However, given the fact that plaintiff filed a second action, the Court finds that the most efficient course is to determine whether plaintiff has stated claims in the second action, and if so, to consolidate the two cases, rather than dismissing the second action and requiring plaintiff to file a motion to amend the complaint in the first case.

## I.     Fraudulent conveyance

Dollar Tree alleges a claim of fraudulent conveyance under the Uniform Fraudulent Transfer Act ("UFTA"), California Civil Code § 3439 *et seq.*, against defendants Pau, Toyama, and Capella-Mowry. "The UFTA permits defrauded creditors to reach property in the hands of a transferee." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). "Under the UFTA, a transfer is fraudulent, both as to present and future creditors, if it is made '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.' (Civ. Code, § 3439.04, subd. (a).) ." *Id.* at 664.

The complaint alleges that "[t]he Second Amendment was a mode of disposing of or parting with an interest in an asset and therefore constitutes a 'transfer' within the meaning of [the statute]." Compl. ¶ 60. The complaint alleges,

> Pau entered into the Second Amendment on behalf of both Toyama and Capella with the intent to hinder, delay and/or defraud Dollar Tree with regard to, *inter alia*, (i) Toyama's obligation to settle with Dollar Tree, (ii) Capella's obligations to construct a retail store for Dollar Tree and post a . . . letter of credit as security, (iii) Capella's obligation to accept and assume Dollar Tree's Amended Lease, and (iv) Dollar Tree's ability to execute upon the Shopping Center in order to obtain money damages and/or injunctive relief from Toyama.

*Id.* ¶ 61. The complaint also alleges that defendants' fraudulent intent is demonstrated by the following "badges of fraud":

(a)     The Second Amendment was executed by Pau as an insider of both Toyama and Capella;

(b)     Pau controlled the Shopping Center as manager of Toyama and Capella both before and after the Second Amendment;

5

    (c)    Neither Toyama, Capella, nor Pau disclosed the sale of the Shopping Center, including without limitation the Second Amendment, to Dollar Tree prior to the closing;

    (d)    Pau executed the Second Amendment well after Dollar Tree filed its lawsuit against Toyama;

    (e)    The Second Amendment facilitated the closing on the Shopping Center, which disposed of substantially all of Toyama's assets;

    (f)    Pau, Capella, and Toyama refused to provide Dollar Tree with documents or information regarding the sale of the Shopping Center, including without limitation the Second Amendment; and

    (g)    Toyama was insolvent prior to and at the time that it entered into the Second Amendment and closed on the sale of the Shopping Center.

*Id.* ¶ 62.

### A. "Transfer"

Defendants contend that Dollar Tree has not alleged a "transfer" under the UFTA because the Second Amendment is only an isolated provision of the sales contract, and not the sales contract itself. Dollar Tree responds that the Second Amendment is part of the Sale Agreement, as the Second Amendment states that the Sale Agreement "is incorporated herein by reference," and that "Buyer and Seller amend the Original [Sale] Agreement as follows[.]" Compl. Ex. 4. Dollar Tree argues that all provisions of a contract must be considered as a whole, *see* Cal. Civ. Code § 1641, and that it has focused on the Second Amendment because that is where defendants' fraud is manifested.

Dollar Tree contends that the UFTA has a very broad definition of "transfer," and that the Second Amendment (and the incorporated Sale Agreement) fall within the statutory definition. The UFTA defines "transfer" as follows:

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Cal. Civ. Code § 3439.01(i). Dollar Tree contends that the sales documents, which include the Second Amendment, were the direct and/or indirect mode that Pau used to part with Toyama's interest in the Shopping Center. Compl. ¶¶ 49-54. Dollar Tree asserts, "Defendants want this Court to believe that, if there was no fraud in the Grant Deed itself, the UFTA cannot apply. . . . The UFTA defines a transfer

6

more broadly – every direct and/or indirect mode of parting with an interest in an asset – and that broader definition must be applied here. Moreover, since the substantive terms of the sale are contained in the Sale Agreement and its amendments, to limit consideration of the transaction to the simple language of the Grant Deed would make a mockery of the UFTA and encourage the type of fraud in which Defendants have engaged here." Opp'n at 9:16-25.

Defendants contend that by admitting that the transfer at issue was the sale of the Shopping Center pursuant to the Sale Agreement, of which the Second Amendment was only a part, Dollar Tree is "essentially seeking to rewrite the Sales Agreement rather than to set aside any fraudulent transfer." Reply at 3:21-23, 4:10-11. Defendants argue that Dollar Tree's claim is not a proper UFTA claim because Dollar Tree does not seek to set aside the sale of the Shopping Center, but instead to rewrite the contract of sale.

Dollar Tree contends that defendants ignore the plain language of the UFTA, which provide for broad remedies to ameliorate fraudulent transfers. Dollar Tree notes that Section 3439.07 provides that "In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain . . . .

