Peter M. Rehon (SBN 100123)
Lisa C. Roberts (SBN 111982)
Mark V. Isola (SBN 154614)
Tyler J. Olson (SBN 220796)
REHON & ROBERTS
A Professional Corporation
830 The Alameda
San Jose, CA  95126
Telephone: (408) 494-0900
Facsimile: (408) 494-0909

Attorneys for Defendants and Counterclaimants
TOYAMA PARTNERS, LLC; PETER PAU d/b/a
SAND HILL PROPERTY COMPANY, a sole
proprietorship; PETER PAU, in his individual
capacity and as partner of SAND HILL PROPERTY
MANAGEMENT COMPANY; SUSANNA PAU, in
her capacity as partner of SAND HILL PROPERTY
MANAGEMENT COMPANY; SAND HILL
PROPERTY MANAGEMENT COMPANY, and
CAPELLA-MOWRY, LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLLAR TREE STORES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOYAMA PARTNERS, LLC; COMERICA BANK; PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC, <br><br> Defendants. | Case No.  CV 10 0325 SI <br><br> **DEFENDANT CAPELLA-MOWRY, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date:  December 16, 2011 <br> Time:              9:00 a.m. <br> Courtroom:     10 <br> Judge:            Hon. Susan Illston <br><br> Date action filed:  January 22, 2010 <br> Trial Date: February 6, 2012 |

1

MPA_Capella_FINAL.doc

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CAPELLA-MOWRY'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC,

        Counterclaimants,

    v.

DOLLAR TREE STORES, INC.

        Counter-Defendant.

---

DOLLAR TREE STORES, INC.,

        Plaintiff,

    v.

PETER PAU, TOYAMA PARTNERS, LLC, and CAPELLA-MOWRY, LLC.

        Defendants.

---

TOYAMA PARTNERS, LLC, CAPELLA-MOWRY, LLC, PETER PAU, individually and d/b/a SAND HILL PROPERTY COMPANY,

        Counterclaimants,

    v.

DOLLAR TREE STORES, INC.,

        Counter-Defendant.

Case No.  CV 11 002696 SI

---

MPA_Capella_FINAL.doc

1 | **NOTICE OF MOTION AND MOTION**

2 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3 | PLEASE TAKE NOTICE that on Friday, December 16, 2011, at 9:00 a.m., in the United

4 | States District Court for the Northern District of California, located at 450 Golden Gate Avenue,

5 | 18th Floor, Courtroom 10, San Francisco, California 94102, before the Honorable Susan Illston,

6 | United States District Judge, Defendant Capella-Mowry, LLC ("Capella") will and hereby does

7 | move for summary judgment of all claims brought against it by plaintiff Dollar Tree Stores, Inc.

8 | ("DT").

9 | Capella's motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure on

10 | the grounds that no genuine issue of material fact exists with respect to said claims and Capella

11 | is entitled to summary judgment as a matter of law. Capella seeks a grant of summary judgment

12 | on all claims because: (i) The express terms of the Amended and Restated Lease (the "ARL")

13 | which is the subject of, and is Exhibit 5 to, DT's First Amended Consolidated Complaint

14 | ("FACC") bar DT's first claim for breach of contract; (ii) DT's liquidated damages clause in the

15 | ARL is unenforceable as a matter of law under Civil Code section 1631, (iii) DT cannot show

16 | that Capella violated California's version of the Uniform Fraudulent Transfer Act ("UFTA")

17 | when it purchased the Shopping Center from Defendant Toyama Partners LLC ("Toyama"); and

18 | (iv) DT's claim for unfair competition fails as a matter of law because DT abandoned its fraud

19 | claim which is the predicate of its fifth claim for relief. In the alternative, should this Court find

20 | that summary judgment as to the entire action is not warranted, Capella requests that the Court

21 | grant partial summary judgment as to all appropriate issues pursuant to Rule 56(d) of the

22 | Federal Rules of Civil Procedure.

23 | \\\

24 | \\\

25 | \\\

26 | \\\

27 | \\\

28 |

1         Capella's motion is based on this Notice of Motion and Motion, the supporting

2    Memorandum of Points and Authorities set forth herein below, the Declarations of Peter M.

3    Rehon and Peter Pau and all exhibits thereto, the complete files and records in this action, and

4    such additional evidence and arguments as may hereinafter be presented.

5    DATED:  November 4, 2011              REHON & ROBERTS
                                                   A Professional Corporation

6

7                                            By:  __Peter M. Rehon  /s/_____

8                                                Peter M. Rehon
                                            Lisa C. Roberts

9                                                Mark V. Isola
                                            Attorneys for Defendants and

10                                               Counterclaimants TOYAMA PARTNERS,
                                            LLC; PETER PAU d/b/a SAND HILL

11                                               PROPERTY COMPANY, a sole
                                            proprietorship; PETER PAU, in his

12                                               individual capacity and as partner of SAND
                                            HILL PROPERTY MANAGEMENT

13                                               COMPANY; SUSANNA PAU, in her
                                            capacity as partner of SAND HILL

14                                               PROPERTY MANAGEMENT COMPANY;
                                            SAND HILL PROPERTY MANAGEMENT

15                                               COMPANY, and CAPELLA-MOWRY,
                                            LLC.

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF ISSUES .......................................................................... 3

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 4

IV.  SUMMARY JUDGMENT STANDARD……………………………………………9

V.   ARGUMENT .............................................................................................. 10

    A.   Capella is Entitled to Summary Judgment on DT's First Claim for Relief: Breach of the ARL. .......................................................................... 10

        1.   General Rule of Successor Nonliability. .................................................. 10

        2.   Capella Did Not Assume the ARL ........................................................... 11

            a.   California Law Does Not Permit or Justify Rewriting the Parties' Legal Agreements. .......................................................... 11

            b.   Capella Did Not Assume the ARL Under the Sale Agreement. .................................................................................... 12

            c.   The Other Exceptions Do Not Apply Because Capella Paid Fair Consideration ................................................................. 13

        3.   Without privity of contract or privity of estate between Capella and DT, DT cannot enforce any obligations of landlord under the ARL against Capella. ............................................................... 14

            a.   DT cannot sue to enforce any of the Sale Documents. .................. 14

                (1)   DT was not a third party beneficiary under the Sale Documents, and may not sue to enforce any of them. ....... 14

                (2)   Even if Toyama or Capella had intended DT to be a third party beneficiary, the Second Amendment would be valid and operative. ........................................... 15

                    (a)   Capella and Toyama had the absolute right to amend the Sale Agreement by entering into the Second Amendment. ........................................ 15

