1  Peter M. Rehon (SBN 100123)
   Lisa C. Roberts (SBN 111982)
2  Mark V. Isola (SBN 154614)
   Tyler J. Olson (SBN 220796)
3  REHON & ROBERTS
   A Professional Corporation
4  830 The Alameda
   San Jose, CA  95126
5  Telephone: (408) 494-0900
   Facsimile: (408) 494-0909
6
7  Attorneys for Defendants and Counterclaimants
   TOYAMA PARTNERS, LLC; PETER PAU d/b/a
   SAND HILL PROPERTY COMPANY, a sole
8  proprietorship; PETER PAU, in his individual
   capacity and as partner of SAND HILL PROPERTY
9  MANAGEMENT COMPANY; SUSANNA PAU, in
   her capacity as partner of SAND HILL PROPERTY
10 MANAGEMENT COMPANY; SAND HILL
   PROPERTY MANAGEMENT COMPANY, and
11 CAPELLA-MOWRY, LLC.

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 DOLLAR TREE STORES, INC.,

16          Plaintiff,                    Case No.  CV 10 0325 SI

17     v.                                 **DEFENDANT TOYAMA PARTNERS,**
                                          **LLC'S NOTICE OF MOTION AND**
18 TOYAMA PARTNERS, LLC; COMERICA          **MOTION FOR SUMMARY**
   BANK; PETER PAU d/b/a SAND HILL         **JUDGMENT OR, IN THE**
19 PROPERTY COMPANY, a sole proprietorship; **ALTERNATIVE, PARTIAL**
   PETER PAU, in his individual capacity and as **SUMMARY JUDGMENT;**
20 partner of SAND HILL PROPERTY           **SUPPORTING MEMORANDUM OF**
   MANAGEMENT COMPANY; SUSANNA             **POINTS AND AUTHORITIES**
21 PAU, in her capacity as partner of SAND HILL
   PROPERTY MANAGEMENT COMPANY;
22 SAND HILL PROPERTY MANAGEMENT
   COMPANY, and CAPELLA-MOWRY, LLC,
23                                         Hearing Date:  December 16, 2011
24          Defendants.                    Time:               9:00 a.m.
                                          Courtroom:        10
25                                         Judge:             Hon. Susan Illston

26                                         Date action filed:  January 22, 2010
                                          Trial Date:  February 6, 2012
27

28                                                    MPA_Toyama. FINAL.doc
                                    1

| | |
|---|---|
| PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC, | |
| Counterclaimants, | |
| v. | |
| DOLLAR TREE STORES, INC. | |
| Counter-Defendant. | |
| | |
| DOLLAR TREE STORES, INC., | Case No.  CV 11 002696 SI |
| Plaintiff, | |
| v. | |
| PETER PAU, TOYAMA PARTNERS, LLC, and CAPELLA-MOWRY, LLC. | |
| Defendants. | |
| | |
| TOYAMA PARTNERS, LLC, CAPELLA-MOWRY, LLC, PETER PAU, individually and d/b/a SAND HILL PROPERTY COMPANY, | |
| Counterclaimants, | |
| v. | |
| DOLLAR TREE STORES, INC., | |
| Counter-Defendant. | |

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, December 16, 2011, at 9:00 a.m., in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 18th Floor, Courtroom 10, San Francisco, California 94102, before the Honorable Susan Illston, United States District Judge, Defendant Toyama Partners, LLC ("Toyama") will and hereby does move for summary judgment of all claims brought against it by plaintiff Dollar Tree Stores, Inc. ("DT").

Toyama's motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that no genuine issue of material fact exists with respect to said claims and Toyama is entitled to summary judgment as a matter of law. Toyama seeks a grant of summary judgment on all claims on the grounds set forth in the memorandum including: (i) Toyama is entitled to summary judgment on DT's First Claim for Breach of the Amended and Restated Lease ("ARL") because the provisions of the lease bar the relief sought by DT; (ii) Toyama is entitled to summary judgment on DT's Second Claim for Declaratory Relief because the liquidated damages remedy in the ARL is an illegal penalty; (iii) Toyama is entitled to summary judgment on DT's Third Claim for Fraudulent Transfer for multiple independent reasons including that DT's claim is essentially an improper claim for fraudulent breach of contract, no asset was transferred within the meaning of the Uniform Fraudulent Transfer Act (the "UFTA"), and DT's claim is an improper attempt to rewrite the sales agreements contrary to California's general rule of successor nonliability, protection of freedom of contract, and real property privity rules; and (iv) Toyama is entitled to summary judgment on DT's Fifth Claim for Unfair Competition because its inclusion of the claim was in violation of this Court's March 11, 2011 Order (Doc. No. 155), is based solely on Toyama's alleged breach of the ARL, does not state a claim for unfair competition, and would violate the exclusive remedy provision of the ARL. In the alternative, should this Court find that summary judgment as to the entire action is not warranted, Toyama requests that the Court grant partial summary judgment as to all appropriate claims and issues pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

1    Toyama's motion is based on this Notice of Motion and Motion, the supporting

2    Memorandum of Points and Authorities set forth herein below, the Declarations of Peter M.

3    Rehon and Peter Pau and all exhibits thereto, the complete files and records in this action, and

4    such additional evidence and arguments as may hereinafter be presented.

5    DATED:  November 4, 2011                    REHON & ROBERTS
                                                  A Professional Corporation
6

7                                        By:    Peter M. Rehon  /s/
                                                Peter M. Rehon
8                                               Lisa C. Roberts
                                                Mark V. Isola
9                                               Attorneys for Defendants and
                                                Counterclaimants TOYAMA PARTNERS,
10                                              LLC; PETER PAU d/b/a SAND HILL
                                                PROPERTY COMPANY, a sole
11                                              proprietorship; PETER PAU, in his
                                                individual capacity and as partner of SAND
12                                              HILL PROPERTY MANAGEMENT
                                                COMPANY; SUSANNA PAU, in her
13                                              capacity as partner of SAND HILL
                                                PROPERTY MANAGEMENT COMPANY;
14                                              SAND HILL PROPERTY MANAGEMENT
                                                COMPANY, and CAPELLA-MOWRY,
15                                              LLC.

16

17

18

19

20

21

22

23

24

25

26

27

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT...................................................1

II.    STATEMENT OF ISSUES ...........................................................................3

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................3

IV.    SUMMARY JUDGMENT STANDARD...........................................................9

V.     ARGUMENT.........................................................................................................9

      A.     Toyama is entitled to Summary Judgment on DT's First Claim for Breach
            of the ARL. ...................................................................................................9

            1.     DT has only two exclusive remedies – cancellation of the ARL and
                 recovery of Liquidated Damages – and the LD provision is
                 unenforceable as a matter of law.................................................................9

                 a.     The ARL expressly limits the remedies available to DT in
                     the event Toyama defaults in its performance under Section
                     D.1.a. of the ARL. .........................................................................10

                 b.     The liquidated damages provision, which is found in
                     Section D.1.c. of the ARL, is an unenforceable penalty. ................10

                 c.     Based on the undisputed facts, the liquidated damage
                     provision is an unenforceable penalty..............................................11

                 d.     Under both the ARL and California law, the ARL's
                     unlawful and unenforceable liquidated damages provision
                     must be stricken. ...........................................................................14

             2.     The Non-Recourse language of the ARL prevents any recovery for
                 money damages against Toyama, and limits DT to recourse solely
                 against the Center.......................................................................................15

                 a.     The ARL limits DT's Recover to Toyama's interest in the
                     Center. ............................................................................................15

                 b.     Section U.1. of the ARL is valid and enforceable under
                     California law. ................................................................................15

                     c.     Any monetary judgment against Toyama would be
                     unenforceable and futile.................................................................16

      B.     Toyama is entitled to Summary Judgment on DT's Second Claim for
             Declaratory Relief as to DT's claim for recovery of Liquidated Damages..16

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

C.  Toyama is Entitled to Summary Judgment on Dollar Tree's Third Claim
    for Relief:  Fraudulent Conveyance. ...........................................................16

    1.  DT's two theories for recovery under the UFTA amount to nothing
        more than a claim for fraudulent breach of contract. ...................17

    2.  As to either of its theories, DT cannot establish the required
        elements of a UFTA claim. ..........................................................19

        a.  DT cannot establish that it has a claim against Toyama. ...............20

        b.  DT cannot establish that an "asset" was "transferred." ..................20

            (1)  Because the ARL cannot be sold to generate funds, it
                 is not an asset under the UFTA. ..........................................21

            (2)  The Center cannot satisfy the requirement of an
                 "asset." ................................................................................21

            (3)  The Second Amendment – which is at the heart of
                 DT's UFTA claim – did not cause a transfer of any
                 asset. ...................................................................................22

        c.  DT cannot establish that Toyama acted with intent to hinder,
            delay, or defraud creditors. ............................................................24

        d.  DT cannot establish that it suffered any damage as a result
            of the allegedly fraudulent transfers. .............................................24

