1 | Peter M. Rehon (SBN 100123)
  | Lisa C. Roberts (SBN 111982)
2 | Mark V. Isola (SBN 154614)
  | Tyler J. Olson (SBN 220796)
3 | REHON & ROBERTS
  | A Professional Corporation
4 | 830 The Alameda
  | San Jose, CA 95126
5 | Telephone: (408) 494-0900
  | Facsimile: (408) 494-0909
6 |
7 | Attorneys for Attorneys for Defendants and Counterclaimants TOYAMA PARTNERS, LLC; PETER
8 | PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and
9 | as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of
10 | SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY,
   | and CAPELLA-MOWRY, LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLLAR TREE STORES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOYAMA PARTNERS, LLC; COMERICA BANK; PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC, <br><br> Defendants. | Case No. CV 10 0325 SI <br><br> **DEFENDANTS' SUPPLEMENTAL COURT-ORDERED MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Hearing Date: February 17, 2012 <br> Time: 9:00 a.m. <br> Courtroom: 10 <br> Judge: Hon. Susan Illston <br><br> Date action filed: January 22, 2010 <br> Trial Date: April 17, 2012 |

SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

| | |
|---|---|
| PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC, <br><br> Counterclaimants, <br><br> v. <br><br> DOLLAR TREE STORES, INC. <br><br> Counter-Defendant. | |
| DOLLAR TREE STORES, INC., <br><br> Plaintiff, <br><br> v. <br><br> PETER PAU, TOYAMA PARTNERS, LLC, and CAPELLA-MOWRY, LLC. <br><br> Defendants. | Case No. CV 11 002696 SI |
| TOYAMA PARTNERS, LLC, CAPELLA-MOWRY, LLC, PETER PAU, individually and d/b/a SAND HILL PROPERTY COMPANY, <br><br> Counterclaimants, <br><br> v. <br><br> DOLLAR TREE STORES, INC., <br><br> Counter-Defendant. | |

SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 3

    A. Defendants are Entitled to Summary Judgment Under Civil Code Section 1451 Which Mandates That, if One of Two Alternatives is Unenforceable, the Remaining Alternative Stands Alone ............................................................... 3

    B. Defendants are Entitled to Summary Judgment Under California Severance Law Which Mandates Severance of Divisible Illegal Contracts, Striking of Illegal Terms, and Preservation of Legal Terms ................................................... 4

        1. It is an Abuse of Discretion Not to Sever a Divisible Illegal Contract ......... 4

        2. An Illegal Contract is Divisible if the Illegality Can Be Cured By Striking the Illegal Provision, Without Augmenting or Reforming the Contract, and Without Striking Legal Terms Untainted by the Illegality ........................................................................................................ 5

        3. Where a Contract is Divisible Between Its Legal and Illegal Portions, the Court Must Strike the Illegal Portion From the Contract and Enforce the Rest ............................................................................ 6

        4. In This Case, The Court Must Strike the Illegal Liquidated Damages Remedy and Leave the Remainder of Section D.1.c Intact, Including Its Legal Exclusive Cancellation Remedy ..................................................... 6

        5. California Cases Awarding Actual Damages After Failure of a Liquidated Damages Provision Do Not Involve Contracts Setting Forth Two Exclusive Remedies ........................................................................... 7

    C. California's Rules of Contract Interpretation Require the Court to Enforce the Parties' Intent to Limit the Tenant's Remedies to Liquidated Damages or Lease Cancellation, and to Excise the Illegal Liquidated Damages Clause Leaving the Lease Cancellation as the Sole Remaining Remedy ............... 7

    D. *Buhler* Shows the Foregoing Principles at Work and Provides Illustrative and Persuasive Authority ......................................................................... 8

    E. Limiting DT to its Freely Negotiated Exclusive Legal Remedy is Fair, and Any Other Result Would Vitiate the Parties' Intent, Work an Injustice to Defendants, and Result in a Windfall to DT ........................................................ 9

III. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) ................ passim

*Blumenfeld v. R.H. Macy & Company,* 92 Cal.App.3d 38 (1979) .................................................. 10

*Buhler v. McIntire*, 356 S.W.2d 237 (1963) ........................................................................ passim

*Breynon v. Garden Grove Medical Group*, 100 Cal.App.3d 698 (1980).................................... 5, 6

*Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal.4th 119 (1998) ................... 5

*Dotson v. Amgen*, 181 Cal.App.4th 975 (2010) ...................................................................... 4, 5, 6

*Ebbert v. Merchantile Trust Co.*, 213 Cal. 496 (1931) ................................................................... 7

*El Centro Mall, LLC v. Payless*, 174 Cal.App.4th 58 (2009) ......................................................... 7

*Freedman v. Rector*, 37 Cal.2d 16 (1951)...................................................................................... 7

*Garrett v. Coast and Southern Federal Savings & Loan*, 9 Cal.3d 731 (1973) ............................. 7

*Greentree Financial Group, Inc. v. Execute Sports, Inc*. 163 Cal.App.4th 495 (2008) .................. 7

*Harbor Island Holdings v. Kim*, 107 Cal.App.4th 790 (2003) ....................................................... 7

*Kolani v. Gluska*, 64 Cal.App.4th 402 (1998)) .............................................................................. 5

*Perdue v. Crocker National Bank*, 38 Cal.3d 913 (1985) .............................................................. 7

*Philip Lee v. Placer Title Company*, 28 Cal.App.4th 503 (1994) ............................................... 6, 9

*Roman v. Superior Court*, 172 Cal.App.4th 1462 (2009) ............................................................... 5

*Santisas v. Goodin*, 17 Cal.4th 599 (1998) .................................................................................... 7

*Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489 (2008) .................................................... 4

*Sybron Corp. v. Clark Hospital Supply Corp.*, 76 Cal.App.3d 896 (1978) .................................... 7

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*, 660 F.Supp.2d 1163 (C.D. Cal. 2009) ....................................................................................... 8

*Werner v. Knoll*, 89 Cal.App.2d 474 (1948) .............................................................................. 5, 6

**Statutes**

Cal. Civil Code § 1427 .................................................................................................................. 3

Cal. Civil Code § 1451 ............................................................................................................... 1, 3

Cal. Civil Code § 1598 .................................................................................................................. 4

Cal. Civil Code § 1599 ........................................................................................................... 1, 4, 6

Cal. Civil Code § 1636 .......................................................................................................... 1, 8, 10

Cal. Civil Code § 1638 ............................................................................................................... 1, 8

Cal. Civil Code § 1639 ............................................................................................................... 1, 8

**Other Authorities**

1 Witkin, *Summary of Cal. Law* (8th ed. 1973) Contracts, §343, p. 290 ........................................ 4

2 Cal. Commercial Leasing Series: Retail Leasing, Drafting and Negotiating the Lease (Cont.Ed.Bar 2011) ...................................................................................................................... 10

5 Corbin on Contracts, p. 323, Sec. 1068 ...................................................................................... 9

Black's Law Dictionary (7th Ed. 1999), p.1240 ............................................................................ 8

Friedman, et al. *Cal. Practice Guide: Landlord-Tenant* (The Rutter Group 2011) ¶4:29.5 ........... 6

iii

Defendants and Counterclaimants Toyama Partners, LLC, et al. ("Defendants") submit this brief pursuant to this Court's Order Directing Further Briefing (the "Order"), in support of Defendants' Motion for Summary Judgment and in opposition to the motion by Plaintiff and Counter-Defendant Dollar Tree Stores, Inc. ("DT") for partial summary judgment.