> (1) avoidance of the transfer or obligation *to the extent necessary* to satisfy the creditor's claim.
>
> (2) An attachment or other provisional remedy against the asset transferred or its proceeds . . . .
>
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following:
>
> > (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds.
> >
> > (B) Appointment of a receiver to take charge of the asset transferred or its proceeds.
> >
> > (C) *Any other relief the circumstances may require*.

Cal. Civ. Code § 3439.07(a) (emphasis added). Dollar Tree argues that the UFTA specifically authorizes avoidance of the Second Amendment because it permits "avoidance of the transfer . . . to the extent necessary" and authorizes "any other relief the circumstances may require."

7

The Court agrees with Dollar Tree that it has properly alleged that it seeks to avoid a fraudulent transfer. *Annod Corporation v. Hamilton & Samuels*, 100 Cal. App. 4th 1286 (2002), relied upon by defendants, is distinguishable. In *Annod*, a landlord sued the individual partners in a defunct law firm for nonpayment of rent. The landlord claimed that the law firm partners had drained the law firm of its assets by taking partnership draws instead of paying overdue rent. *Id*. at 1291. The trial court granted the defendants' motions for summary judgment, finding that there were no material disputes regarding whether the partnership draws were made in good faith and for reasonably equivalent value. *Id*. The Court of Appeal affirmed. Defendants cite *Annod* for the proposition that the UFTA does not provide for the rewriting of contracts relating to transfers. However, in the portion of *Annod* that defendants cite, the court simply stated that the landlord "knowingly accepted as part and parcel of the lease agreement" the risk that partners would receive partnership draws while failing to pay their rent. *Id*. at 1300.

> The lease contained reciprocal waivers. The landlord agreed not to "seek recourse against the individual partners, directors, officers or shareholders of [the tenant] or any of their personal asserts for satisfaction of any liability with respect to [the lease]" and the tenant agreed not to "seek recourse against the individual partners, directors, officers or shareholder[s] of [the landlord] or any of their personal asserts for satisfaction of any liability with respect to [the lease]." The lease provided a bargained-for two-way release of liability. Applied in retrospect, it may have been a bad deal for the landlord, but that was the risk the landlord took and we will not rewrite the lease to delete the nonrecourse provision.

*Id*.

*Annod* is distinguishable in numerous respects. First, as plaintiff notes, *Annod* was decided on summary judgment, and not on a demurrer. More importantly, the landlord in *Annod* did not claim that the lease provision enabled the fraudulent transfer, whereas here, Dollar Tree claims that the Second Amendment was the "direct and/or indirect mode" of "disposing of or parting with an interest in an asset." *Annod* does not stand for the proposition that the UFTA does not permit the rewriting of a contract. In any event, the Court does not view the relief sought here as rewriting a contract. Rather, Dollar Tree seeks to void the transfer – as set forth in the Second Amendment – "to the extent necessary."

8

### B.     Intent to defraud

Defendants also argue that Dollar Tree has failed to sufficiently allege "intent to defraud" under Section 3439.04(a)(1). The Court disagrees. Section 3439.04(b) provides eleven different factors that may be considered as evidence of intent to defraud:

> (b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
>
> (1) Whether the transfer or obligation was to an insider.
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
>
> (3) Whether the transfer or obligation was disclosed or concealed.
>
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> (5) Whether the transfer was of substantially all the debtor's assets.
>
> (6) Whether the debtor absconded.
>
> (7) Whether the debtor removed or concealed assets.
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>
> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
>
> (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b)(1)-(11).

Defendants concede that the complaint alleges at least three of these factors – the debtor's insolvency, the transfer of substantially all of the debtor's assets, and that the transfer was made after the filing of a lawsuit. Defs' 12(b)(6) Motion at 9:25-28; Reply at 7:4-7. Defendants assert that "these [factors] alone do not indicate fraudulent intent," Reply at 7:6-7, and that Dollar Tree "does not even *try* to allege" some of the other statutory factors. *Id*. at 7:16.

Defendants' arguments are flawed in several respects. As an initial matter, the California Court of Appeal has held that the Section 3439.04(b) "factors do not create a mathematical formula to

establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005). Thus, contrary to defendants' assertions, a plaintiff may prove actual intent to fraud based on three factors (or less). More importantly, on a motion to dismiss, the Court's review is limited to the sufficiency of the allegations. Here, the complaint alleges at least three of the badges of fraud, and arguably more. This is adequate to state a claim.[1]

## II.  Breach of fiduciary duty

Dollar Tree alleges a claim for breach of fiduciary duty against Pau only. The complaint alleges that by virtue of Toyama's insolvency, Pau owed a fiduciary duty to Toyama's creditors, including Dollar Tree, to manage Toyama's assets in trust for the benefit of all creditors. Compl. ¶ 66. The complaint alleges that Pau "had an irreconcilable conflict of interest in entering into the Second Amendment as manager of both Toyama and Capella." *Id*. The complaint alleges that "Pau breached his fiduciary duties to Dollar Tree by distributing proceeds from the sale of the Shopping Center to himself and thereby engaging in self dealing," and "by distributing proceeds . . . to other creditors to the exclusion of Dollar Tree, thereby preferring certain creditors over Dollar Tree." *Id*. ¶¶ 67-68.