                    (b)   At the time the Second Amendment was executed, there was no reliance on the Sales Agreement by DT leaving Capella and Toyama free to amend or even rescind the

i

MPA_Capella_FINAL.doc

Sales Agreement ................................................... 15

        (3)     Parties may make contracts effective retroactively ............ 16

    b.    There is no contractual privity or privity of estate between DT and Capella. ................................................... 16

        (1)     There is no privity of estate between DT and Capella. ................................................... 17

            (a)     Possession required to create privity of estate. ................................................... 17

            (b)     Even if there was privity of estate, Capella cannot be held liable for any breach of the ARL attributable to Toyama. ................................ 19

    4.    Capella is a separate entity ........................................ 19

  B.    Capella is Entitled to Summary Judgment on Dollar Tree's Second Claim for Relief:  Declaratory Judgment. ........................................... 20

  C.    Capella is Entitled to Summary Judgment on Dollar Tree's Third Claim for Relief:  Fraudulent Conveyance. ........................................... 20

  D.    Capella is Entitled to Summary Judgment on Dollar Tree's Fifth Claim for Relief:  Unfair Competition. ................................................... 20

VI.  CONCLUSION ................................................................. 21

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**Statutes**

*Action Rock Company v. Lone Pine Utilities Company*, 44 Cal.App.597 (1919)......................... 16

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................. 10

*Baker v. Palo Alto*, 190 Cal.App.2d 744 ............................................... 16

*British Airways BD v. Boeing Co.,* 585 F.2d 946 (9th Cir. 1978) .................................. 9

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................... 9

*Chaknova v. Wilbur-Ellis Co*., 69 Cal.App.4[th] 962 (1999) .................................... 1, 10

*Constant D. Du Frene v. Kaiser Steel Corporation*, 231 Cal.App.2d 452 (1964)....................... 16

*Cunningham v. University Underwriters* 98 Cal.App.4[th] 1141 (2002)................................ 18, 19

*Eisenberg v. Ins. Co. of N Am.,* 815 F.2d 1285 (9th Cir. 1987)................................ 10

*Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737 ................................ 17

*Franklin v. USX Corp.*, 87 Cal.App.4[th] 615  (2001) ............................................... 1, 10

*Griffin v. Williamson*, 137 Cal.App.2d 308 (1955)............................................... 15

*Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232 ................................ 18

*Hess v. Ford Motor Co,* 27 C.4[th] 516 (2002) ................................................ 14

*Karo v. San Diego Symphony Orchestra Association*, 762 F.2d 819 (9th Cir. 1985).............. 11, 15

*Kelly v. Tri-Cities Broadcasting, Inc.* (1983) 147 Cal.App.3d 666 ........................ 16, 18

*Killian v. San Francisco*, 77 Cal.App.3d 1 (1978) ......................................... 16

*Polius v. Clark Equipment Co*., 802 F.2d 75 (3d Cir. 1986)........................................ 13

**Statutes**

CACI 4200 ........................................................................ 17

Civil Code § 1559 ................................................................ 12

Civil Code § 1641 ................................................................ 14

Civil Code § 3439.04(a)(1) ....................................................... 17

Civil Code § 3439.08(a) .......................................................... 17

28

iii

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**Other Authorities**

Friedman, et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2011) ¶¶ 2:515 2:517 ................................................................................................................ 14, 16

Smith et al., Cal. Practice Guide: Real Property Litigation (The Rutter Group 2011) ¶ 28:15 ................................................................................................................ 15

Witkin, Summary of Cal. Law (10th ed. 2005) § 704, p. 791 ....................................... 12

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Capella-Mowry, LLC ("Capella") hereby submits the following Memorandum of Points and Authorities in support of its Motion for Summary Judgment or, in the alternative, partial Summary Judgment, as to all claims brought by Plaintiff Dollar Tree Stores, Inc. ("DT"):

## I.   INTRODUCTION

The centerpiece of DT's claims against Capella is that it should have assumed, or should be required to assume, Toyama's obligations under the DT Amended and Restated Lease ("ARL"). DT goes so far as to contend that Capella's purchase of the Center without assuming the ARL was fraudulent or, at a minimum, a breach of the ARL.

DT's claims against Capella, whose only crime is to be a duly formed single asset limited liability company managed by Toyama's LLC manager, Peter Pau, fail for the following reasons:

1.       It is proverbial black-letter law in California that "where one corporation sells or transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former." (*Chaknova v. Wilbur-Ellis Co.*, 69 Cal.App.4[th] 962, 967 (1999) [affirming summary judgment in favor of purchaser]; *Franklin v. USX Corp.*, 87 Cal.App.4[th] 615, 627 (2001).) That rule of law reflects the commercial reality in California: Every day, companies, real property, equipment, and other assets are sold without their accompanying liabilities. To suggest that it is fraudulent or unlawful to do so is simply wrong, even when the result may work an inconvenience or injustice to an unsecured creditor like DT.

2.       The ARL specifically contemplates that the Center may be sold without the transferee assuming the Landlord's obligations under the ARL. Section U.2. of the ARL, under the section entitled "Liability of Landlord," states:

"2.   Transfer of Title.   In the event of the sale or other transfer of Landlord's right, title, and interest in the Premises or the Shopping Center, Landlord shall, upon providing Tenant with written notice of said transfer, be released from all liability and obligations hereunder *only if its transferee shall assume in writing the obligations of Landlord herein set forth*." (Emphasis added.)

MPA_Capella_FINAL.doc

The import of section U.2. is clear: first, Toyama is free to transfer the Shopping Center, and second, if it does, Toyama is released from liability under the ARL "only if its transferee" assumes Toyama's obligations under the ARL. The implication is, if the transferee chooses not to assume the ARL, which is its right under this section, Toyama remains liable on the ARL. This section does not mean that the transferee, here, Capella, can be sued for fraud or breach of contract for buying the Center and not assuming the ARL. DT cannot claim that either Toyama violated the ARL, and even if Capella were a party to the ARL, it cannot be charged with violating the ARL either.

3. The Sale Agreement, as amended by the First and Second Amendment, make it clear that Capella never assumed Toyama's obligations under the ARL. DT has no right to compel the re-writing of these contracts, which must be enforced according to their terms.