    3.  The Sale of the Center to Capella was not a fraudulent transaction. ..........25

D.  Toyama is entitled to Summary Judgment on DT's Fifth Claim for Unfair
    Competition because DT dropped its fraud claim. ..................................26

    1.  Since DT failed to pled claims for fraud, fraudulent omission and
        misrepresentation, DT's Fifth Claim for Relief is barred by the
        Court's March 11, 2011 order. ...................................................26

    2.  Toyama's conduct, as alleged in the FACC, did not constitute an
        unlawful, unfair, or fraudulent act or business practice. ............................26

    3.  DT cannot recover its damages based on its Fifth Claim for Relief. ..........27

VI.  CONCLUSION ..................................................................................28

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ....................................................................9

*Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992) ........................................................28

*BNSF Railway Company v. San Joaquin Valley Railroad Company*, 2011 WL 3328398
    (E.D. Cal. 2011) ........................................................................................................................27

*Bolen v. Parks*, 149 Cal.App.2d 460 (1957) ...............................................................................15

*British Airways BD v. Boeing Co.,* 585 F.2d 946 (9th Cir. 1978) .................................................9

*Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4th 28...........................................................27

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ...............................................................................9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163 (1999) .....................28

*Committee on Children's Television, Inc. v. General FoodsCorp.*, 35 Cal.3d 197 (1983) ...........27

*Ed Peters Jewelry Co. v. C & J Jewelry Co.,*124 F.3d 252 (1st Cir. 1997)...................................24

*Eisenberg v. Ins. Co. of N Am.*, 815 F.2d 1285 (9th Cir. 1987) ......................................................9

*Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal.App.4th 834 (2009)........................................21

*First Advantage Background Services Corp. v. Private Eyes, Inc.*, 2007 WL 2572191, 3 (N.D.
    Cal. 2007)....................................................................................................................................18

*Fischer v. First Int'l Bank*, 109 Cal.App.4th 1433 (2003)...........................................................22

*Franklin v. USX Corp.*, 87 Cal.App.4th 615 (2001) .....................................................................26

*Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85 (1995) .....................................................27

*Garrett v. Coast & Southern Fed. Sav. & Loan,* 9 Cal.3d 731 (1973) .........................................11

*Greentree Financial Group, Inc. v. Execute Sports, Inc.,* 163 Cal.App.4th 495 (2008) .....10, 11, 12

*Harbor Island Holdings v. Kim*, 107 Cal.App.4th 790 (2003) ...........................................10, 11, 13

*In re Blatstein*, 226 B.R. 140 (E.D. Pa. 1998) ...............................................................................23

*In re First Alliance*, 471 F.3d 977 (9th Cir. 2006)....................................................................19, 26

MPA_Toyama. FINAL.doc

iii

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

*In re Greenhaw Energy, Inc.*, 359 B.R. 636 (Bankr. S.D.Tex. 2007) ...........................24

*In re Valente*, 360 F.3d 256 (1st Cir. 2004).......................................................24

*Karo v. San Diego Symphony Orchestra Association*, 762 F.2d 819 (9th Cir. 1985) ...................18

*Kirkeby v. Superior Court of Orange County*, 33 Cal.4th 642 (Cal. 2004) ..................................21

*Lockerby v. Sierra,* 535 F.3d 1038 (9th Cir.2008) ....................................................18, 27

*Mehrtash v. Mehrtash*, 93 Cal.App.4th 75 (2001)...........................................20, 21, 25

*Mejia v. Reed*, 31 Cal.4th 657 (2003) ...........................................................21

*Philip Lee v. Placer Title Company*, 28 Cal.App.4th 503 (1994)......................................10

*Pioneer Liquidating Corp. v. San Diego Trust & Sav. Bank*, 211 B.R. 704 (S.D.Cal.1997).........19

*Poseidon Development, Inc. v. Woodland Lane Estates, LLC,* 152 Cal.App.4th 1106 (2007) .......11

*Reese v. BP Exploration (Alaska), Inc.*, 643 F.3d 681 (9th Cir. 2011)...........................27

*Ridgley v. Topa Thrift and Loan Association,* 7 Cal.4th 970 (1998) ...............................11

*Robinson Helicopter Co., Inc. v. Dana Corp*, 34 Cal.4th 979 (2004) ...............................27

*Yaesu Electronics Corp. v. Tamura*, 28 Cal.App.4th 8 (1994) ......................................21

**Statutes**

Civil Code § 1559 ..............................................................................18

Civil Code § 1599 ..............................................................................14

Civil Code § 1671(b) ..........................................................................10

Civil Code § 2941 ..............................................................................22

Civil Code § 3439.01 ..........................................................................21

Civil Code § 3439.01(a).......................................................................22

Civil Code § 3439.01(j) .......................................................................22

Civil Code § 3439.04(b) ....................................................................22, 24

Civil Code § 3439.06(a)(1) ...................................................................23

Civil Code § 3439.08(b) ......................................................................25

MPA_Toyama. FINAL.doc

iv

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

Civil Code § 3439.01(b) ...............................................................................................................20

Civil Code § 3439.04(a)(1) .....................................................................................................17, 20

**Other Authorities**

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 750 ..................................................14

49 California Forms of Pleading and Practice, § 565.31 (Matthew Binder) ...........................27, 28

Alces and Dorr, *A Critical Analysis of the New Uniform Fraudulent Transfer Act*, 1985 U. Ill. Law Rev. 527 ...........................................................................................................................21

Friedman, et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2011) ¶4:29.5 ..........10

Retail Leasing: Drafting and Negotiating the Lease (2 Cont.Ed.Bar 2010) Default and Remedies, §§ 27.53........................................................................................................................................15

MPA_Toyama. FINAL.doc

v

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Dollar Tree Stores, Inc. ("DT") asserts four claims for relief against Defendant Toyama Partners, LLC ("Toyama"): (1) breach of the Amended and Restated Lease ("ARL") based on Toyama's alleged breach in failing to construct and deliver a store to DT at the Mowry Shopping Center (the "Center"); (2) declaratory relief regarding the enforceability of the DT's liquidated damages remedy under the ARL; (3) fraudulent conveyance based on the sale of the Center from Toyama to defendant Capella-Mowry, LLC ("Capella"); and (4) unfair competition based on Toyama's alleged breach of the ARL. (See DT's First Amended Consolidated Complaint [Doc. No. 338; the "FACC"].) Toyama is entitled to summary judgment on DT's each and every claim asserted by DT.

**DT's Breach of Contract Claim**

Toyama is entitled to summary judgment on DT's First Claim for Breach of the ARL for two separate and distinct reasons.

First, the ARL expressly permits DT, as its "*sole and exclusive remedy*" for a failure to construct and deliver a store *either* to (i) "charge…liquidated damages," *or* (ii) "cancel this lease, with no further obligation thereunder." (See ARL attached as Exhibit 5 to the Declaration of Peter Pau ("PD"), §D.1.c.). The liquidated damages constitute an unenforceable penalty. Under the terms of the ARL and California law, DT's right to charge such liquidated damages must be stricken from the ARL. California law does not permit augmentation to replace unenforceable provisions, and DT's only remaining "sole and exclusive remedy" is cancellation of the ARL. DT does not seek cancellation of the ARL. Therefore, it does not seek any available recovery for Toyama's alleged breach, and Toyama is entitled to summary judgment on DT's breach of contract claim as a matter of law.

Second, even if DT could augment and rewrite the ARL to permit recovery of damages, it still would have no right to a judgment against Toyama because the ARL is expressly non-recourse to Toyama. In a customary and enforceable provision in its own form of lease, DT

expressly agreed to seek recovery only against the landlord's interest in the Center or proceeds thereof. (ARL §U.1.) Based on the sale of the over-encumbered Center by Toyama to Capella for adequate and proper consideration and the payment of the proceeds to pay secured and other non-disputed debts, Toyama has no interest in the Center or the proceeds, and DT has no recourse against Toyama.

### DT's Declaratory Relief Claim

Toyama is entitled to summary judgment on DT's Second Claim for Declaratory Relief because the liquidated damages remedy in the ARL is an illegal penalty, and DT is not entitled to a declaration that the remedy is enforceable.

### DT's Fraudulent Transfer Claim

Toyama is entitled to summary judgment on DT's Third Claim for Fraudulent Transfer for multiple separate and distinct reasons. First, both of DT's two theories (one based on the transfer of the Center and the other based on the alleged separate transfer back of the ARL) are effectively claims for "fraudulent" breach of contract, a claim expressly disallowed under California law.

Second, the Uniform Fraudulent Transfer Act (the "UFTA") under which DT sues provides recovery only to plaintiffs with a "right to payment," and, as discussed above, DT has no right to payment from Toyama.

Third, the Center is not an "asset" subject to the UFTA because it was indisputably over-encumbered at the time of the transfer.