## I.  INTRODUCTION

In response to this Court's question regarding "what remedies are available to Dollar Tree if the Court finds the liquidated damages provision unenforceable," the answer under California law is clear: DT's sole and exclusive remedy would be cancellation of the Amended and Restate Lease ("ARL"). However, since DT has not elected, pled, or sought this remedy, Defendants are entitled to summary judgment as a matter of law.

In response to this Court's request for authority specifically addressing this issue, Defendants refer the Court to four authorities: (1) California Civil Code section 1451; (2) California severance law including Civil Code section 1599, *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 124 (2000) ("*Armendariz*"), and cases following *Armendariz*; (3) Civil Code sections dictating the mandatory rules of contract interpretation in California including sections 1636, 1638, and 1639, and cases decided thereunder; and (4) the Texas case of *Buhler v. McIntire*, 356 S.W.2d 237 (1963) ("*Buhler*") (a copy of which is attached to the accompanying Appendix of Authorities). All require this Court to strike the illegal liquidated damages provision and let stand the alternative cancellation remedy. The first three are binding authority; the fourth is illustrative.

Civil Code section 1451 mandates that, if one of two alternatives is unenforceable, the remaining alternative stands alone. Under that section and upon this Court's determination that the liquidated damages alternative is unenforceable, the cancellation alternative stands alone.

The same result is mandated by California severance law. Under that law and upon this Court's determination that the liquidated damages remedy is unenforceable, this Court must sever Section D.1.c of the Amended Lease, strike the illegal remedy of liquidated damages, and leave standing the legal remedy of cancellation as DT's sole and exclusive remedy.

The same result is also mandated by California's statutory rules of contract interpretation. Those rules require courts to enforce contracts in accordance with the parties' intent as expressed

1
SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

in the language of their contracts, and the language of the ARL is clear. The parties agreed that the tenant would have a "sole and exclusive remedy" for the landlord's failure to deliver, agreed that any provision of the lease found to be invalid would be deemed never to have been included in the lease, and agreed that the balance of the lease would continue in effect. Their contract and California rules of contract interpretation require the excising of the illegal liquidated damages clause and the retention of cancellation as DT's "sole and exclusive" remedy.

The Texas *Buhler* case shows the foregoing principles at work. As here, the parties in *Buhler* agreed to two exclusive alternative remedies. As here, one remedy proved unenforceable. As here, the plaintiff declined to pursue the other remedy. As here, the plaintiff attempted to recover actual damages. As here, the defendant brought a motion for summary judgment. As held by the Texas Court of Appeals, "the provision for liquidated damages is inapplicable and unenforceable," and "[t]he effect of this is to leave the remedy of specific performance the only remedy for breach of contract by the purchasers." (*Id*. at 239.) Since the plaintiff did not seek specific performance, the court affirmed summary judgment in favor of the defendant. Rejecting any claim of unfairness in the result, the court stated:

> We are not aware of any public policy which invalidates a provision in a land sale contract restricting the vendor to the remedy of specific performance. It may be an unwise provision, but with this we have no concern.

(*Id*. at 240.) Similarly here, there is no public policy invalidating a provision in a lease restricting the tenant to the remedy of cancellation. Moreover, while as noted by the *Buhler* court, the wisdom of any such restriction is immaterial, the restriction is in fact fair. Regardless of DT's current disinclination to pursue that remedy, cancellation is a real, substantial, and indeed potentially drastic remedy, one for which DT specifically bargained, and one which, as discussed herein, is normally obtained only by tenants with superior bargaining power. DT itself has admitted the potential drastic effect of this remedy on Toyama's financing (see First Amended Consolidated Complaint ("FACC," Doc. No. 338) ¶91 [alleging that the Mervyn's and DT leases were "Major Leases," and that, "if either lease terminated, Comerica [Bank] had no obligation to continue funding the Redevelopment"]) and on Toyama's income stream (see Proposed Second Amended Complaint ("PSAC," Doc. No. 135-1) ¶ 86 [alleging that other than selling off the Shopping Center, "Toyama's only source of income from which to pay off the construction loan

2
SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

was rental income from the Shopping Center's retail tenants"]). Indeed, it was termination of the Mervyn's lease that resulted in Toyama's loss of financing, the cessation of construction, and the filing of this action (see FACC ¶¶ 13-14).