Defendants move to dismiss this claim, relying primarily on *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020 (2009). In *Berg*, Berg & Berg Enterprises was the largest creditor of a failed company, Pluris, Inc. Berg alleged that the individual directors of Pluris owed a fiduciary duty to Berg and Pluris's other creditors when Pluris either became insolvent or entered into a "zone of insolvency." *Id*. at 1024. Berg alleged that Pluris breached its fiduciary duty by entering into an

---

[1] Defendants also assert, confusingly, that plaintiff's claim for fraudulent conveyance is really a claim for third party beneficiary status under the Sale Agreement, or a breach of contract claim under the Amended Lease. As the Court has concluded that plaintiff has stated a claim under the UFTA, the Court finds it unnecessary to address these arguments.
Defendants also assert that Dollar Tree's successor liability theory against Capella defeats, rather than supports, the UFTA claim. This argument is without merit, as plaintiff is permitted to plead alternative theories of liability. Fed. R. Civ. Proc. 8(d)(2).

10

assignment for the benefit of creditors under Cal. Civ. Code §§ 493.010 and 1802,[2] "thereby extinguishing Berg's plan to use the corporation's alleged $50 million of net operating losses through a chapter 11 bankruptcy reorganization that, according to Berg, would have benefitted it and the other creditors by deriving value from the losses." *Id*. at 1025.

Defendants contend that under *Berg*, Dollar Tree lacks standing to bring a breach of fiduciary duty claim; that the scope of the fiduciary duty recognized in *Berg* is extremely limited and does not apply to the facts alleged here; and that in any event, the business judgment rule bars Dollar Tree's claim. Dollar Tree, in turn, asserts that it has properly alleged a claim under *Berg*.

**A.    Standing**

The parties first dispute whether Dollar Tree has standing to bring a breach of fiduciary duty claim. Defendants contend that Dollar Tree must bring this claim as a derivative action because Dollar Tree did not suffer an injury unique to it. Defendants rely on *Berg*, where the trial court sustained a demurrer to the original complaint on standing grounds.[3] The Court of Appeal described the ruling as follows:

> The court (Judge C. Randall Schneider) sustained the demurrers with leave to amend. The basis of the order was, in essence, lack of standing—Berg's claim of injury was not unique to itself or to a particular class of creditors but rather incidental to injury that all of Pluris's creditors might have suffered as a result of the assignment for the benefit of creditors. Therefore, the claim was not direct and particular to Berg but rather derivative and assertable only on behalf of all of Pluris's creditors.

*Berg*, 174 Cal. App. 4th at 1027.

Defendants contend that Dollar Tree lacks standing because "it is clear from [Dollar Tree's] allegations that the payments to Comerica and other creditors prevented Toyama from paying all other creditors, not just [Dollar Tree]." Reply at 10: 2-4. To the contrary, the complaint does not contain any such allegations showing that Dollar Tree is similarly situated to other creditors. Instead, the complaint

---

[2] The *Berg* court explained that "[a]n assignment for the benefit of creditors is a recognized but less than comprehensive statutory procedure that is an alternative to liquidation in bankruptcy." *Id*. at 1025 n.1.

[3] After this ruling, the plaintiff in *Berg* amended the complaint several more times. On appeal, the Court of Appeal reviewed the trial court's dismissal of the third amended complaint without leave to amend. *Berg*, 174 Cal. App. 4th at 1029.

11

alleges that Pau used the proceeds of the sale to pay Comerica, himself, and other creditors, and more importantly, that Pau executed the Second Amendment specifically to shield Toyama's assets from Dollar Tree. As such, Dollar Tree has alleged an injury "direct and particular" to itself, and thus has standing to allege a breach of fiduciary duty claim.