4. Even if DT were successful in convincing the Court to re-write or set aside the Second Amendment, DT's claims would still fail because the Sale Agreement does not obligate Capella to assume the ARL. The Sale Agreement is clear at page 7, section 7.3(b): "Dollar Claims. Seller shall enter into a full settlement with Dollar Tree and shall make such cash payments required thereunder as may be required by Dollar Tree; however, it is currently contemplated that Dollar Tree will require (i)construction of its leased premises, and (ii) the posting of Letter of Credit in favor of Dollar Tree in the amount of $1,000,000, as security for such construction obligation; and upon Closing Buyer shall assume such obligations."

This language in the Sale Agreement is clear: Capella is not assuming any obligations under the ARL; it is, at most, assuming obligations on a contemplated settlement with DT that, indisputably, never took place. Thus, even if the Second Amendment was set aside, the Sale Agreement would impose no enforceable – or even intelligible – obligation on Capella.

2

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

5. Finally, for the reasons detailed in Toyama's summary judgment motion, DT's fraudulent transfer claim against Capella must fail. The sale of the Center was driven by Comerica's foreclosure proceeding, and Comerica's witnesses made it clear in their deposition testimony that the Capella sale price was the highest and best price it could get to pay off its loan. If Capella had not purchased the Center, Comerica would have foreclosed, wiping out all creditors, secured and unsecured. To suggest that Capella acted wrongfully, when it paid all of the consideration, at a fair market price according to Comerica, is, again, simply incorrect as a matter of law.

For these reasons and those outlined below, summary judgment must be granted in favor of Capella.

## II.   STATEMENT OF ISSUES

### (Civil Local Rule 7-4(a)(3))

1. Has DT raised a genuine issue of material fact as to whether DT is entitled to a money judgment as alleged in DT's First Claim for Relief?

2. Has DT raised a genuine issue of material fact as to whether the liquidated damages provision in the ARL is enforceable as a matter of law as alleged in DT's First Claim for Relief?

3. Has DT raised a genuine issue of material fact as to whether Capella's purported transfer of the Amended & Restated Lease to Toyama was a violation of the UFTA as alleged in DT's Third Claim for Relief?

4. Has DT raised a genuine issue of material fact as to whether Toyama's transfer of the Shopping Center to Capella was a violation of the UFTA as alleged in DT's Third Claim for Relief?

5. Has DT raised a genuine issue of material fact as to whether Toyama violated the unfair competition law as alleged in DT's Fifth Claim for Relief?

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

# III. STATEMENT OF UNDISPUTED MATERIAL FACTS

The following are the undisputed material facts supporting this motion:[1]

1.     DT is a Virginia Corporation and is the "nation's largest single price point variety retail store, with close to 4,000 stores nationwide." FACC at ¶¶ 22 and 63.

2.     Toyama is a duly formed California limited liability company, and Peter is its manager. FACC at ¶23; Comerica Depo.Ex. 1, 4, 5, 49, 50 attached and authenticated at the Declaration of Peter M. Rehon ("Rehon Dec."), Ex. 1, 3, 4, 10, 11.

3.     Toyama was originally formed on June 20, 1997 by all of its seven members other than Peter, and on October 26, 2005, Toyama admitted Peter as a member and as its sole manager. Comerica Depo. Ex. 4, p. 1 at Rehon Dec., Ex. 3.

4.     Toyama has and had seven investors, not including Peter, whose capital accounts totaled approximately $8,307,950 as of October 26, 2006. Comerica Depo. Ex. 4 at Rehon Dec., Ex. 3.

5.     Sand Hill Property Company is a sole proprietorship owned and operated by Peter. FACC at ¶24.

6.     Sand Hill Property Management Company is a duly organized California general partnership consisting of two partners, Peter and Susanna. FACC at ¶27.

7.     Capella-Mowry, LLC ("Capella") is a duly formed California limited liability company. FACC at ¶28.

8.     Capella is owned by Capella Holdings, LLC, a duly formed California limited liability company which has five members, not including Peter. Pau Depo Ex. 67 at Pau Dec., ¶65, Exhibit 7.

9.     On June 9, 2003, Toyama's predecessor and prior owner of the Center leased space in the Center to DT. FACC at ¶64, and exhibit 8 thereto.

10.     On July 15, 2005, the Center was appraised by an MAI appraiser hired by Comerica who concluded that the Center's "as-is" fair market value was $29,500,000 as of that date. Comerica Depo. Ex. 3 (pages COM 6289 – 95 only) at Rehon Dec., Ex. 2.

---

[1] For ease of reference, each undisputed material fact discussed below will be cited and hereinafter referred to as "UMF 1" etc.

MPA_Capella_FINAL.doc

11. On November 16, 2005, Toyama acquired the Center for $22,500,000 and became DT's landlord, with a combination of $9,230,446.08 in exchange funds from Toyama's investors, $1,000,000 in additional investor funds from Peter, and an acquisition and construction loan of $21 million from Comerica. Pau Dec., Ex. 30 (Doc. T3325-36) and Ex. 4 (Docs. T11495-511).

12. Toyama and Mervyn's executed a Ground Lease Agreement (the "Mervyn's Lease") on or about May 18, 2007. FACC at ¶84 and exhibit 15 thereto.

13. The Mervyn's store was to be the anchor/major store in the Center. FACC at ¶85.

14. On July 27, 2007, DT entered into and signed a Subordination, Nondisturbance and Attornment Agreement with Toyama and Comerica. Comerica Depo. Ex. 27 at Rehon Dec., Ex. 6.

15. On August 21, 2007, Comerica agreed to lend to Toyama the sum of $39 million, secured by a first deed of trust on the Center, and the sum of $3,265,000, on an unsecured basis (collectively, the "Comerica Loans"), pursuant to certain loan agreements marked as exhibits 30 - 43 to the deposition of Comerica's senior vice president, David Lardner. Rehon Dec., Ex. 5, 7, 8, 9; Comerica Depo. Ex. 121 at Rehon Dec., Ex. 16.

16. Comerica's senior vice president, David Lardner, testified that Comerica had concluded that Toyama was sufficiently capitalized and credit-worthy to warrant the making of the Comerica Loans. Rehon Dec., Ex. 29, Tr. 35:5-9, 36:6-18.

17. On July 18, 2008, Toyama and DT entered into the ARL. FACC at ¶109, exhibit 5 thereto.

18. The ARL:

    a. Plainly identifies the landlord as Toyama (ARL, pp. 1 and 29).

    b. Has an integration clause (ARL § W.19, p. 28).

    c. Contains a clear non-recourse clause, stating that DT is strictly limited to recovering any damages against the Center only, and DT cannot recover any deficiency against Toyama or any of its "partners." (ARL § U.1., p. 24).

    d. Specifically permits Toyama to sell the Center (ARL § U.2., p. 25).