Fourth, the ARL is not an asset as defined by the UFTA because it does not constitute property that, but for the transfer, would have been available to satisfy DT's alleged claim nor, with Dollar Tree's multi-million-dollar damage claim, an asset in any sense of the term.

Fifth, DT's claim does not seek to set aside any transfer subject to the UFTA but to rewrite the sales agreements to force Capella to assume the ARL, which, as discussed below and in the Capella motion, is contrary to California's general rule of "successor nonliability," protection of freedom of contract, and real property privity rules.

2

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**DT's Unfair Competition Claim**

Toyama is entitled to summary judgment on DT's Fifth Claim for Unfair Competition because its inclusion of the claim was in violation of this Court's March 11, 2011 Order (Doc. No. 155), is based solely on Toyama's alleged breach of the ARL, does not state a claim for unfair competition, and would violate the exclusive remedy provision of the ARL.

## II.   STATEMENT OF ISSUES

(Civil Local Rule 7-4(a)(3))

1.   Is Toyama entitled to summary judgment on DT's First Claim for Breach of Contract?

2.   Is Toyama entitled to summary judgment on DT's Second Claim for Declaratory Relief?

3.   Is Toyama entitled to summary judgment on DT's Third Claim for Fraudulent Transfer?

4.   Is Toyama entitled to summary judgment on DT's Fifth Claim for Unfair Competition?

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The following are the undisputed material facts supporting this motion:[1]

1.      DT is a Virginia Corporation and is the "nation's largest single price point variety retail store, with close to 4,000 stores nationwide." FACC at ¶¶ 22 and 63.

2.      Toyama is a duly formed California limited liability company, and Peter is its manager. FACC at ¶23; Comerica Depo.Ex. 1, 4, 5, 49, 50 attached and authenticated at the Declaration of Peter M. Rehon ("Rehon Dec."), Ex. 1, 3, 4, 10, 11.

3.      Toyama was originally formed on June 20, 1997 by all of its seven members other than Peter, and on October 26, 2005, Toyama admitted Peter as a member and as its sole manager. Comerica Depo. Ex. 4, p. 1 at Rehon Dec., Ex. 3.

---

[1] For ease of reference, each undisputed material fact discussed below will be cited and hereinafter referred to as "UMF 1" etc.

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

4.      Toyama has and had seven investors, not including Peter, whose capital accounts totaled approximately $8,307,950 as of October 26, 2006.  Comerica Depo. Ex. 4 at Rehon Dec., Ex. 3.

5.      Sand Hill Property Company is a sole proprietorship owned and operated by Peter.  FACC at ¶24.

6.      Sand Hill Property Management Company is a duly organized California general partnership consisting of two partners, Peter and Susanna.  FACC at ¶27.

7.      Capella-Mowry, LLC ("Capella") is a duly formed California limited liability company.  FACC at ¶28.

8.      Capella is owned by Capella Holdings, LLC, a duly formed California limited liability company which has five members, not including Peter.  Pau Depo Ex. 67 at Pau Dec., ¶65, Exhibit 7.

9.      On June 9, 2003, Toyama's predecessor and prior owner of the Center leased space in the Center to DT.  FACC at ¶64, and exhibit 8 thereto.

10.     On July 15, 2005, the Center was appraised by an MAI appraiser hired by Comerica who concluded that the Center's "as-is" fair market value was $29,500,000 as of that date.  Comerica Depo. Ex. 3 (pages COM 6289 – 95 only) at Rehon Dec., Ex. 2.

11.     On November 16, 2005, Toyama acquired the Center for $22,500,000 and became DT's landlord, with a combination of $9,230,446.08 in exchange funds from Toyama's investors, $1,000,000 in additional investor funds from Peter, and an acquisition and construction loan of $21 million from Comerica.  Pau Dec., Ex. 30 (Doc. T3325-36) and Ex. 4 (Docs. T11495-511).

12.     Toyama and Mervyn's executed a Ground Lease Agreement (the "Mervyn's Lease") on or about May 18, 2007.  FACC at ¶84 and exhibit 15 thereto.

13.     The Mervyn's store was to be the anchor/major store in the Center.  FACC at ¶85.

14.     On July 27, 2007, DT entered into and signed a Subordination, Nondisturbance and Attornment Agreement with Toyama and Comerica.  Comerica Depo. Ex. 27 at Rehon Dec., Ex. 6.

15.     On August 21, 2007, Comerica agreed to lend to Toyama the sum of $39 million, secured by a first deed of trust on the Center, and the sum of $3,265,000, on an unsecured basis.

(collectively, the "Comerica Loans"), pursuant to certain loan agreements marked as exhibits 30 - 43 to the deposition of Comerica's senior vice president, David Lardner. Rehon Dec., Ex. 5, 7, 8, 9; Comerica Depo. Ex. 121 at Rehon Dec., Ex. 16.

16.     Comerica's senior vice president, David Lardner, testified that Comerica had concluded that Toyama was sufficiently capitalized and credit-worthy to warrant the making of the Comerica Loans.   Rehon Dec., Ex. 29, Tr. 35:5-9, 36:6-18.

17.     On July 18, 2008, Toyama and DT entered into the ARL.  FACC at ¶109, exhibit 5 thereto.

18.     The ARL:

    a.     Plainly identifies the landlord as Toyama (ARL, pp. 1 and 29).

    b.     Has an integration clause (ARL § W.19, p. 28).

    c.     Contains a clear non-recourse clause, stating that DT is strictly limited to recovering any damages against the Center only, and DT cannot recover any deficiency against Toyama or any of its "partners." (ARL § U.1., p. 24).

    d.     Specifically permits Toyama to sell the Center (ARL § U.2., p. 25).

    e.     States that if Toyama does sell the Center, the purchaser may, but is not required to, assume all liabilities and obligations under the ARL (ARL § U.2., p. 25).

    f.     Gives DT one of two exclusive remedies if Toyama fails to perform any delivery condition under the ARL: DT can impose a $2500 a day late fee for every day Toyama fails to perform any delivery condition under the ARL or it can cancel the ARL (ARL § D.1.c., p. 9; FACC at ¶ 114).

    g.     Has a severability clause (ARL § W.9).

19.     DT's designee witness, Bruce Walters, testified that:

    h.     DT never did a financial analysis with respect to the liquidated damages amount set forth in the ARL prior to entering into the ARL.  Walters Depo. 543:16-544:8 at Rehon Dec., Ex. 27.

MPA_Toyama. FINAL.doc

       i.      DT never did an estimate of damages it might suffer as a result of a breach of the ARL prior to entering into the ARL. Walters Depo. 548:19-549:5 at Rehon Dec., Ex. 27.

       j.      The purpose of the liquidated damages provision was to make sure that DT "got the store back open." Walters Depo. 545:10-13 at Rehon Dec., Ex. 27.

20.      Prior to entering into the ARL with Toyama, DT employees wrote emails—and even its letter of intent for the ARL—referring to DT's late fee as a "penalty." DT Depo. Ex. 109 ("$1500/day penalty for late delivery"); 111 ("Late penalty of $2500/day is okay"); 143, at page DTS 178 ("a penalty of $2500 per day . . . .") at Rehon Dec., Exx. 24, 25, 26.

21.      On July 29, 2008, Mervyn's filed for bankruptcy. FACC at ¶118.

22.      On September 15, 2008, Dollar Tree closed its store and vacated the Center. FACC at ¶12.

23.      By email dated November 13, 2008, Comerica notified Toyama that it had ceased its funding under the Comerica Loans due to the bankruptcy filing of Mervyn's. FACC at ¶¶13, 84, and 121; Exhibit 23 thereto.

24.      On June 12, 2009, DT's counsel wrote a demand letter to Comerica, repeatedly referring to Toyama, and only Toyama, as the "landlord." Comerica Depo. Ex. 91 at Rehon Dec., Ex. 12.

25.      On June 25, 2009, the Anticipated Delivery Date under the ARL, DT sent its notice of default to Toyama repeatedly referring to Toyama, and only Toyama, as the "landlord." FACC ¶124; Comerica Depo. Ex. 92 at Rehon Dec., Ex. 13.

26.      On October 21, 2009, Brian Horton, the Comerica special assets officer in charge of the Comerica Loans to Toyama, wrote an email stating that "[b]ased on my analysis . . . the 'as-is' value [of the Center] is approximately $10MM, which would result in a +/- $14MM write-off." Comerica Depo. Ex. 94, page 4 at Rehon Dec., Ex. 14.

27.      On January 22, 2010, DT commenced this lawsuit, suing Toyama, and specifically identified Toyama, and only Toyama, as the landlord under the ARL. Complaint (Doc. No. 1) at ¶¶ 7 and 19.

MPA_Toyama. FINAL.doc

28. On February 24, 2010, Comerica commenced its non-judicial foreclosure proceeding against its deed of trust on the Center by recording a Notice of Default, stating that the amount due by Toyama on the Comerica Loans as of February 17, 2010 was $22,351,274.00. Comerica Depo. Ex. 104 at Rehon Dec., Ex. 15.