For these reasons, Defendants respectfully request the Court to strike DT's illegal liquidated damages remedy, let the legal exclusive cancellation remedy stand, and, based on DT's failure to seek cancellation in this action, enter summary judgment in favor of Defendants.

## II.     ARGUMENT

**A.     Defendants are Entitled to Summary Judgment Under Civil Code Section 1451 Which Mandates That, if One of Two Alternatives is Unenforceable, the Remaining Alternative Stands Alone.**

Civil Code section 1451 provides:

> If one of the alternative acts required by an obligation is such as the law will not enforce, or becomes unlawful, or impossible of performance, the obligation is to be interpreted as though the other stood alone.

An "obligation" under section 1451 includes any "legal duty, by which a person is bound to do or not to do a certain thing." (Civ. Code §1427.)

Section D.1.c of the ARL falls squarely under Civil Code section 1451, setting forth two alternative acts required by an obligation: to pay liquidated damages or accept cancellation of the ARL.[1] DT expressly alleges that Section D.1.c imposes obligations on Defendants, seeking a declaration that Defendants "are liable to pay $2,500 per day in liquidated damages to DT…." (FACC, ¶204), and cancellation, if sought, would similarly impose a corresponding obligation on Toyama to accept the cancellation. Upon this Court's determination that DT's alternative liquidated damages remedy is "such that the law will not enforce," the ARL must be interpreted as though DT's alternative cancellation remedy "stood alone." Since DT has failed to seek that remedy, Defendants are entitled to summary judgment.

---

[1] See ARL §D.1.c. [emphasis in original]:
<u>Remedies for Failure to Deliver</u>.
If all of the Delivery Conditions (except for the Punchlist) have not been fulfilled on or before **(ii)** [sic] **nine (9) months and** ten (10) days following the **Vacation** Date, **plus delays due to force majeure**, then Tenant shall have the right, in Tenant's sole discretion **and as Tenant's sole and exclusive remedy**, to either (1) charge as liquidated damages, which the parties acknowledge will be substantially less than Tenant's actual damages and do not constitute a penalty, a late fee equal to Two Thousand Five Hundred Dollars ($2,500) per day ("Late Fee") for each day or part thereof which elapses between the Anticipated Delivery Date specified in Section A.5.a and the date when all of the Delivery Conditions shall have been satisfied by Landlord; or (ii) cancel this Lease, with no further obligation hereunder.

3
SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

### B. Defendants are Entitled to Summary Judgment Under California Severance Law Which Mandates Severance of Divisible Illegal Contracts, Striking of Illegal Terms, and Preservation of Legal Terms.

Defendants are also entitled to summary judgment under California Severance Law set forth in Civil Code section 1599, *Armendariz*, and cases following *Armendariz*. As set forth below, that law mandates severance of divisible illegal contracts, mandates striking of illegal terms, and prohibits the striking of legal terms untainted by the illegality.

#### 1. It is an Abuse of Discretion Not to Sever a Divisible Illegal Contract.

Civil Code sections 1598 and 1599 govern treatment of illegal contracts in California. Section 1598 governs indivisible illegal contracts—i.e., contracts that are so wholly illegal that no portion of them may be enforced. It provides:

> Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void.

Section 1599 governs contracts that are divisible between their legal and illegal aspects. Section 1599 provides as follows:

> Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.

Section 1599 articulates "the law of severability of contracts" and is designed to "preserve[] and enforce[] any lawful portion of a parties' contract that feasibly may be severed." (*Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1523 (2008).)