### B. Scope of duty

After analyzing the case law on the duty owed by an insolvent corporation to its creditors, the *Berg* court stated, "we conclude that under the current state of California law, there is no broad, paramount fiduciary duty of due care or loyalty that directors of an insolvent corporation owe the corporation's creditors solely because of a state of insolvency . . . ." *Berg*, 178 Cal. App. 4th at 1041.[4] The court held that "the scope of any extra-contractual duty owed by corporate directors to the insolvent corporation's creditors is limited in California, consistently with the trust-fund doctrine, *to the avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims*. This would include acts that involve self-dealing or the preferential treatment of creditors." *Id*. (emphasis in original). The appellate court in *Berg* sustained the demurrer because the thrust of Berg's claim – that "the directors effected the assignment for the benefit of creditors, a recognized statutory alternative to liquidation through bankruptcy, rather than investigating, exploring or pursuing a bankruptcy reorganization through which Berg theoretically could have maximized the value of Pluris's accumulated net operating losses and the other creditors could have benefitted from Berg's reorganization plan," – "do not involve self dealing or prohibited preferential treatment of creditors and further do not constitute the actual diversion, dissipation, or undue risking of Pluris's assets that were otherwise available to pay creditors' claims." *Id*. at 1042-43 (internal citations omitted). Instead, "[a]t most, and contrary to Berg's contentions on appeal, these facts allege that another course of action, if explored and pursued, might have offered more value in the end or that beneficial, maximum, or more valuable use could thereby have been made of Pluris's net operating losses,

---

[4] Not relevant here, the *Berg* court also held that "there is no fiduciary duty prescribed under California law that is owed to creditors by directors of a corporation solely by virtue of its operating in the 'zone' or 'vicinity' of insolvency." *Berg*, 178 Cal. App. 4th at 1041.

assuming that the many contingencies required to successfully do so all would have transpired favorably." *Id*. at 1043.

Here, contrary to the allegations in *Berg*, Dollar Tree has alleged that Pau engaged in self-dealing and preferential treatment of creditors. Pau contends that these allegations are insufficient because Dollar Tree's claim is unliquidated, unsecured, and hotly disputed, and it is undisputed that Comerica was the senior secured creditor whose foreclosure sale is what prompted the sale to Capella in the first place.[5] Pau contends that his decision to pay sales proceeds to Comerica was not only proper, it was legally required. Pau also argues that the complaint does not allege that the other creditors of Toyama who were paid, including Pau, were not real creditors of Toyama.

The Court concludes that Dollar Tree has alleged facts sufficient to state a claim. The Court agrees with defendants that the allegations regarding the payment to Comerica, on its own, would not state a claim for breach of fiduciary duty. However, the complaint also alleges that Pau engaged in self-dealing by executing the Second Amendment on behalf of both Toyama and Capella, and paying himself out of the proceeds of the sale. Although the complaint does not contain detailed allegations regarding the payments to the other creditors, the complaint alleges that Pau made payments to other creditors and preferred those creditors over Dollar Tree.

### C. Business judgment rule

Finally, defendants contend that the breach of fiduciary duty claim is barred by the business judgment rule. "The [business judgment] rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest." *Berg*, 178 Cal. App. 4th at 1045. In response to plaintiff's argument that the business judgment rule does not apply because the complaint alleges that Pau had a conflict of interest, defendants assert that the alleged conflict "has

---

[5] This point is actually disputed, though it is not alleged in the complaint. Dollar Tree asserts – and the emails between Pau and Dollar Tree prior to the sale provide some support – that the primary motivation for the sale was that Capella faced a February 16, 2011 deadline under Section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031, by which to purchase a property in order to defer recognition of capital gains on an exchange of business properties. *See* Abramowich Decl. in Support of Opposition to Motion to Dismiss Action ¶ 6; Pau Decl. Ex. A (emails).

nothing to do with how creditor claims were paid." Reply at 13:5-7. Defendants continue, "It cannot be said that Mr. Pau breached his fiduciary duty or violated the Business Judgment Rule by paying other creditors, including himself, before he had Toyama pay DT on its disputed and unliquidated claims." *Id*. at 13:21-23.

Defendants' arguments lack merit. Whether Pau breached his fiduciary duty or violated the Business Judgment Rule is a factual question that cannot be resolved on the pleadings. The complaint alleges that Pau had a conflict of interest in his dual role as manager of both Toyama and Capella, and by paying himself out of the proceeds of the sale. It may be that it was proper for Pau to pay himself out of those proceeds. That, however, is a question for the fact finder on summary judgment or at trial, and is not appropriate for resolution on a motion to dismiss under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for consolidation, DENIES defendants' motion to dismiss 11-2696 SI, and DENIES defendants' motion to dismiss 11-2696 SI for failure to state a claim. Docket No. 228 in C 10-325 SI and Docket Nos. 15 & 18 in C 11-2696 SI.

At the Case Management Conference following the hearing on these motions, counsel discussed how and whether a single amended, consolidated complaint may be used for the balance of this litigation. The parties are directed to file an amended consolidated complaint, or alternatively, a plan of coordination, no later than **August 12, 2011.**

**IT IS SO ORDERED.**

Dated: August 1, 2011

SUSAN ILLSTON
United States District Judge