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

e. States that if Toyama does sell the Center, the purchaser may, but is not required to, assume all liabilities and obligations under the ARL (ARL § U.2., p. 25).

f. Gives DT one of two exclusive remedies if Toyama fails to perform any delivery condition under the ARL: DT can impose a $2500 a day late fee for every day Toyama fails to perform any delivery condition under the ARL or it can cancel the ARL (ARL § D.1.c., p. 9; FACC at ¶ 114).

g. Has a severability clause (ARL § W.9).

19. DT's designee witness, Bruce Walters, testified that:

a. DT never did a financial analysis with respect to the liquidated damages amount set forth in the ARL prior to entering into the ARL. Walters Depo. 543:16-544:8 at Rehon Dec., Ex. 27.

b. DT never did an estimate of damages it might suffer as a result of a breach of the ARL prior to entering into the ARL. Walters Depo. 548:19-549:5 at Rehon Dec., Ex. 27.

c. The purpose of the liquidated damages provision was to make sure that DT "got the store back open." Walters Depo. 545:10-13 at Rehon Dec., Ex. 27.

20. Prior to entering into the ARL with Toyama, DT employees wrote emails—and even its letter of intent for the ARL—referring to DT's late fee as a "penalty." DT Depo. Ex. 109 ("$1500/day penalty for late delivery"); 111 ("Late penalty of $2500/day is okay"); 143, at page DTS 178 ("a penalty of $2500 per day . . . .") at Rehon Dec., Exx. 24, 25, 26.

21. On July 29, 2008, Mervyn's filed for bankruptcy. FACC at ¶118.

22. On September 15, 2008, Dollar Tree closed its store and vacated the Center. FACC at ¶12.

23. By email dated November 13, 2008, Comerica notified Toyama that it had ceased its funding under the Comerica Loans due to the bankruptcy filing of Mervyn's. FACC at ¶¶13, 84, and 121; Exhibit 23 thereto.

6

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

24.     On June 12, 2009, DT's counsel wrote a demand letter to Comerica, repeatedly referring to Toyama, and only Toyama, as the "landlord." Comerica Depo. Ex. 91 at Rehon Dec., Ex. 12.

25.     On June 25, 2009, the Anticipated Delivery Date under the ARL, DT sent its notice of default to Toyama repeatedly referring to Toyama, and only Toyama, as the "landlord." FACC ¶124; Comerica Depo. Ex. 92 at Rehon Dec., Ex. 13.

26.     On October 21, 2009, Brian Horton, the Comerica special assets officer in charge of the Comerica Loans to Toyama, wrote an email stating that "[b]ased on my analysis . . . the 'as-is' value [of the Center] is approximately $10MM, which would result in a  +/- $14MM write-off." Comerica Depo. Ex. 94, page 4 at Rehon Dec., Ex. 14.

27.     On January 22, 2010, DT commenced this lawsuit, suing Toyama, and specifically identified Toyama, and only Toyama, as the landlord under the ARL. Complaint (Doc. No. 1) at ¶¶ 7 and 19.

28.     On February 24, 2010, Comerica commenced its non-judicial foreclosure proceeding against its deed of trust on the Center by recording a Notice of Default, stating that the amount due by Toyama on the Comerica Loans as of February 17, 2010 was $22,351,274.00. Comerica Depo. Ex. 104 at Rehon Dec., Ex. 15.

29.     On May 10, 2010, DT filed a verified first amended complaint, again specifically identifying Toyama, and only Toyama, as the landlord under the ARL. First Amended Complaint (Doc No. 61; "FAC") at ¶¶ 30 and 45.

30.     On August 9, 2010, Toyama and Comerica entered into a Settlement Agreement and Release (Comerica Depo.Ex. 123 at Rehon Dec., Ex. 17) ("August Agreement") which was terminated on December 28, 2010 pursuant to paragraph 11 of the August Agreement (Pau Dec. Ex. 6).

31.     On January 25, 2011, Peter informed DT of the potential sale of the Center by Toyama to Capella, that Peter was Capella's manager, and that the sale had to be accomplished quickly because of Comerica's foreclosure and the purchaser's need to close the sale to avoid tax liability under IRC 1031. DT Depo. Ex. 38 (Rehon Dec. 23).

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

32.     On February 15, 2011, Toyama and Comerica entered into an agreement entitled "Settlement Agreement and Release (Short-Sale Payoff)" (the "Short-Sale Agreement") by which Comerica consented to the sale of the Center by Toyama to Capella for the proposed purchase price of $19.2 million, of which Comerica would accept the sum of $17,050,000, with $16,050,000 to be applied to repayment of the Comerica Loans and $1 million to be held by Comerica as collateral to support performance under the terms of the Short-Sale Agreement. Under the Short-Sale Agreement, Comerica agreed to release its deed of trust on the Center if it received the aforementioned funds.  Comerica Depo. Ex. 121 at Rehon Dec., Ex. 16.

33.     As of February 15, 2011, as set forth in the Short-Sale Agreement, the principal balance due by Toyama to Comerica on the Comerica Loans was $24,002,670.74, plus accrued interest, fees, and expenses.  Comerica Depo. Ex. 121, p. 2, ¶ D (Rehon Dec., Ex. 16).

34.     The sale of the Center by Toyama to Capella closed on February 16, 2011. Comerica Depo.Ex. 151 (Rehon Dec., Ex. 18).

35.     Each of the agreements which memorialized the sale of the Center by Toyama to Capella, the Sale Agreement, the First Amendment, and the Second Amendment, contains a provision for DT if its claims were settled.  DT Depo. Exx. 32, 33, 34 at Rehon Dec., Exx. 19, 20, 21.

36.     At the time of the sale, Comerica was foreclosing on its deed of trust and had not rescinded its Notice of Default (Lardner Depo. 134:6-9 at Rehon Dec., Ex. 29) and was still able to go forward with its foreclosure at any time at the time of the sale (Horton Depo. 203:9-11 at Rehon Dec., Ex. 30).

37.     The Comerica employees handling the Comerica Loans, David Lardner and Brian Horton, testified that the Capella sale price was the highest offer the Bank received  (Lardner Depo. 243:6-9, Rehon Dec., Ex. 29), was the Bank's best chance of recovering most of its principal (Horton Depo. 196:4-6 at Rehon Dec., Ex. 30) and was the best price the Bank could get (Horton Depo. 87:2-88:6 at Rehon Dec., Ex. 30).