29. On May 10, 2010, DT filed a verified first amended complaint, again specifically identifying Toyama, and only Toyama, as the landlord under the ARL. First Amended Complaint (Doc No. 61; "FAC") at ¶¶ 30 and 45.

30. On August 9, 2010, Toyama and Comerica entered into a Settlement Agreement and Release (Comerica Depo.Ex. 123 at Rehon Dec., Ex. 17) ("August Agreement") which was terminated on December 28, 2010 pursuant to paragraph 11 of the August Agreement (Pau Dec. Ex. 6).

31. On January 25, 2011, Peter informed DT of the potential sale of the Center by Toyama to Capella, that Peter was Capella's manager, and that the sale had to be accomplished quickly because of Comerica's foreclosure and the purchaser's need to close the sale to avoid tax liability under IRC 1031. DT Depo. Ex. 38 (Rehon Dec. 23).

32. On February 15, 2011, Toyama and Comerica entered into an agreement entitled "Settlement Agreement and Release (Short-Sale Payoff)" (the "Short-Sale Agreement") by which Comerica consented to the sale of the Center by Toyama to Capella for the proposed purchase price of $19.2 million, of which Comerica would accept the sum of $17,050,000, with $16,050,000 to be applied to repayment of the Comerica Loans and $1 million to be held by Comerica as collateral to support performance under the terms of the Short-Sale Agreement. Under the Short-Sale Agreement, Comerica agreed to release its deed of trust on the Center if it received the aforementioned funds. Comerica Depo. Ex. 121 at Rehon Dec., Ex. 16.

33. As of February 15, 2011, as set forth in the Short-Sale Agreement, the principal balance due by Toyama to Comerica on the Comerica Loans was $24,002,670.74, plus accrued interest, fees, and expenses. Comerica Depo. Ex. 121, p. 2, ¶ D (Rehon Dec., Ex. 16).

34. The sale of the Center by Toyama to Capella closed on February 16, 2011. Comerica Depo.Ex. 151 (Rehon Dec., Ex. 18).

MPA_Toyama. FINAL.doc

7

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

35.     Each of the agreements which memorialized the sale of the Center by Toyama to Capella, the Sale Agreement, the First Amendment, and the Second Amendment, contains a provision for DT if its claims were settled. DT Depo. Exx. 32, 33, 34 at Rehon Dec., Exx. 19, 20, 21.

36.     At the time of the sale, Comerica was foreclosing on its deed of trust and had not rescinded its Notice of Default (Lardner Depo. 134:6-9 at Rehon Dec., Ex. 29) and was still able to go forward with its foreclosure at any time at the time of the sale (Horton Depo. 203:9-11 at Rehon Dec., Ex. 30).

37.     The Comerica employees handling the Comerica Loans, David Lardner and Brian Horton, testified that the Capella sale price was the highest offer the Bank received (Lardner Depo. 243:6-9, Rehon Dec., Ex. 29), was the Bank's best chance of recovering most of its principal (Horton Depo. 196:4-6 at Rehon Dec., Ex. 30) and was the best price the Bank could get (Horton Depo. 87:2-88:6 at Rehon Dec., Ex. 30).

38.     As a result of the sale, and on February 16, 2011, substantially all of Toyama's secured and unsecured creditors were paid, including Comerica, paid $16,050,000; Taisei Construction, paid $500,000; Ozie Electric, paid $60,000; BKF, paid $35,000; Terranomics Retails Service, paid $47,675; SHP, paid $652,000 and $245,728.99; Wesco Distribution, paid $6,442.35; and the County of Alameda paid $390,595.16 for property taxes. Pau Dec. ¶101; see also Rehon Dec. Ex. 18 (Final Bilateral Settlement Statement from First American Title dated February 16, 2011 showing how the sale was funded and how the proceeds were used).

39.     In addition to paying the above creditor claims, which totaled $17,987,440, funds from the First American Title Holdback Account from the escrow were used to pay four other creditors of Toyama who had undisputed and liquidated claims against Toyama which arose from construction on the Center:

        a.      Arrow Sign Company, paid $175,000 on June 30, 2011;

        b.      Complete Decon, Inc., paid $60,000 in July 2011;

        c.      Economy Trucking Services, Inc., paid $38,000 in July 2011; and

        d.      Red Hills Environmental, LLC, paid $5,720 in July 2011. Pau Dec. ¶102

MPA_Toyama. FINAL.doc

40.     On April 21, 2011, DT entered into a settlement agreement with Comerica (the "DT/Comerica Agreement"), which, among other things, released all claims against Comerica, and specifically identified the landlord under the ARL as Toyama, and only Toyama, in the factual recitals.  DT Depo. Ex. 36 at Rehon Dec., Ex. 22.

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is a method for the prompt disposition of an action in which there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(b). Although the burden of establishing that there is no genuine issue of material fact lies with the moving party, in cases where the nonmoving party bears the ultimate burden of proof, the moving party may meet its burden by pointing to the absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986). Once the moving party has met this burden, Fed. R. Civ. P. 56(e) shifts the burden of presenting specific facts showing a genuine issue for trial to the nonmoving party. *See British Airways BD v. Boeing Co.,* 585 F.2d 946, 950-52 (9th Cir. 1978).

A party opposing summary judgment may not rest upon the mere allegations or denials of its pleadings, and a mere "scintilla" of evidence supporting the nonmoving party's position will not suffice. There must be enough of a showing that the jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Thus, the question in a summary judgment motion is whether reasonable minds could differ over the import of the evidence after all inferences are drawn in favor of the nonmoving party. *See Eisenberg v. Ins. Co. of N Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987) ("If the evidence is merely colorable [] or is not significantly probative, summary judgment may be granted.").

## V.     ARGUMENT

**A.     Toyama is entitled to Summary Judgment on DT's First Claim for Breach of the ARL.**

**1.     DT has only two exclusive remedies – cancellation of the ARL and recovery of Liquidated Damages – and the LD provision is unenforceable as a matter of law.**

As set forth below, DT's sole remedy for Toyama's alleged breach of the ARL is cancellation, and DT does not seek cancellation of the ARL in this action.

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

      a.     **The ARL expressly limits the remedies available to DT in the event Toyama defaults in its performance under Section D.1.a. of the ARL.**

Under California law, the parties to a commercial lease agreement may agree to limit the remedies available to a party in the event the other party defaults. (*Philip Lee v. Placer Title Company*, 28 Cal.App.4th 503, 511-14 (1994); see also Friedman, et al., *Cal. Practice Guide: Landlord-Tenant* (The Rutter Group 2011) ¶4:29.5.) Here, DT and Toyama expressly agreed to limit the remedies available to DT in the event Toyama failed to satisfy one or more of the ARL's delivery conditions. (UMF 18.f.)

The ARL's limitation on remedies is applicable to DT's First Claim for Relief in which DT alleges that Toyama breached the ARL by "failing to satisfy any of the nine delivery conditions . . . ." (FACC at ¶164.) If DT establishes this claim, the ARL limits DT to one of two mutually exclusive remedies. (UMF 18.f.) DT may seek liquidated damages of $2,500 per day, or it may seek the cancellation of the ARL. (*Id.*)

      b.     **The liquidated damages provision, which is found in Section D.1.c. of the ARL, is an unenforceable penalty.**

The liquidated damages provision contained in Section D.1.c. of the ARL is an unenforceable penalty and must be severed from the ARL. Civil Code section 1671, subsection (b), governs the validity of liquidated damages provision in commercial leases, and provides:

> . . . a provision in a contract liquidating damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.

(Civ. Code § 1671(b).)

The question of whether or not a provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law to be decided by the Court. (*Harbor Island Holdings v. Kim*, 107 Cal.App.4th 790, 794 (2003) (hereafter "*Harbor*"); *Greentree Financial Group, Inc. v. Execute Sports, Inc.,* 163 Cal.App.4th 495, 499 (2008) (hereafter "*Greentree*").) In evaluating the reasonableness of a liquidated damages provision, the only circumstances that are relevant are "those in existence 'at the time the contract was made.'" (Law Revision Comments to Civ. Code §1671(b).) Therefore, "the validity of the liquidated damages provision depends upon

MPA_Toyama_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

its reasonableness at the time the contract was made and not as it appears in retrospect. Accordingly, the amount of damages actually suffered has no bearing on the validity of the liquidated damages provision." (*Id.*) "All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract." (*Id.*)

The leading California case interpreting Civil Code section 1671, subsection (b), is *Ridgley v. Topa Thrift and Loan Association,* 7 Cal.4th 970 (1998). In its opinion, the *Ridgley* Court noted that:

> A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages "must be construed as a penalty." [Citation.] . . . The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citation.]