As stated in *Armendariz*, divisibility is dictated by the interests of justice and whether the court has the capacity to cure the illegality by severance or restriction. (*Armendariz* at 124.) California law strongly favors severance. (See *Dotson v. Amgen*, 181 Cal.App.4th 975, 986 (2010) ("*Dotson*") ["the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement"]; *Shopoff* at 1523 ["the need to void contracts in violation of the law must be tempered by the countervailing public interest in preventing a contracting party from using the doctrine to create an unfair windfall"].) Thus, California courts apply a liberal approach to the issue of severance. (See 1 Witkin, *Summary of Cal. Law* (8th ed. 1973) Contracts, §343, p. 290.)

It is an abuse of discretion not to sever a divisible illegal contract. (*Dotson* at 985; see

4
SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

also *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1477-78 (2009) [avoidance of entire agreement should occur only "when an agreement is 'permeated' by unconscionability"]; accord *Armendariz* at 123.) In *Dotson*, "[t]he trial court refused Amgen's request to sever the discovery provision and enforce the rest of the agreement on the ground that '[t]he court does not find that its function is to re-write the arbitration agreement to make it substantively fair.'" (*Id*. at 985.) Rejecting the concern, the court stated:

> Where, as here, only one provision of the agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so.

(*Id*.)

### 2. An Illegal Contract is Divisible if the Illegality Can Be Cured By Striking the Illegal Provision, Without Augmenting or Reforming the Contract, and Without Striking Legal Terms Untainted by the Illegality.

An illegal contract is divisible if the illegality can be cured by striking the illegal provision, without augmenting or reforming the contract, and without striking legal terms untainted by the illegality. Thus, in *Breynon v. Garden Grove Medical Group*, 100 Cal.App.3d 698, 712 (1980) ("*Breynon*"), an illegal appeal provision was stricken from an otherwise valid arbitration provision. (See also *Dotson* at 985 [abuse of discretion not to strike easily severable unconscionable provision leaving remainder of agreement intact]; *Werner v. Knoll*, 89 Cal.App.2d 474, 476-77 (1948) [severing valid portion of exculpatory damages provision in landlord-tenant contract from invalid part]; and *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal.4th 119, 139 (1998) [severing legal from illegal portions of attorney fee agreement].)

In contrast, the contract in *Armendariz* was held not divisible because it was "permeated with an unlawful purpose." There was "no single provision a court can strike or restrict to remove the unconscionable taint from the agreement"; the multiple defects indicated a "systematic effort" to impose an unconscionable arbitration agreement; in order to correct the illegality the court would have to, "in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms"; and neither California law nor the court's inherent authority permits such reformation or augmentation. (See *id*., at 124-25; citing *Kolani v. Gluska*, 64 Cal.App.4th 402, 407-408 (1998) [reformation to correct mistakes, not illegality].)

5
SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

**3. Where a Contract is Divisible Between Its Legal and Illegal Portions, the Court Must Strike the Illegal Portion From the Contract and Enforce the Rest.**

Where a contract is divisible between its legal and illegal portions, the court must strike the illegal portion from the contract and enforce the rest. (See Civ. Code §1599 ["contract is void as to the latter and valid as to the rest"]; *Armendariz* at 123 ["It has long been the rule in this state that [w]hen the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the ... law ... [divides] according to common reason; and having made that void that is against law, lets the rest stand." (internal quotations omitted)].) A contract must be severed to save its legal portions even if those portions appear in the same paragraph, provision, section, or clause as the illegal portion.[2]

**4. In This Case, The Court Must Strike the Illegal Liquidated Damages Remedy and Leave the Remainder of Section D.1.c Intact, Including Its Legal Exclusive Cancellation Remedy.**