38.     As a result of the sale, and on February 16, 2011, substantially all of Toyama's secured and unsecured creditors were paid, including Comerica, paid $16,050,000; Taisei

MPA_Capella_FINAL.doc

Construction, paid $500,000; Ozie Electric, paid $60,000; BKF, paid $35,000; Terranomics Retails Service, paid $47,675; SHP, paid $652,000 and $245,728.99; Wesco Distribution, paid $6,442.35; and the County of Alameda paid $390,595.16 for property taxes.  Pau Dec. ¶101; see also Rehon Dec. Ex. 18 (Final Bilateral Settlement Statement from First American Title dated February 16, 2011 showing how the sale was funded and how the proceeds were used).

39.     In addition to paying the above creditor claims, which totaled $17,987,440, funds from the First American Title Holdback Account from the escrow were used to pay four other creditors of Toyama who had undisputed and liquidated claims against Toyama which arose from construction on the Center:

    a.  Arrow Sign Company, paid $175,000 on June 30, 2011;

    b.  Complete Decon, Inc., paid $60,000 in July 2011;

    c.  Economy Trucking Services, Inc., paid $38,000 in July 2011; and

    d.  Red Hills Environmental, LLC, paid $5,720 in July 2011. Pau Dec. ¶102

40.     On April 21, 2011, DT entered into a settlement agreement with Comerica (the "DT/Comerica Agreement"), which, among other things, released all claims against Comerica, and specifically identified the landlord under the ARL as Toyama, and only Toyama, in the factual recitals.  DT Depo. Ex. 36 at Rehon Dec., Ex. 22.

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is a method for the prompt disposition of an action in which there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(b). Although the burden of establishing that there is no genuine issue of material fact lies with the moving party, in cases where the nonmoving party bears the ultimate burden of proof, the moving party may meet its burden by pointing to the absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986). Once the moving party has met this burden, Fed. R. Civ. P. 56(e) shifts the burden of presenting specific facts showing a genuine issue for trial to the nonmoving party. *See British Airways BD v. Boeing Co.,* 585 F.2d 946, 950-52 (9th Cir. 1978).

A party opposing summary judgment may not rest upon the mere allegations or denials of its pleadings, and a mere "scintilla" of evidence supporting the nonmoving party's position

MPA_Capella_FINAL.doc

will not suffice. There must be enough of a showing that the jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Thus, the question in a summary judgment motion is whether reasonable minds could differ over the import of the evidence after all inferences are drawn in favor of the nonmoving party. *See Eisenberg v. Ins. Co. of N Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987) ("If the evidence is merely colorable [] or is not significantly probative, summary judgment may be granted.").

## V. ARGUMENT

### A. Capella is Entitled to Summary Judgment on DT's First Claim for Relief: Breach of the ARL.

All of DT's claims against Capella, including its claims of successor liability on the ARL and fraudulent conveyance, are based on a simple fundamental misconception of California law: that a purchaser is obligated to assume the seller's liabilities. Based on strong policy reasons, the reverse is true. Purchasers are generally *not* liable for the seller's liabilities, and no exceptions to this rule of "successor nonliability" apply here.

#### 1. General Rule of Successor Nonliability.

As a general rule, "where one corporation sells or transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former." (*Chaknova v. Wilbur-Ellis Co.*, 69 Cal.App.4th 962, 967 (1999) [affirming summary judgment in favor of purchaser] [hereafter "*Chaknovav*"].) The exceptions are where:

> (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts.

(See *Franklin v. USX Corp.*, 87 Cal.App.4th 615, 627 (2001) [also noting "product line successor rule" for strict liability cases, not applicable here] [hereafter "*Franklin*"].)[2] As discussed below, none of these apply.

---

[2] In real property transactions, there is also potential for privity of estate and obligations running with the land; however, as discussed below, privity for a tenant like DT is based on possession, DT lacked possession, and there was no privity of estate.

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**2.**     **Capella Did Not Assume the ARL**

The Second Amendment is clear.  Capella expressly did *not* assume the ARL.  (See Second Amendment, undisputed material fact ("UMF") 35.)  Therefore, the first exception to the rule of successor non-liability does not apply.

DT argues that the Second Amendment should be "set aside" to require Capella to assume the ARL as set forth in the Sale Agreement.  However, nothing in the law of successor liability or otherwise permits rewriting of the contract agreed upon between Capella and Toyama, and, furthermore, even under the Sale Agreement, Capella did not assume the ARL.

**a.**     **California Law Does Not Permit or Justify Rewriting the Parties' Legal Agreements.**

The general rule of successor non-liability *permits* contracting parties to sell assets without assumptions.  That is why the first exception to the rule is where the parties elect to sell assets *with* assumptions.  In other words, the general rule recognizes the freedom of parties to agree—or not agree—or, pertinent here, to assume—or not assume.  California law also permits parties to amend their contracts in any legal fashion.  There is no dispute that Toyama and Capella amended their contract.  They entered into the Second Amendment and that amendment and the portions of the Sale Agreement that were unchanged and incorporated into that amendment constitute the final agreement of the parties.  Nothing in the law of successor liability or otherwise requires that, in order not to assume an obligation, the purchaser has to set that term forth in its first agreement relating to the matter (or first draft or first letter of intent or otherwise).

Nor can DT attempt to contest Toyama or Capella's right to make amendments to their contract based on a third-party beneficiary theory.  First, DT is not a third-party beneficiary of the Sale Agreement, and, indeed, DT has denied that it is making any such claim in this matter. (See Opposition to Defendants' Motion to Dismiss Complaint [Doc. No. 32 in Case No. CV-11-002696 SI], p. 17 ["Dollar Tree…Is Not Claiming to be a Third Party Beneficiary of the Sale Agreement"].)  Further, even if it were, it could not contest an amendment to the agreement.  (See *Karo v. San Diego Symphony Orchestra Association*, 762 F.2d 819, 822 (9th Cir. 1985) ["in the

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

absence of terms in a third party beneficiary contract prohibiting change or modification of a duty to an intended beneficiary, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement"].) The Second Amendment clearly and unequivocally states that Capella is not assuming the ARL; the agreement is integrated; and its terms must be enforced. (See *Franklin* at 622-23 [finding that integrated contract was clear in not providing for assumption and that introduction of extrinsic evidence to show otherwise was improper.)

### b. Capella Did Not Assume the ARL Under the Sale Agreement.

In any event, even under the terms of the Sale Agreement, Capella did not assume the ARL.