(*Id.* at 977, *citing Garrett v. Coast & Southern Fed. Sav. & Loan,* 9 Cal.3d 731, 739 (1973); *see also Poseidon Development, Inc. v. Woodland Lane Estates, LLC,* 152 Cal.App.4th 1106, 1115 (2007) [In the absence of a reasonable relationship between the liquidated damages amount and "the range of actual damages that could have been contemplated at the time of contracting . . ., a contractual clause purporting to predetermine damages 'must be construed as a penalty.'"]; and *Greentree*, *supra*, at 501 [must be a rational relationship between anticipated damages and liquidated damages amount or provision is an unenforceable penalty].)

Further, where the primary purpose of the liquidated damage provision is to compel performance by imposing a charge that bears little or no relationship to the anticipated damages, the provision is an unenforceable penalty. (See *Harbor*, *supra*, at 798.)

> **c.     Based on the undisputed facts, the liquidated damage provision is an unenforceable penalty.**

Section D.1.c. of the ARL provides:

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**If all of the Delivery Conditions** (except for the Punchlist) have not been fulfilled on or before (ii) [sic] nine (9) months and ten (10) days following the Vacation Date . . . then Tenant shall have the right, in Tenant's sole discretion and as Tenant's sole and exclusive remedy, to either (i) charge as liquidated damages, which parties acknowledge will be substantially less than Tenant's actual damages and do not constitute a penalty, a late fee equal to Two Thousand Five Hundred Dollars ($2,500) per day ("Late Fee") for each day or part thereof which elapses between the Anticipated Delivery Date specified in Section A.5.a and the date when all of the Delivery Conditions shall have been satisfied by Landlord . . .

(ARL § D.1.c.)

The liquidated damages portion of Section D.1.c. is unenforceable for three reasons. First, there was no endeavor—reasonable or otherwise—by the parties at the time of contracting to estimate a fair average compensation for any loss that would result from Toyama's failure to timely satisfy the delivery conditions. DT's Designee Bruce Walters testified that DT did not do a financial analysis to arrive at the $2,500/day liquidated damages amount, (UMF 19.a.) Mr. Walters also testified that DT did not attempt to estimate the damages DT might suffer as a result of a default by Toyama. (UMF 19.b.) Since there was no reasonable endeavor by the parties to estimate a fair average compensation, the provision constitutes an unenforceable penalty. [2]

Second, there is no relationship between the liquidated damages amount and the range of actual damages that the parties could have anticipated at the time the ARL was executed would flow from a breach. In the first place the provision provides for the same remedy regardless of the severity of the breach. Under the ARL, the $2,500/day liquidated damages amount accrues whether Toyama fails to satisfy only one delivery condition or all nine delivery conditions. Thus, the provision requires Toyama to pay the same liquidated damages amount ($2,500/day) regardless of whether Toyama *entirely fails* to construct the premises or simply fails to satisfy a single relatively minor condition, such as providing utility service, including telephone service, that was separated and brought to a point of connection with the premises; or ensuring that the roof of the premises is water tight; or ensuring that all doors and plate glass is in good working order; or ensuring that the premises' façade bump was completed as designed. Clearly, the damages that could have been anticipated from a failure to provide telephone service, a water

---

[2] *Greentre., supra*, at 500 (2008) [the label applied to the provision does not control whether it is an enforceable liquidated damages provision or an unenforceable penalty.]

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

tight roof, doors and glass in working order, or the agreed to façade bump would not result in damages rising to the level that would be anticipated if no premises was built. "Where a fixed sum is agreed upon as liquidated damages for one of several breaches of varying degree, it is to be inferred that a penalty was intended." (*Smith v. Royal Manufacturing Company*, 185 Cal.App.2d 315, 324 (1960), *citing Webster v. Garrette*, 10 Cal.App.2d 610 (1935).)

In the second place, the ARL provides for the recovery of liquidated damages *indefinitely* and even under DT's argument for *17 years*. This further demonstrates the lack of relationship between the liquidated damage amount and the range of actual damages that the parties could have anticipated at the time the ARL was executed would flow from a breach. As written, the liquidated damage provision states that liquidated damages shall accrue "for each day or part thereof which elapses between the Anticipated Delivery Date . . . and the date when all of the Delivery Conditions shall have been satisfied by Landlord." (ARL § D.1.c.1; see also FACC at ¶ 175 [DT seeking $2,500/day from June 15, 2008 *through deliver of the replacement premises*]; and ARL §6 [providing that the 17-year lease term does not commence until 90 days after the premises is turned over to DT or it opens for business].) As a result, liquidated damages will accrue indefinitely if the delivery conditions are never satisfied. Clearly, this endless stream of liquidated damages bears no relationship to the realm of possible damages that the parties could have anticipated when they executed the ARL. Any reasonable attempt to anticipate and estimate the amount of damages that would flow from a breach would take into account possible mitigation of that breach. Even if the period of recovery is confined to 17 years—the ARL's lease term once commenced—the period still bears no relationship to the actual damages that could have been contemplated, including the contemplation that DT could readily find another store in that time.

Finally, DT intended the liquidated damages provision to act as a penalty. Where the primary purpose of the liquidated damage provision is to compel performance by imposing a charge that bears little or no relationship to the anticipated damages, the provision is an unenforceable penalty. (See *Harbor Island Holdings, LLC v. James Kim* 107 Cal.App.4[th] 790, 798 (2003). Here, Mr. Walters—DT's designee—testified that the liquidated damages provision

had to be sufficient enough to make sure DT "got the store back open." (UMF 19.c.)  Thus, the main purpose for the liquidated damages provision according to DT was to compel Toyama's performance rather than to compensate it for any anticipated damages.

        **d.**      **Under both the ARL and California law, the ARL's unlawful and unenforceable liquidated damages provision must be stricken.**

In the event a provision or section of the ARL is rendered unenforceable, the ARL mandates that the unenforceable provision or section be stricken from the ARL and the remainder enforced.  Specifically, Section W.9. of the ARL provides:

> Severability.  In the event that any provision or section of this Lease is rendered invalid by the decision of any court or by the enactment of any law, ordinance or regulation, such provision of this Lease shall be deemed to have never been included therein, and the balance of the Lease shall continue in effect in accordance with its terms.

(ARL § W.9.)

In addition to the ARL, California's Civil Code section 1599 also provides for severance of unlawful contract provisions.  Section 1599 provides:

> Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.

(Civ. Code § 1599.)

Thus, the unenforceable liquidated damages remedy must be severed.  Once severed, DT's only remaining "sole and exclusive remedy" is to cancel the ARL, a remedy which it does not seek in this action.

DT may argue that a right to actual damages should be inserted in place of the unenforceable liquidated damages remedy.  However, while California law permits (indeed mandates) the severance of illegal provisions from a contract, it does not allow augmentation or rewriting of a contract to cure its illegality.  (See 1 Witkin, *Summary of Cal. Law* (10th ed. 2005) Contracts, § 750 ["court will not rewrite the contract to avoid illegality"]; *citing Bolen v. Parks*, 149 Cal.App.2d 460, 468 (1957).)  The parties expressly agreed to sole and exclusive remedies, and the illegality of one of those remedies does not give DT the right to write in an actual damage replacement remedy any more than any other replacement remedy that it might prefer, such as

MPAofToyamaFINAL.doc

specific performance.  The parties' intent was clear.  DT's sole and exclusive remedy, after severance of the illegal remedy, is cancellation.

**2.      The Non-Recourse language of the ARL prevents any recovery for money damages against Toyama, and limits DT to recourse solely against the Center.**

DT's breach of contract claim fails for the second independent reason that DT expressly agreed that the ARL was non-recourse as to Toyama and it cannot escape the terms of that provision.

**a.      The ARL limits DT's Recover to Toyama's interest in the Center.**

The ARL expressly bars DT from recovering on a monetary judgment from Toyama or its partners.  (UMF 19.c.)  Section U of the ARL expressly limits Toyama's liability to its interest in the Center.  (*Id.*)  Section U.1. provides:

> Judgments.  Notwithstanding anything to the contrary provided in this Lease, it is specifically understood and agreed, such agreement being a primary consideration for the execution of this Lease by Landlord, that if Landlord shall fail to perform any covenant, term, condition, or warranty contained in this Lease upon Landlord's part to be performed and, as a consequence of such default, Tenant shall recover a money judgment against Landlord, *such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levied thereon against the right, title and interest of Landlord in the Shopping Center, as the same may then be encumbered, and neither Landlord, or, if Landlord be a partnership, any of the partners comprising such partnership shall be liable for any deficiency*.  It is understood that in no event shall Tenant have any right to levy execution against any property of Landlord other than its interest in the Shopping Center as herein before expressly provided.

(ARL § U.1 [Emphasis Added].)

Thus, even if DT were entitled to a monetary remedy despite its sole and exclusive remedy of cancellation, it is not entitled to a judgment against Toyama.