Section D.1.c is divisible under California Severance Law. DT's illegal liquidated damages remedy "can easily be severed without affecting the remainder" of Section D.1.c. (See *Dotson* at 985.) Severance of that illegal term would cure the illegality without need for augmentation or reformation. The remainder of Section D.1.c—including its provisions for cancellation of the lease and for limiting DT's remedies to a single "sole and exclusive remedy"—is entirely legal. (See *Philip Lee v. Placer Title Company*, 28 Cal.App.4th 503, 511-514 (1994) ("*Philip*") [parties to a commercial lease may agree to limit the range of remedies available to the non-breaching party in the event of a breach by the other party]; see also Friedman, et al. *Cal. Practice Guide: Landlord-Tenant* (The Rutter Group 2011) ¶4:29.5 [same].) These provisions are not "permeated with an unlawful purpose" or part of a "systematic effort" to impose an illegal or unconscionable agreement. (*Armendariz* at 124.) Nor are they "tainted" by the illegality of the liquidated damages clause. (*Breynon* at 712.) They are legal terms, and, under California Severance Law, they cannot be stricken.

---

[2] See *Dotson* at 985 (severing single provision in appendix to arbitration agreement accompanying employment contract); *Werner* at 476-77 (1948) [severing valid portion of exculpatory damages provision in landlord-tenant contract]; *Templeton Development Corporation v. Superior Court*, 144 Cal.App.4th 1073, 985-86 (2006) (severing single illegal clause in one of three paragraphs in section of subcontract); and *Breynon* at 712 (severing appeal provision from arbitration section of master agreement and policy for health service plan).

### 5. California Cases Awarding Actual Damages After Failure of a Liquidated Damages Provision Do Not Involve Contracts Setting Forth Two Exclusive Remedies.

DT may argue that this Court should replace its illegal liquidated damages remedy with a right to actual damages based on cases awarding actual damages after failure of a liquidated damages provision.[3] However, as discussed above, California law does not permit augmentation or reformation, and courts are not permitted to replace illegal terms with newly crafted legal ones. Further, none of the cases awarding actual damages involve a contract limiting the plaintiff to one of two exclusive remedies. Thus, when the illegal liquidated damages remedies were properly stricken in those cases, all that was left was either a remaining express contractual right to actual damages or silence and the imputation of general contract remedies. Here, upon the proper and mandated striking of the illegal liquidated damages clause and the proper and mandated preservation of the legal exclusive cancellation remedy, all that is left is DT's exclusive cancellation remedy. That remedy—and the remaining legal terms of Section D.1.c making that remedy DT's sole and exclusive one—precludes reliance on any other provision of the ARL or the otherwise unlimited remedies of California law to augment or modify the contract or otherwise contradict the express intent of the parties.[4]

### C. California's Rules of Contract Interpretation Require the Court to Enforce the Parties' Intent to Limit the Tenant's Remedies to Liquidated Damages or Lease Cancellation, and to Excise the Illegal Liquidated Damages Clause Leaving the Lease Cancellation as the Sole Remaining Remedy.

As the Supreme Court stated in *Santisas v. Goodin*, 17 Cal.4th 599, 608 (1998):

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.

---

[3] See, e.g., *Perdue v. Crocker National Bank*, 38 Cal.3d 913 (1985); *Garrett v. Coast and Southern Federal Savings & Loan*, 9 Cal.3d 731 (1973); *Freedman v. Rector*, 37 Cal.2d 16 (1951); *Ebbert v. Merchantile Trust Co.*, 213 Cal. 496 (1931); *El Centro Mall, LLC v. Payless*, 174 Cal.App.4th 58 (2009); *Greentree Financial Group, Inc. v. Execute Sports, Inc*. 163 Cal.App.4th 495 (2008); *Harbor Island Holdings v. Kim*, 107 Cal.App.4th 790 (2003); and *Sybron Corp. v. Clark Hospital Supply Corp*., 76 Cal.App.3d 896 (1978).

[4] Application of Section P.2 would not just violate the parties' intent as to actual damages; absent change and augmentation to distinguish between remedies for failure to deliver and remedies for other breaches, Section P.2 would permit DT to seek specific performance, injunction, and "any other remedies available to Tenant in law or in equity," in clear violation of the parties' expressed intent to limit DT's remedies for failure to deliver. Section P.2 would even transform the cancellation remedy, from a cancellation without further obligation (ARL §D.1.c) to termination with further payment obligations by Toyama (see ARL §P.2).