First, Section 7.3(b) of the agreement merely provided for Capella to perform contemplated terms of *a settlement agreement* which never came to pass, not the ARL itself:

> **Dollar Claims**. Seller shall enter into a full settlement with Dollar Tree and shall make such cash payments required thereunder as may be required by Dollar Tree; however, it is currently contemplated that Dollar Tree will require (i) construction of its leased premises, and (ii) the posting of Letter of Credit in favor of Dollar Tree in the amount of $1,000,000, as security for such construction obligation; and upon Closing Buyer shall assume such obligations.

(See UMF 35.) The section is entitled "Dollar Claims," describes the terms of a settlement "as currently contemplated" between DT and Toyama including the posting of a $1,000,000 Letter of Credit in favor of DT, and requires Capella to perform "such obligations" upon Closing. There is no mention whatsoever of the ARL, of Toyama's obligations under the ARL, or of any intent by Capella to assume those obligations. Indeed, the "obligation" to post a $1,000,000 Letter of Credit does not even exist under the ARL, and is solely a product of a then "currently contemplated" settlement agreement. It is indisputable and obvious that DT and Toyama never entered into a settlement agreement, much less a settlement based on the then currently contemplated terms that Capella agreed to assume. Without such a settlement, Toyama has no settlement obligations, and there simply are no settlement obligations for Capella to assume.

Second, Exhibit B of the Sales Agreement also does not result in an assumption. It was never signed. Moreover, even if it had been signed, the assumption provision therein is precisely the kind of provision that this Court has already held would not impose an obligation to construct

DT's store or otherwise respond to DT's claims of breach by Toyama. Specifically, the (unsigned) Bill of Sale provides: "Buyer assumes all obligations under the Leases and Service Contracts *arising on and after the date hereof*." (*Id*., ¶2.)

In this Court's December 1, 2010 Order Granting Comerica's Motion to Dismiss the Amended Complaint (Doc. No. 112), this Court held that, even if Comerica foreclosed and succeeded to Toyama's interests in the Center, it would not be liable for prior breaches by Toyama under Amended Lease:

> Section 5(b) of the SNDA expressly states that "[i]f Lender should succeed to the interest of Landlord under the Lease, Lender shall not be (I), liable for any act or omission of any prior landlord…." SNDA § 5(b). As Comerica argues, Dollar Tree is essentially trying to hold Comerica liable for landlord's alleged breaches of the lease, while under the SNDA Comerica could not be held liable for Toyama's acts, even if Comerica succeeded to Toyama's interests as owner of the shopping center.

(*Id*. p. 12.) Therefore, even if the parties' contract was rewritten to "set aside" the terms in the Second Amendment, the first exception to the general rule of successor non-liability still would not be met.

### c. The Other Exceptions Do Not Apply Because Capella Paid Fair Consideration

None of the other exceptions apply because Capella paid fair consideration, and DT does not allege (nor could it prove) otherwise. As held in *Franklin*, the lack of adequate consideration is required for all the other exceptions to the general rule of successor nonliability: "[T]he common denominator, which must be present in order to avoid the general rule of successor nonliability, is the payment of inadequate consideration." There is, the *Franklin* court held, a "very sound reason for the rule of nonliability in adequate cash sales: predictability":

> "Predictability is vital in the corporate field. Unforeseeable alterations in successor liability principles complicate transfers and necessarily increase transaction costs. [Citations.] Major economic decisions, critical to society, are best made in a climate of relative certainty and reasonable predictability. [¶] The imposition of successor liability on a purchasing company long after the transfer of assets defeats the legitimate expectations the parties held during negotiation and sale. Another consequence that must be faced is that few opportunities would exist for the financially troubled company that wishes to cease business but has had its assets devalued by the extension of successor liability."

(*Id*. at 625 quoting *Polius v. Clark Equipment Co*., 802 F.2d 75, 83 (3d Cir. 1986).)

MPA_Capella_FINAL.doc

This rule makes sense for the further logical reason that, if a purchaser pays fair consideration, the seller has received the full value of the asset sold, and no principle of law should require that a purchaser who has paid fair consideration should also overpay by assuming additional burdensome liabilities.

**3.     Without privity of contract or privity of estate between Capella and DT, DT cannot impose any obligations of landlord under the ARL on Capella.**

DT's alleges that "Cappella [sic] is liable as a successor for the Pau Defendants' liability to Dollar Tree under the Amended Lease, and/or is jointly and severally liable with the Pau Defendants to Dollar Tree." (FACC ¶ 168.)   To support its theory of liability against Capella, DT references several agreements that it contends created a contractual obligation on the part of Capella to perform under the ARL.  These agreements are the Sale Agreement (FACC ¶¶ 134 and 139), the Assignment and Bill of Sale, which was an exhibit to the Sale Agreement (FACC ¶136), and the ARL (FACC ¶137 [re: section R pertaining to mortgage subordination] and FACC ¶138 [re: Section W.16]).  DT, however, is not a party to the Sales Agreement and is not entitled to enforce it, the attached Assignment and Bill of Sale, or any of the amendments to the Sales Agreement.  Likewise, Capella is not liable under the ARL because it is not a party to the ARL, it has not assumed any obligations under the ARL, and there is no privity of estate between it and DT obligating it to perform any covenants in the ARL that run with the land.

**a.     DT cannot sue to enforce any of the Sale Documents.**

**(1)     DT was not a third party beneficiary under the Sale Documents, and may not sue to enforce any of them.**

DT was not an intended third party beneficiary of the Sale Agreement, the Assignment and Bill of Sale, or any of the other Sale Documents.  In fact, the Second Amendment to Sale Agreement ("Second Amendment") expressly states that DT is not an intended third party beneficiary.  (Rehon Decl., Exh. 21.)  Since it is the intention of the parties entering into the contract that determines whether or not another party is to be a third party beneficiary, the Second Amendment clearly establishes that DT is not a third party beneficiary for purposes  the Sales

Documents. (*Hess v. Ford Motor Co.,* 27 C.4th 516, 524 (2002) [intent to benefit third party is required; fact that literal interpretation of contractual language will result in benefit to third party is not sufficient to entitle that party to demand performance].)

      **(2)**      **Even if Toyama or Capella had intended DT to be a third party beneficiary, the Second Amendment would be valid and operative.**

      **(a)**      **Capella and Toyama had the absolute right to amend the Sale Agreement by entering into the Second Amendment.**

Even where a contract is made expressly for the benefit of a third party, it may be rescinded or amended at any time prior that third party taking an action in reliance on the contract. (Civil Code § 1559 ["A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind."]; *Karo v. San Diego Symphony Orchestra Association*, 762 F.2d 819, 822 (9th Cir. 1985); *Dick v. Woolson*, 106 Cal.App.2d 415, 419 (1951) [promisor may rescind until creditor-beneficary has acted in reliance]; *Riley v. Riley*, 118 Cal.App.2d 11, 15 (1953) [stating that contract may be rescinded before accepted or acted upon by beneficiary]; and *Griffin v. Williamson*, 137 Cal.App.2d 308, 317 (1955) [same].; 1 Witkin, Summary of Cal. Law (10th ed. 2005) §704, p. 791.)