**b.      Section U.1. of the ARL is valid and enforceable under California law.**

Provisions limiting a landlord's liability to its interest in the leased premises, such as the provision at issue here, are considered standard and are common in commercial lease agreements. (See *Retail Leasing: Drafting and Negotiating the Lease* (2 Cont.Ed.Bar 2010) Default and

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

Remedies, §§ 27.53 [from tenant's standpoint, clause limiting landlord's liability "is usually not negotiable."] and 27.54 ["Tenants with bargaining power usually succeed in modifying the nonrecourse clause so that any judgment against the landlord may also be satisfied out of the net rents, issues, profits and other income actually received from the operation of the Shopping Center."].) Therefore, the limitation Toyama's liability to its interest in the Center is valid and enforceable against DT.

      **c.**      **Any monetary judgment against Toyama would be unenforceable and futile.**

Even if DT could prove its claims against Toyama and even if it could pursue a monetary remedy, any monetary judgment against Toyama would be unenforceable and futile. As noted above, the ARL clearly limits Toyama's liability to its interest in the Center, and that limitation on liability is valid and enforceable under California law. Further, it is undisputed that Toyama has sold the Center for fair value and distributed all the proceeds to creditors. Therefore, Toyama has no interest in the Center or proceeds of sale on which DT could levy under Section U.1, and any judgment would be futile.

**B.**     **Toyama is entitled to Summary Judgment on DT's Second Claim for Declaratory Relief as to DT's claim for recovery of Liquidated Damages.**

For the reasons set forth about in section IV.A above, Toyama is entitled to summary judgment on DT's Second Claim for Relief. By way of its Second Claim for Relief, DT seeks a declaration "that the Pau Defendants and/or Capella are liable to pay (i) $2,500 per day in liquidated damages to Dollar Tree under the Amended Lease for the period from June 15, 2009, unit such date as they deliver possession of the Replacement Premises . . . ." (FACC at ¶ 175.) Since the liquidated damages provision constitutes an unenforceable penalty under Civil Code section 1671, it cannot be enforced against Toyama, and DT is not entitled to a declaration to the contrary.]

**C.**     **Toyama is Entitled to Summary Judgment on Dollar Tree's Third Claim for Relief: Fraudulent Conveyance.**

Toyama is entitled to summary judgment on DT's third claim for relief, in which DT claims that the Second Amendment constituted a fraudulent conveyance because it was made

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

with actual intent to hinder, delay, or defraud DT in violation of Civil Code section 3439.04(a)(1).[3] (FACC ¶ 188.) DT alleges two separate theories for its claim. In Theory 1, DT alleges that if the Second Amendment is effective as of April 21, 2011, then the Second Amendment caused a transfer of the ARL from Capella back to Toyama; breaking down Theory 1 into the components of a UFTA claim: the asset transferred was the ARL; the transferor was Capella; and the transferee was Toyama. (FACC ¶ 179.) In Theory 2, DT alleges that if the Second Amendment is effective as of February 15, 2011, then the Second Amendment was a transfer because it "affected" the sale of the Center; breaking down Theory 2 into the UFTA components: the asset transferred was the Center; the transferor was Toyama; and the transferee was Capella. (FACC ¶ 183.) Both of DT's theories have fundamental flaws, which render DT unable to prove at least one element of the claim. Accordingly, Toyama is entitled to summary judgment.

**1.    DT's two theories for recovery under the UFTA amount to nothing more than a claim for fraudulent breach of contract.**

Under both of its theories, DT alleges that Defendants entered into the Second Amendment "with an intent to hinder, delay, and/or defraud DT with regard to" four matters: "(i) Toyama's obligation to settle with Dollar Tree, (ii) Capella's obligation to construct a retail store for Dollar Tree and post a $1 million letter of credit as security, (iii) Capella's obligation to accept and assume Dollar Tree's Amended Lease; and (iv) Dollar Tree's ability to execute upon the Shopping Center in order to obtain money damages and/or injunctive relief from Toyama." (FACC ¶ 180.)[4] An analysis of the first three of these matters, which are all contract-based obligations, demonstrates that DT is seeking to impose liability on Toyama for "fraudulent breach of contract," which is a non-existent claim and which does not create liability under the UFTA.

---

[3] As stated in Civil Code section 3439, sections 3439 to 3439.12 are part of the Uniform Fraudulent Transfer Act ("UFTA"). Section 3439.04(a)(1) provides that a "transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor."

[4] Pursuant to Section U.2. of the ARL, Toyama was entitled to transfer its right, title and interest in the Shopping Center to Capella, or any other person or entity, without requiring the transferee to assume Toyama's contractual obligations under the ARL or obtaining DT's consent. Given Section U.2., it is clear that the parties contemplated that the Center might be sold without the transferee entering into contractual privity with DT by assuming the obligations of landlord under the ARL. Further, contrary to DT's allegations, Section R of the ARL does not require the ARL to be assumed by Capella. Section R governs mortgage subordination and not the transfer of title like section U.2.

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

(*First Advantage Background Services Corp. v. Private Eyes, Inc.*, 2007 WL 2572191, 3 (N.D. Cal. 2007) ["While First Advantage's alleged failure to pay under this agreement may qualify as a breach of contract, it cannot be styled as a fraud claim"]; *Lockerby v. Sierra,* 535 F.3d 1038, 1042 (9th Cir.2008) ["The concept of 'efficient breach' is built into our system of contracts, with the understanding that people will sometimes intentionally break their contracts for no other reason than that it benefits them financially"].)

In the first matter, DT contends that it was defrauded out of Toyama's obligation to settle with DT. However, this "obligation" was only found in the Sale Agreement, which DT admits it never even saw until April 22, 2011, the same date on which it received the Second Amendment (which eliminated any alleged obligation to settle with DT). Since DT was not aware of the Sale Agreement, it cannot establish that it was a third party beneficiary of that agreement. (See Civ. Code §1559; *Karo v. San Diego Symphony Orchestra Association*, 762 F.2d 819, 822 (9th Cir. 1985) ["in the absence of terms in a third party beneficiary contract prohibiting change or modification of a duty to an intended beneficiary, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement"].) Here, there was no reliance by DT on any representation of the Defendants in the Sale Agreement because DT never saw the Sale Agreement until April 22, 2011. Accordingly, DT cannot establish that it was defrauded out of a purported obligation for Toyama to settle with DT.

In the second matter, DT contends that Capella had an obligation to construct a retail store for DT and to post a $1 million letter of credit as security; this "obligation" also arose in the Sale Agreement. For the same reasons set forth above (i.e., that DT never saw the Original Agreement and, thus, could not have relied on any representation made therein), this obligation is not one which DT could have enforced against Capella. (*Id*.) Again, DT cannot establish that it was defrauded by Toyama and Capella agreeing in the Second Amendment to eliminate an obligation which DT never knew about.

In the third matter, DT contends that Capella was obligated to assume and accept the ARL; this purported "obligation" also arose in the Sale Agreement. As with the prior two obligations, DT was not a third party beneficiary of the Sale Agreement and could not enforce this obligation against Capella. Resolution of that issue, however, is not necessary because

18

SPA_DG_FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

regardless of whether Capella was so obligated, this matter cannot form the basis for DT's claim that it was defrauded by the Second Amendment. It is undisputed that Capella was never in contractual privity with DT so Capella was not contractually obligated to assume the ARL. It is Defendants' position that Capella also was not in privity of estate with DT so it was not bound to accept the ARL, but Defendants' position on this issue is essentially irrelevant for fraud purposes. If DT is correct, and there is privity of estate, then Capella is bound by the ARL, and any agreement between Toyama and Capella in the Second Amendment could not divest Capella of that privity of estate obligation to DT. Thus, the purported obligation of Capella to assume and accept the ARL will be determined by the privity of estate issue and cannot form the basis for a fraudulent transfer claim.

Accordingly, DT's focus on "avoidance of the Second Amendment," and its related contentions that Toyama and Capella defrauded DT out of the purported "obligations" set forth in the Sale Agreement, demonstrate that DT is not pursuing a claim under the UFTA for recovery of a transferred asset. (*In re First Alliance*, 471 F.3d 977, 1008 (9th Cir. 2006) ("*First Alliance*") ["The purpose of fraudulent transfer law is 'to protect creditors from last-minute diminutions in the pool of assets in which they have interests'"] quoting *Pioneer Liquidating Corp. v. San Diego Trust & Sav. Bank,* 211 B.R. 704, 717 (S.D.Cal.1997).) Instead, DT believes it was defrauded by the Second Amendment, and it is trying to force these allegations of "fraudulent breach" into a claim for relief based on fraudulent transfer, but it fails. (*First Alliance*, 471 F.3d at 1009 [Holding that party's role in fraudulent conduct was not the same as participating in scheme to hide assets, which is required for fraudulent transfer claim].)