(See also Civ. Code §§1636, 1638, 1639.) Here, the language of the Lease is clear: DT is limited to one of two "sole and exclusive" remedies for Toyama's failure to deliver. The parties chose to bold "**sole and exclusive remedy**" to emphasize the parties' intent to limit DT's remedies. Moreover, under Section W.9 of the ARL, the parties expressly agreed to sever illegal sections or provisions from legal sections or provisions.[5] Like DT's sole and exclusive cancellation remedy, that section is enforceable (see *United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*, 660 F.Supp.2d 1163, 1191 (C.D. Cal. 2009) ("*United Guaranty*") ["parties are free to agree that a contract is severable"], and, upon failure of DT's illegal liquidated damages remedy, its sole and exclusive remedy is cancellation.

### D. *Buhler* Shows the Foregoing Principles at Work and Provides Illustrative and Persuasive Authority.

*Buhler* shows the foregoing principles at work where, as here, the parties agreed to two exclusive alternative remedies, one remedy is unenforceable, and the plaintiff has declined to pursue the remaining remedy. It held that, if the plaintiff was unable to pursue its liquidated damages remedy, it could pursue only its specific performance remedy. It further held that, since the plaintiff did not seek specific performance, the defendant was entitled to judgment as a matter of law.

The contract in *Buhler* was a real property purchase contract. It limited the seller's remedies to two alternatives: (i) liquidated damages in the form of the buyer's cash deposit; or (ii) specific performance. The buyer breached the contract. The seller was unable to pursue its liquidated damages remedy because, for reasons not explained in the opinion, the buyer failed to make the cash deposit. The seller sued for actual damages; both parties moved for summary judgment; the trial court entered judgment in favor of the defendant, and the Texas Court of Civil Appeals affirmed the judgment.

Relying on Texas law that is apparently the same as corresponding California law, the

---

[5] See ARL § W.9: "Severability. In the event that any provision or section of this Lease is rendered invalid by the decision of any court or by the enactment of any law, ordinance or regulation, such provision of this Lease shall be deemed to have never been included therein, and the balance of this ARL shall continue in effect in accordance with its terms." The word "sections" refers to the numbered terms of the ARL (see ARL *in passim* referring to all numbered parts as "Sections," including, e.g., §D.1. a referring to "Section" A.5.a) and the word "provisions" refers to the clauses within (see Black's Law Dictionary (7th Ed. 1999), p.1240 [defining "provision" as "A clause in a statute, contract, or other legal instrument"].)

court stated that, "[t]he general rule seems to be that parties having agreed upon the measure of damages for breach of their contract are accordingly bound." (See *Buhler* at 239-40 and authority cited therein including 5 Corbin on Contracts, p. 323, Sec. 1068; see also *Thrifty Payless Inc. v. Mariners Mile Gateway, LLC*, 185 Cal.App.4th 1050, 1064 (2010); *Philip* at 511-514 (1994).) The court held that, because the liquidated damages remedy was unenforceable, the plaintiff was limited to its specific performance remedy:

> There was no cash deposit, and the provision for liquidated damages is inapplicable and unenforceable. The effect of this is to leave the remedy of specific performance the only remedy for breach of the contract by the purchasers.

(*Id*. at 239.) In so holding, the Court expressly "enforce[d] the contract as made by the parties," noting that, "[i]n the absence of countervailing public policy, this is what courts should do." (*Id*.at 240.) Rejecting any argument that specific performance remedy was unfair or legally inadequate, the Court stated:

> We are not aware of any public policy which invalidates a provision in a land sale contract restricting the vendor to the remedy of specific performance. It may be an unwise provision, but with this we have no concern.