      **(b)**      **At the time the Second Amendment was executed, there was no reliance on the Sales Agreement by DT leaving Capella and Toyama free to amend or even rescind the Sales Agreement.**

Here, DT admits that it did not change its position in reliance on the Sales Agreement or the Assignment and Bill of Sale. In fact, DT was entirely unaware of the Sales Agreement and Assignment and Bill of Sale until after it was amended by the Second Amendment.

In the FACC, DT admits that:

- "Unbeknownst to Dollar Tree . . . Toyama and Capella entered into a 'Sale Agreement [Mowry Crossing]' bearing a date of January 18, 2011." (FACC ¶ 128.)

- "The Pau Defendants and Capella failed to disclose the closing of the Shopping Center to Dollar Tree until nearly a month later on March 11, 2011 . . . . At that time, their counsel did not disclose the identity of the buyer or provide any documentation regarding the sale." (FACC ¶ 147.)

15

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

- Pau signed the Second Amendment on behalf of both Toyama and Capella [on] April 21, 2011 . . . ." (FACC ¶152.)

- The confidential mediation statement served on April 22, 2011 was the first time that the Pau Defendants or Capella provided any documentation to Dollar Tree regarding the sale of the Shopping Center or otherwise disclosed any purported terms of the sale." (FACC ¶ 150.)

Since the Second Amendment was executed prior to DT learning any of the terms of the Sales Agreement, it cannot and does not argue that it changed its position in reliance on the Sales Agreement or the Assignment and Bill of Sale. As a result, Capella and Toyama were free to enter into the Second Amendment.

### (3)     Parties may make contracts effective retroactively.

Under California law, Capella and Toyama had the right to make the Second Amended effective retroactively. (*Killian v. San Francisco*, 77 Cal.App.3d 1, 12 (1978) ["It is fundamental that where parties to an agreement expressly provide that a written contract entered into 'as of' an earlier date than that on which it was executed, the agreement is effective retroactively 'as of' the earlier date and the parties are bound thereby accordingly."]; *Constant D. Du Frene v. Kaiser Steel Corporation*, 231 Cal.App.2d 452, 458 (1964) ["a party of a contract may retroactively adopt prior acts or fix retroactive dates of execution for a contract"]; *Baker v. Palo Alto*, 190 Cal.App.2d 744, 757 ["city could, like any other party, retroactively adopt prior acts or fix retroactive dates of execution of the contract."]; *Action Rock Company v. Lone Pine Utilities Company*, 44 Cal.App.597, 601 (1919)["it is, moreover, the established rule that a lease, as to its commencement, may operate retrospectively from the date of its execution as well as prospectively."].) Thus, the effective date of the Second Amendment is lawful and enforceable.

### b.     There is no contractual privity or privity of estate between DT and Capella.

#### i.     There is no contractual privity between DT and Capella.

For there to be contractual privity between DT and Capella, Capella must have expressly assumed the lease.[3] This assumption must be express; it cannot be implied. (See *Kelly v. Tri-*

---

[3] DT does not allege in this action that Capella has entered into a contract directly with DT.

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

*Cities Broadcasting, Inc.* (1983) 147 Cal.App.3d 666,677 ["In the absence of an express assumption of the lease by the assignee there is no privity of contract . . ., and the assignee is not liable for the covenants which are not otherwise binding under privity of estate."]; *see also Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737, 745-46.) As set forth above, Capella was not required to assume, and did not assume, any contractual obligations under the ARL. Therefore, there is no contractual privity between DT and Capella, and Capella is not obligated to perform any obligations of landlord under the ARL based on contractual privity.

With regard to DT's argument that sections R and W.16 of the ARL can be interpreted as requiring assumption by Capella, in interpreting those provision the "whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code § 1641.) This includes section U.2., which clearly contemplates allowing Toyama to sell the Center without the purchaser assuming Toyama's contractual obligations under the ARL. (Pau Decl., Exh. 5 [ARL § U.2].) As a result, DT's interpretation of sections R and W.16 cannot be adopted without violating Civil Code section 1641.

### (1) There is no privity of estate between DT and Capella.

### (a) Possession required to create privity of estate.

Generally, where there is privity of estate between a tenant and a successor owner of the property, the new owner can be held liable for any obligations in the lease agreement that run with the land (See Friedman, et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2011) ¶¶ 2:515-2:517.) This is true regardless of whether the new owner expressly assumes the contractual obligations of the lease. (*Id.*) In this case, however, there is no privity of estate between DT and Capella (or between DT and any other defendants for that matter). There is not privity of of estate because DT does not have possession of leased premises.

To create privity of estate the tenant must have possession of the leased premises. "A transfer of the fee owner's possessory interest is key to the creation of a tenancy." (Friedman et al., Cal. Practice Guide: Landlord – Tenant (The Rutter Group 2010) ¶2:1.1, p. 2A-1.) "Like the

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

landlord's duty to deliver possession, the tenant's right to possession on the lease commencement date is *contractual*. The contractual right of possession ripens into a *property* right only when possession is in fact delivered." (Friedman et al., Cal. Practice Guide: Landlord – Tenant (The Rutter Group 2010) ¶2:856, p. 2F-2 [Italics in original] *citing Cunningham v. University Underwriters* 98 Cal.App.4th 1141, 1155-1156 (2002).) Further, where liability is establish solely through privity of estate and not privity of contract, liability ceases with cessation of possession. (See Smith et al., Cal. Practice Guide: Real Property Litigation (The Rutter Group 2011) ¶ 28:15; citing *Kelly v. Tri-Cities Broadcasting, Inc.* (1983) 147 Cal.App.3d 666.) Thus, "[w]here an assignee is no longer in possession, the privity of estate is terminated. (*Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232])

Here, it is undisputed that DT does not have possession of the leased premises (original or replacement). DT openly admits the following in the FACC:

- "**Dollar Tree vacated and ceased operating its store** on September 15, 2008, as it was contractually required under the Amended Lease." (FACC ¶ 12 [emphasis added].)