          **2.**       **As to either of its theories, DT cannot establish the required elements of a UFTA claim.**

In order to prevail on its claim of a fraudulent transfer against Toyama, DT must establish each of the following elements:

(i) That DT has a "claim" (as defined in Civil Code section 3439.01(b)) against Toyama;

(ii) That Toyama "transferred" (as defined in section 3439.01(i)) an "asset" (as defined in section 3439.01(a)) to Capella;

MPA_Toyama.FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

(iii) That Toyama transferred the asset with the actual intent to hinder, delay, or defraud one or more of its creditors;

(iv) that DT was harmed by the transfer; and

(v) that Toyama's conduct was a substantial factor in causing DT's harm. (CACI 4200; Civ. Code §§ 3439.04(a)(1), 3439.01.) Under either Theory 1 (transfer of the ARL) or Theory 2 (transfer of the Center), DT cannot satisfy its burden of proving these elements.

### a. DT cannot establish that it has a claim against Toyama.

In order to pursue an action against Toyama under the UFTA, DT must have a "claim," or, in the statutory language, a right to payment from Toyama. (Civ. Code § 3439.01(b), (c).) As set forth above, DT does not have any right to payment from Toyama because it does not possess a valid claim for money damages. At most, DT can obtain cancellation of the ARL. Because DT is not a creditor of Toyama, any transfers which Toyama made did not cause any injury to DT, and it cannot pursue its claims for relief under the UFTA. (*Mehrtash v. Mehrtash*, 93 Cal.App.4th 75, 80 (2001) ("*Mehrtash*") [explaining that a "'transfer in fraud of creditors may only be attacked by one who is injured'" by such transfer] quoting 16 Cal.Jur.3d (Rev.), Creditors' Rights and Remedies.)

### b. DT cannot establish that an "asset" was "transferred."

The second fatal flaw with DT's claim is that cannot prove that Toyama transferred an asset, which if not transferred, would have been available for liquidation and satisfaction of DT's claim. This is the most fundamental aspect of all fraudulent transfer laws, dating back to their inception. (See *Mejia v. Reed*, 31 Cal.4th 657, 664 (2003) [The UFTA, "like its predecessor and the Statute of 13 Elizabeth, declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims"] quoting Legis. Comm. Comments to Civ. Code § 3439.01.) In other words, the focus in a UFTA claim is on recovery of assets, which have been transferred by the debtor and which, if recovered, can be liquidated to generate cash to pay creditors. (See *Mehrtash*, 93 Cal.App.4th at 79 – 81 [Holding that transfer of real property was not a fraudulent transfer because plaintiff could not show that eventual sale of it would generate "any net recovery" for plaintiff].) In both of its theories, DT completely ignores this

elementary principle of the fraudulent transfer statutes. (*Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal.App.4th 834 (2009) ("*Fidelity Nat'l*") ["In order for a fraudulent transfer to occur, among other things, there must be a *transfer* of an *asset* as defined in the UFTA"] (emphasis in original).)

        **(1)**       **Because the ARL cannot be sold to generate funds, it is not an asset under the UFTA.**

Under Theory 1, DT is focused on the transfer of the ARL. The ARL, however, is not an asset within the meaning of the UFTA because it could not be sold in order to generate funds with which to pay DT's claim for money damages. (*Mehrtash*, 93 Cal.App.4th at 80 [Creditor is only injured if "the transfer puts beyond her reach property she otherwise would be able to subject to payment of her debt"]; Alces and Dorr, *A Critical Analysis of the New Uniform Fraudulent Transfer Act*, 1985 U. Ill. Law Rev. 527, 548 *quoting* U.F.T.A. § 3 comment 2 ["The drafters of the new Act identify the crucial concept upon which the law of fraudulent transactions is premised: 'the purpose of the Act [is] to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors'"]; *Kirkeby v. Superior Court of Orange County*, 33 Cal.4th 642, 648 (Cal. 2004) ["A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim" quoting *Yaesu Electronics Corp. v. Tamura*, 28 Cal.App.4th 8, 13 (1994).) The ARL was never the type of asset which Toyama could have sold and generated cash proceeds to be used in payment of creditors. Further, even if DT could concoct some sort of asset-like qualities for the ARL, it cannot be disputed that in February through April 2011, the ARL had no positive value because, during that period, DT was suing for breach of the ARL and demanding monetary damages in excess of $17 million.

        **(2)**       **The Center cannot satisfy the requirement of an "asset."**

In Theory 2, DT contends that the subject asset was the Center. The applicable California statutes make it clear that the Center cannot form the basis for a fraudulent transfer claim. Under subsection (a), an "asset" is defined as all "property of a debtor, but the term does not include the following: (1) Property to the extent it is covered by a valid lien." (Civ. Code § 3439.01(a).) Subsection (j) defines a "valid lien" as "a lien that is effective against the holder of a judicial lien

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

subsequently obtained by legal or equitable process or proceedings." (Civ. Code § 3439.01(j).) DT does not attack the Comerica DOT as not being a valid lien. As of February 15, 2011, the amount secured by the Comerica DOT was in excess of $24 million. (UMF 32.) In order to complete the sale to Capella, Toyama obtained the consent of Comerica to the sales price of $19.2 million. (UMF 32.) Since Comerica was owed approximately $5 million more than the sale price agreed upon between Toyama and Capella, Comerica could have refused to allow the sale at the price of $19.2 million. (Civ. Code § 2941 [Duty to reconvey deed of trust only arises upon payment in full]; *Fischer v. First Int'l Bank*, 109 Cal.App.4th 1433, 1450 (2003) [Discussing effect of cross-collateralization and due on sale provisions].) Once Comerica agreed to allow the sale for an amount less than it was owed, the amount of sales proceeds received cannot be attacked by any creditor of Toyama as the basis for a fraudulent transfer action.

In order to challenge this sale as fraudulent, DT would have needed to either attack the Comerica DOT as not being a valid lien or allege that Comerica was a party to the fraudulent transfer transaction and that it participated in this scheme to defraud DT. (Civ. Code § 3439.04(b).) Instead of making any attacks of this type on Comerica, DT entered into a settlement agreement with DT and released all claims it might have had against Comerica. (UMF 40.) Apparently recognizing that Comerica was entitled to receive all of the funds (and more) that it received, DT allowed this indispensible party to be released. By releasing Comerica, which as the $24 million secured creditor, held the power to prevent or allow the short sale transaction at $19.2 million, DT conceded that there was no conspiracy between Comerica and Toyama. Therefore, as a matter of law, the Center cannot be the asset at the center of a valid claim under the UFTA. (*In re Blatstein*, 226 B.R. 140, 150 (E.D. Pa. 1998) ["The UFTA expressly excludes from its definition of an 'asset' any property of the debtor 'to the extent it is encumbered by a ***valid lien***'"] (emphasis in original).)

     **(3)**  **The Second Amendment – which is at the heart of DT's UFTA claim – did not cause a transfer of any asset.**

DT's attack on the Second Amendment also fails because the Second Amendment in and of itself did not cause the transfer of any asset. In its alternative theories, DT alleges that the Second Amendment caused the transfer of the ARL from Capella back to Toyama. (Theory #1.) or

that it "affected" the sale of the Center (Theory 2). (FACC ¶¶ 179 and 183.) Under either theory, DT cannot sustain its burden of proving that there was a transfer within the meaning of the UFTA.

First, the Second Amendment did not cause Capella to transfer the ARL back to Toyama. As set forth above and in Capella's separate motion, Capella had never assumed the ARL and was not bound by the ARL at the time of close of escrow. Accordingly, DT's premise in Theory 1 is fatally flawed.

Second, in its Theory 2, DT contends that the Second Amendment "affected" the sale of the Center. Notably, DT does not contend that the Second Amendment "effected" the sale. Accordingly, DT's contention in Theory 2 is, essentially, that the Second Amendment played a role in the transfer of the Center, but it was not the actual transfer. While DT's admission is legally correct in terms of the real property principles involved (i.e., the Grant Deed was the document which caused title to transfer from Toyama to Capella[5]), the admission torpedoes DT's claim for a violation of the UFTA, which requires that there be a transfer. (See Civ. Code § 3439.06(a)(1) [Transfer of real property is made "when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee"].) DT's challenge of the Second Amendment does not challenge the transfer, and, thus, cannot be a valid claim under the UFTA.

Third, as set forth above, the Center was fully encumbered by the Comerica DOT. Because the Center was fully encumbered, there was no transfer for UFTA purposes. (*Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252, 262 (1st Cir. 1997) [Holding that where secured loan exceeded fair value of secured assets, there could be no transfer for the purpose of UFTA]; *In re Valente*, 360 F.3d 256, 264 (1st Cir. 2004) [no transfer of asset for purposes of the UFTA if encumbrances exceed value of property at time of transfer].)

---

[5] Civ. Code § § 1169 and 1213.

### c. DT cannot establish that Toyama acted with intent to hinder, delay, or defraud creditors.

As of February 15, 2011, the amount secured by the Comerica DOT was in excess of $24 million. (UMF 32.)  In order to complete the sale to Capella, Toyama obtained the consent of Comerica to the sales price of $19.2 million. (UMF 32.)  Since Comerica was owed approximately $5 million more than the sale price agreed upon between Toyama and Capella, Comerica could have refused to allow the sale at the price of $19.2 million.