(*Id*.) Finally, noting that the plaintiff had voluntarily deprived himself of the remedy of specific performance by selling the real property to another buyer (*id*. at 239), the Court affirmed summary judgment in the defendant's favor.

The *Buhler* analysis and decision leads to a similar result here. As in *Buhler*, the parties' contract sets forth two exclusive alternative remedies; the liquidated damages alternative is unenforceable; the alternative remedy (specific performance in *Buhler* and cancellation in this case) is legal and enforceable; and the plaintiff elected not to pursue its alternative remedy. The law and principles recited in *Buhler* are identical to the law and principles under California law, and, as in *Buhler*, Defendants here are entitled to judgment as a matter of law.

**E.      Limiting DT to its Freely Negotiated Exclusive Legal Remedy is Fair, and Any Other Result Would Vitiate the Parties' Intent, Work an Injustice to Defendants, and Result in a Windfall to DT.**

The undercurrent of DT's position is that cancellation is not a real remedy. However, regardless of whether it is a remedy that DT now wants to pursue, it is the sole legal remedy for which DT bargained, and DT agreed to limit its recourse for failure to deliver to a "sole and exclusive remedy." Furthermore, judged as it must be at the time the contract was made,

9
SUPPLEMENTAL BRIEF ISO SUMMARY JUDGMENT
CASE NO. 10-CV-0325 SI AND 11-CV-002696

cancellation was—and typically is—a powerful remedy, one that threatens a landlord's financing and income stream, and one that only tenants with significant bargaining power can obtain:

> In most retail leases, a tenant with significant bargaining power will be able to obtain the right to terminate the lease as a remedy for one or more specific landlord defaults . . . . Although many tenants' lease forms start out with an all-purpose termination remedy for uncured landlord defaults, the landlord will typically insist on removing or at least limiting it to specific types of default to have a financeable lease, as lenders will not approve a lease with broad tenant termination rights. The landlord will want to be sure that the tenant may exercise such rights only after giving the lender notice and ample opportunity to cure.

(2 Cal. Commercial Leasing Series: Retail Leasing, Drafting and Negotiating the Lease (Cont.Ed.Bar 2011) [cross-references to sample forms omitted]; see also Civ. Code §1636 [interpret contracts to give effect to expressed intent of parties a time of entering into contract]; *see also Blumenfeld v. R.H. Macy & Company,* 92 Cal.App.3d 38, 46 (1979).)

As noted above, DT's own pleadings admit the disastrous impact that this remedy, judged when the lease was made, would potentially have on Toyama's construction financing, its income stream, and its ability to recover its investment in DT's premises should Toyama fail to complete construction and timely deliver and DT elect to cancel the lease without further obligation.[6] DT freely entered into the ARL; it agreed to pursue only one "sole and exclusive remedy" for Toyama's failure to deliver; one of those remedies is illegal[7]; the other is legal and substantial; and DT is bound by its contract and California law to pursue that remedy and no other.

### III. CONCLUSION

For the foregoing reasons, summary judgment should be entered in Defendants' favor.

DATED: February 27, 2012         REHON & ROBERTS
                                 A Professional Corporation


                                 By:   /s/ Lisa C. Roberts
                                       Attorneys for Defendants and Counterclaimants

---

[6] See FACC ¶91; PSAC 86; and Exhibits to ARL showing the extent of work to build DT's customized space including Exhibit C [Landlord's Work and Tenant's Work setting forth building specifications], Exhibit D [Tenant's Sign Package setting forth sign specifications], and Exhibit E [Façade Bump setting forth the required Dollar Tree "Everything's $1.00" building façade].

[7] Whether the ARL and the liquidated damages/cancellation provision was DT's form lease does not matter to the question of illegality (as opposed, e.g., to the question of procedural unconscionability). However, if the Court would like evidence on the point, Defendants will provide evidence, including the lease drafts, deposition testimony, and other evidence, showing that the ARL and Section D.1.c were from DT's form.