- "The conditions under which **Dollar Tree agreed to vacate** the leased premises were embodied in the Amended Lease . . . **Dollar Tree was obligated to vacate** the leased premises within sixty (60) days after the Effective Date of the Amended Lease . . . ." (FACC ¶ 110 [emphasis added].)

- "Approximately 45 days thereafter, as it was contractually required, **Dollar Tree vacated the premises** on September 15, 2008." (FACC ¶ 119 [emphasis added].)

- "The **actual Vacation Date**, as defined in the Amended Lease, **was September 15, 2008**, so that the Pau Defendants were **obligated to deliver the Replacement Premises** under the Amended Lease by June 25, 2009." (FACC ¶ 124 [emphasis added].)

- "The Pau Defendants have **failed and continue to fail to build and** deliver the Replacement Premises pursuant to the Amended Lease." (FACC at ¶ 125 [emphasis added].)

- "The Pau Defendants breached the Amended [Lease] **by failing** to satisfy any of the nine **delivery conditions** set forth in Section D of the Amended Lease, **including**, but not limit to, the condition of **delivering possession** of the Replacement Premises to Dollar Tree by June 25, 2009." (Third Amended Complaint at ¶ 164 [emphasis added].)

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI and 11-CV-002696

- "The Pau Defendants owe Dollar Tree Liquidated Damages of $2,500 per day for each day after June 15, 2009 that the Pau Defendants **fail to deliver possession** of the Replacement Premises **to Dollar Tree** . . . ." (Third Amended Complaint at ¶ 165 [emphasis added].)

Since there is no possession, there is no privity of estate between DT and Capella, and it cannot be a basis for recovering damages from Capella. Further, any right DT may have to possession is merely a contractual right, and not a property right since DT freely surrendered possession of the original premises and has not taken possession of the replacement premises. (Friedman et al., Cal. Practice Guide: Landlord – Tenant (The Rutter Group 2010) ¶2:856, p. 2F-2 [Italics in original] *citing Cunningham v. University Underwriters* 98 Cal.App.4[th] 1141, 1155-1156 (2002).) Since there is no privity of contract and no privity of estate between DT and Capella, DT cannot enforce any of the obligations set forth in the ARL against Capella.

> **(b)** **Even if there was privity of estate, Capella cannot be held liable for any breach of the ARL attributable to Toyama.**

Even if DT was in possession of the leased premises thereby creating privity of estate between it and Capella, Capella would not be held liable for any breach allegedly committed by Toyama. The scope of Capella's liability, assuming there was privity of estate, would necessarily be limited by Civil Code section 1466. Section 1466 provides:

> No one, merely by reason of having acquired an estate subject to a covenant running with the land, is liable for a breach of the covenant before he acquired the estate, or after he has parted with it or ceased to enjoy its benefits.

Given Civil Code section 1466 limitation on liability, even with privity of estate, Capella would only be liable for its own breaches of the ARL. Since there is no contractual privity or privity of estate, however, Capella is not liable to DT for any of its alleged damages.

### 4. Capella is a separate entity.

It is undisputed that Capella is a separate entity from Toyama. Capella was properly formed and organized. It has its own investors. (UMF 7.)

Indeed, even Dollar Tree does not allege or offer any evidence suggesting that Capella is an alter ego of Pau or Toyama. While Dollar Tree contends that all of the other Defendants are

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

the alter egos of one another, it has never once alleged that Capella is an alter ego of any other Defendant. (See FACC ¶ 2 [alter ego allegation against all Defendants but not Capella].)

**B.      Capella is Entitled to Summary Judgment on Dollar Tree's Second Claim for Relief: Declaratory Judgment.**

For all of the same reasons set forth in Toyama's motion for summary judgment, Capella is entitled to summary judgment on the second claim for relief (declaratory judgment).

**C.      Capella is Entitled to Summary Judgment on Dollar Tree's Third Claim for Relief: Fraudulent Conveyance.**

For all of the same reasons set forth in Toyama's motion for summary judgment, Capella is entitled to summary judgment on Dollar Tree's third claim for relief, in which Dollar Tree claims that the Second Amendment constituted a fraudulent conveyance because it was made with actual intent to hinder, delay, or defraud Dollar Tree in violation of Civil Code section 3439.04(a)(1).[4] (FACC ¶ 188.) Capella incorporates herein all of the arguments set forth in Toyama's motion, and bases the argument that Capella is entitled to summary judgment against the third claim for relief on the same grounds on which Toyama is entitled to summary judgment. Under either Theory 1 (transfer of the ARL) or Theory 2 (transfer of the Center), DT cannot satisfy its burden of proving each element of its claim for violation of the UFTA. (CACI 4200; Civ. Code §§ 3439.04(a)(1).)

Additionally, Capella cannot be liable for the transfer of the Center because Capella took in good faith and for a reasonably equivalent value. (Civ. Code § 3439.08(a).) DT does not contend that the amount paid was not a reasonably equivalent value.

**D.      Capella is Entitled to Summary Judgment on Dollar Tree's Fifth Claim for Relief: Unfair Competition.**

For all of the same reasons set forth in Toyama's motion for summary judgment, Capella is entitled to summary judgment on Dollar Tree's fifth claim for relief, unfair competition.

---

[4] As stated in Civil Code section 3439, sections 3439 to 3439.12 are part of the Uniform Fraudulent Transfer Act ("UFTA").

MPA_Capella_FINAL.doc

# VI.   CONCLUSION

For all of the foregoing reasons, Defendant Capella requests entry of summary judgment against Plaintiff on its First Amended Consolidated Complaint and every cause of action contained therein.  Alternatively, Capella requests partial summary judgment of Plaintiff's first, second, third, and fifth claims for relief.


DATED:  November 4, 2011            REHON & ROBERTS
                                    A Professional Corporation


                            By:   Peter M. Rehon  /s/
                                  Peter M. Rehon
                                  Lisa C. Roberts
                                  Mark V. Isola
                                  Attorneys for Defendants and
                                  Counterclaimants TOYAMA PARTNERS,
                                  LLC; PETER PAU d/b/a SAND HILL
                                  PROPERTY COMPANY, a sole
                                  proprietorship; PETER PAU, in his
                                  individual capacity and as partner of SAND
                                  HILL PROPERTY MANAGEMENT
                                  COMPANY; SUSANNA PAU, in her
                                  capacity as partner of SAND HILL
                                  PROPERTY MANAGEMENT COMPANY;
                                  SAND HILL PROPERTY MANAGEMENT
                                  COMPANY, and CAPELLA-MOWRY,
                                  LLC.

MPA_Capella_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696