In order to challenge this sale as fraudulent, DT would have needed to either attack the Comerica DOT as not being a valid lien or allege that Comerica was a party to the fraudulent transfer transaction. (Civ. Code § 3439.04(b).)  Instead of making any attacks on Comerica, however, DT entered into a settlement agreement with DT and released all claims it might have had against Comerica.

By releasing Comerica, which, as the $24 million secured creditor, held the power to prevent or allow the short sale transaction at $19.2 million, DT conceded that there was no conspiracy between Comerica and Toyama. (UMF 40.)  Without pursuing such a conspiracy claim, DT effectively has admitted that Toyama lacked the requisite intent to hinder, delay, or defraud its creditors. (See *In re Greenhaw Energy, Inc.*, 359 B.R. 636, 648 (Bankr. S.D.Tex. 2007) [Holding that debtor in foreclosure sale "could not possess the requisite intent or otherwise be subject to Texas fraudulent transfer law"].)  It would have been impossible for Toyama to hinder, delay, or defraud any creditor without Comerica participating in, and giving its approval to, the short sale transaction.

### d. DT cannot establish that it suffered any damage as a result of the allegedly fraudulent transfers.

Toyama transferred the over-encumbered Center under a transaction in which Comerica agreed to accept less than the amount of its valid DOT.  Because Toyama had no equity in the property, DT could not have used it as a potential means of collecting on its claim, and cannot obtain any recovery under Civil Code section 3439.08, which limits recovery to the "value of the asset transferred." (Civ. Code § 3439.08(b); see *Fraudulent Transfer Litigation* at p. 267 [Noting that, under California's statutes, "a creditor would not be able to recover *anything* under the

24

UFTA if the debtor transfers property that has no equity after encumbrances and exemptions"].)

As one California court explained, the plaintiff is required to prove that there was equity in the property: "Plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside. The trial court was authorized to consider this a failure by plaintiff to prove an essential element of her case (that the allegedly fraudulent conveyance injured her)." (*Mehrtash v. Mehrtash*, 93 Cal.App.4th 75, 81 (2001).) Here, the Center had no value in excess of Comerica's DOT; thus, setting aside the sale and unwinding all parts of it would simply lead to Comerica foreclosing on its DOT and wiping out all creditors.

Because the Center had no equity above the Comerica DOT, DT cannot establish that the transfer of the Center to Capella caused any injury to DT.

**3. The Sale of the Center to Capella was not a fraudulent transaction.**

As is clear from all of the above, Toyama's sale of the Center to Capella was a valid short sale transaction, which was necessitated by Comerica's impending foreclosure sale and by Capella's expiring Section 1031 exchange. The transaction would not have closed without Comerica's agreement to accept less than the $24 million it was owed on its loans to Toyama.

Moreover, Comerica's counsel specifically reviewed the terms of the short sale transaction to confirm that the fraudulent transfer statutes were not being violated. (Pau Dec. ¶ 67) Because Comerica allowed the short sale to proceed, one must conclude that Comerica's counsel determined that there were no fraudulent transfer issues with the short sale transaction.

Finally, DT does not challenge the sale on the ground that Capella paid inadequate consideration. Because "the consideration paid was undisputedly adequate," DT cannot contend that Capella became Toyama's successor through the sale. (*Franklin v. USX Corp.*, 87 Cal.App.4th 615, 626-27 (2001).)

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**D. Toyama is entitled to Summary Judgment on DT's Fifth Claim for Unfair Competition because DT dropped its fraud claim.**

    **1. Since DT failed to pled claims for fraud, fraudulent omission and misrepresentation, DT's Fifth Claim for Relief is barred by the Court's March 11, 2011 order.**

DT's Fifth Claim for relief violates this Court's March 11, 2011 Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File Second Amended Complaint (the "Order") and Toyama is entitled to summary judgment. The Order provided:

> The Court has granted plaintiff's motion for leave to add claims of fraud, fraudulent omission and misrepresentation. Accordingly, and to this extent, the Court GRANTS plaintiff's motion for leave to file the Second Amended Complaint in regards to unfair competition.

(Order at p. 6.)

While the Order permitted the unfair competition claim to the extent DT added claims of fraud, fraudulent omission and misrepresentation, by the time DT filed its Second Amended Complaint (and after the deposition of DT's designee was taken), DT decided not to assert any claims for fraud, fraudulent omission, or misrepresentation. As the Order clearly states, DT was granted leave to file its claim for unfair competition only to the extent of its claims for fraud, fraudulent omission, and misrepresentation. Since it did not add those claims, it was a violation of the Order to assert the unfair competition claim.

    **2. Toyama's conduct, as alleged in the FACC, did not constitute an unlawful, unfair, or fraudulent act or business practice.**

Even if DT Fifth Claim for Relief is not barred by the Order, breaching a contract does not constitute an unlawful, unfair or fraudulent act or business practice under California's Unfair Competition Law ("CUCL").

Under the CUCL, "[a]n unlawful business act or practice is an act or practice that is both undertaken pursuant to business activity and also forbidden by law." (49 California Forms of Pleading and Practice, § 565.31 (Matthew Binder), *citing Farmers Ins. Exch. V. Superior Court*, 2 Cal.4th 377, 383; *see also Committee on Children's Television, Inc. v. General FoodsCorp.*, 35 Cal.3d 197, 209-210 (1983).) Breaching the ARL, however, is not an illegal act. Contract law

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

expressly recognizes the concept of an "efficient breach" with "the understanding that people will sometimes intentionally break their contracts for no other reason than that it benefits them financially." (*Reese v. BP Exploration (Alaska), Inc*., 643 F.3d 681, 691 (9th Cir. 2011); see also *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008) ["In contract law, '[t]he motive for the breach commonly is immaterial in an action on the contract.' (Citation.) The concept of 'efficient breach' is built into our system of contracts, with the understanding that people will sometimes intentionally break their contracts for no other reason than it benefits them financially."]; *Robinson Helicopter Co., Inc. v. Dana Corp*, 34 Cal.4[th] 979, 996 (2004) [no tort liability for interference with one's own contract]; *Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4[th] 28, 66 ["Under most circumstances a breach of contract violates no social policy; the law limits the nonbreaching party's remedies so as to allow for 'efficient breach' of the contract."]; and *Freeman & Mills, Inc. v. Belcher Oil Co*., 11 Cal.4[th] 85, 97-98 (1995).)

Breaching the ARL is also not a fraudulent business act or practice. (*BNSF Railway Company v. San Joaquin Valley Railroad Company*, 2011 WL 3328398 (E.D. Cal. 2011) ["When fraud claim is based on a parties' alleged failure to comply with a contractual duty, 'the proper cause of action is breach of contract, not fraud."].)

Finally, in the non-consumer context, an unfair business practice or act is "unfair" if it "threatens an incipient violation of an antitrust law, or violates policy or spirit of such a law because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. (49 California Forms of Pleading and Practice, § 565.31[5][a] (Matthew Binder), *citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4[th] 163, 187 (1999).) Again, breaching the ARL does not rise to the level of unfair competition for purposes of the CUCL

### 3.   DT cannot recover its damages based on its Fifth Claim for Relief.

DT cannot recover damages under the CUCL. (49 California Forms of Pleading and Practice, § 565.34[3][a] (Matthew Binder); *Bank of the West v. Superior Court*, 2 Cal.4[th] 1254, 1266 (1992) [no compensatory damages].). The only remedies available to DT would be an injunction prohibiting the unlawful, unfair or fraudulent practice or act or restoration of any

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696

money or property acquired as a result of the act. Since no money or property was acquired from DT as a result of an unlawful, unfair or fraudulent practice, there is no money or property to be restored to DT.

## VI.    CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court grant Toyama's motion for summary judgment.

DATED:  November 4, 2011          REHON & ROBERTS
                                  A Professional Corporation


                        By: ___Peter M. Rehon /s/_____
                                  Peter M. Rehon
                                  Lisa C. Roberts
                                  Mark V. Isola
                                  Attorneys for Defendants and Counterclaimants
                                  TOYAMA PARTNERS, LLC; PETER PAU d/b/a
                                  SAND HILL PROPERTY COMPANY, a sole
                                  proprietorship; PETER PAU, in his individual
                                  capacity and as partner of SAND HILL PROPERTY
                                  MANAGEMENT COMPANY; SUSANNA PAU, in
                                  her capacity as partner of SAND HILL PROPERTY
                                  MANAGEMENT COMPANY; SAND HILL
                                  PROPERTY MANAGEMENT COMPANY, and
                                  CAPELLA-MOWRY, LLC.

MPA_Toyama. FINAL.doc

NOTICE OF MOTION AND MOTION BY DEFENDANT FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIALSUMMARY JUDGMENT; SUPPORTING MPA
CASE NO. 10-CV-0325 SI AND 11-CV-002696