| | |
|---|---|
| DAVID F. FAUSTMAN (State Bar No. 81862)<br>FOX ROTHSCHILD<br>235 Pine Street, Suite 1500<br>San Francisco, CA 94104<br>Telephone: (415) 364-5540<br>Facsimile: (415) 391-4436 | PETER M. REHON (State Bar No. 100123)<br>LISA C. ROBERTS (State Bar No. 111982)<br>REHON & ROBERTS<br>A Professional Corporation<br>830 The Alameda<br>San Jose, CA 95126<br>Telephone: (408) 494-0900<br>Facsimile: (408) 494-0909 |

1
2
3

JAY D. MARINSTEIN (*Pro Hac Vice*)
PATRICK L. ABRAMOWICH (*Pro Hac Vice*)
FOX ROTHSCHILD
625 Liberty Avenue, 29th Floor
Pittsburgh, PA 15222
Telephone: (412) 391-1334
Facsimile: (412) 391-6984

Attorneys for Defendants and
Counterclaimants TOYAMA PARTNERS,
LLC, PETER PAU d/b/a SAND HILL
PROPERTY COMPANY, a sole
proprietorship; PETER PAU, in his
individual capacity and as partner of SAND
HILL PROPERTY MANAGEMENT
COMPANY; SUSANNA PAU, in her
capacity as partner of SAND HILL
PROPERTY MANAGEMENT
COMPANY; SAND HILL PROPERTY
MANAGEMENT COMPANY, and
CAPELLA-MOWRY, LLC.

SCOTT R. KIPNIS
HOFHEIMER GARTLIR & GROSS, LLP
530 Fifth Avenue
New York, NY 10036
Telephone: (212) 897-7898
Facsimile: (212) 897-4999

Attorneys for Plaintiff and Counter-Defendant,
DOLLAR TREE STORES, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLLAR TREE STORES, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>TOYAMA PARTNERS, LLC; PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC,<br><br>        Defendants. | Case No. CV-10-0325 SI<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Date:        **April 3, 2012**<br>Time:       **3:30 p.m.**<br>Judge:     **Honorable Susan Illston**<br>Location:  **Courtroom 10, 19th Floor**<br>           **450 Golden Gate Avenue**<br>           **San Francisco, California**<br><br>**Complaint filed:**  **January 22, 2010**<br>**Trial Date:**       **April 16, 2012** |

| | |
|---|---|
| 1<br>2<br>3 | PETER PAU d/b/a SAND HILL PROPERTY COMPANY, a sole proprietorship; PETER PAU, in his individual capacity and as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SUSANNA PAU, in her capacity as partner of SAND HILL PROPERTY MANAGEMENT COMPANY; SAND HILL PROPERTY MANAGEMENT COMPANY, and CAPELLA-MOWRY, LLC, |
| 4<br>5 | Counterclaimants, |
| 6 | v. |
| 7<br>8<br>9 | DOLLAR TREE STORES, INC.<br><br>Counter-Defendant. |
| 10<br>11<br>12 | DOLLAR TREE STORES, INC.,<br><br>Plaintiff, |
| 13 | v. |
| 14<br>15<br>16 | PETER PAU, TOYAMA PARTNERS, LLC, and CAPELLA-MOWRY, LLC.<br><br>Defendants. |
| 17<br>18<br>19 | TOYAMA PARTNERS, LLC, CAPELLA-MOWRY, LLC, PETER PAU, individually and d/b/a SAND HILL PROPERTY COMPANY, |
| 20 | Counterclaimants, |
| 21 | v. |
| 22<br>23<br>24 | DOLLAR TREE STORES, INC.,<br><br>Counter-Defendant. |
| 25<br>26<br>27<br>28 | |

JOINT PRETRIAL CONFERENCE STATEMENT                    CASE NO:  CV-10-0325 SI

Pursuant to the Court's Pretrial Instructions Order (Dkt. No. 280-1) (the "Pretrial Order"), Plaintiff Dollar Tree Stores, Inc. ("Dollar Tree") and Defendants Toyama Partners, LLC ("Toyama"), Peter Pau individually and d/b/a Sand Hill Property Company ("Pau"), Susanna Pau ("Ms. Pau"), Sand Hill Property Management Company ("SH Management"), and Capella-Mowry, LLC ("Capella") (collectively, "Defendants") submit this Joint Pretrial Conference Statement (the "Statement").

The parties intend to continue working cooperatively to achieve additional stipulations and agreements prior to the Pretrial Conference and will file an Amended Joint Pretrial Conference Statement setting forth any such additional stipulations and agreements.

# I.     THE ACTION

## A.     Substance of the Action.

### Dollar Tree's Proposed Joint Statement

This case arises from Dollar Tree Stores' loss of its store in the Mowry Crossing Shopping Center in Newark, California.  Dollar Tree, a retailer that sells all items for one dollar or less, began operating a store at Mowry Crossing in 2003.  Defendant Toyama Partners, LLC, a limited liability company  managed by Defendant Peter Pau, bought the Shopping Center in November 2005 for the purpose of redeveloping the property.  Toyama's plan was to demolish most of the existing stores, including Dollar Tree's store, rebuild and reconfigure the shopping center, and bring in new national and regional retailers.

After acquiring financing from Comerica Bank in August 2007, Toyama began construction on an 82,000 square foot Mervyn's store in the parking lot adjacent to Dollar Tree's store.  The Mervyn's store was intended to serve as the anchor for the redeveloped shopping center.  Dollar Tree, which had declined previous proposals to terminate its lease or relocate, complained that the construction substantially interfered with the operation of its store.

The parties attempted to resolve the dispute by entering into an Amended and Restated Lease.  Among other terms, the Amended and Restated Lease provided that Dollar Tree would vacate its store for nine months and receive a new, 15,000 square foot store in the redeveloped shopping center, to be built and paid for by the landlord, and certain negotiated financial

considerations.  Dollar Tree vacated its store on September 15, 2008, pursuant to the Amended and Restated Lease.

Toyama lost its construction financing in November 2008, after Mervyn's filed for bankruptcy, which Comerica asserted was a breach of the construction loan agreement. Construction on the shopping center stopped, and Toyama was unable to deliver a new store to Dollar Tree by the June 15, 2009 deadline.  Dollar Tree filed its lawsuit on January 22, 2010. While the lawsuit was pending, Toyama sold the Mowry Crossing Shopping Center to Defendant Capella-Mowry, LLC, another limited liability company managed by Mr. Pau.  Dollar Tree amended its Complaint to assert claims against Capella-Mowry as a successor to Toyama's obligations under the Amended and Restated Lease.

Dollar Tree has asserted a claim for breach of the Amended and Restated Lease against all defendants based on non-delivery of its new store.  Dollar Tree has asserted claims against Toyama as a party to the Amended and Restated Lease.  Dollar Tree alleges that (i) Peter Pau d/b/a Sand Hill Property, (ii) Susanna Pau, and (iii) Sand Hill Property Management Company, a general partnership owned by Peter and Susanna Pau, are *alter egos* of Toyama.  Dollar Tree contends that Capella-Mowry expressly assumed the obligations of the Amended and Restated Lease in the shopping center Sale Agreement.  Dollar Tree is seeking to recover (i) a late fee of $2,500 per day for each day after June 15, 2009 that Defendants fail to delivery possession of the new store as liquidated damages; (ii) interest on the accrued late fees; and (iii) attorneys' fees and costs.  As an alternative to the recovery of liquidated damages, Dollar Tree seeks its actual damages from the loss of the store, including lost profits.

In its Second Count, Dollar Tree seeks a declaration that the Defendants will continue to incur liability for liquidated damages at a rate of $2,500 per day through the 17-year term of the Amended and Restated Lease until they deliver possession of the new store.

In its Third Count, Dollar Tree alleges that Mr. Pau, Toyama, and Capella-Mowry engaged in a fraudulent conveyance in connection with the sale of the shopping center.  In April 2011, after Dollar Tree asserted claims against Capella, Mr. Pau executed a Second Amendment to the shopping center Sale Agreement, which purported to exclude Dollar Tree's Amended and Restated Lease from those leases transferred and assumed through the sale.  Dollar Tree claims

2

1   that the Second Amendment was intended to hinder Dollar Tree's claims against Capella-Mowry

2   in violation of California's Uniform Fraudulent Transfer Act and seeks in Count III to have the

3   Second Amendment voided.

4       In Count IV, Dollar Tree alleges that Peter Pau violated fiduciary duties owed to Dollar

5   Tree, as a creditor of an insolvent LLC, by repaying nearly $900,000 in loans to his sole

6   proprietorship, Sand Hill Property Company.  Dollar Tree also alleges that Mr. Pau violated

7   fiduciary duties by paying over $150,000 from the sale proceeds to unsecured creditors without

8   making any payment to Dollar Tree.

9       Finally, Dollar Tree has asserted a statutory unfair competition claim against Toyama, the

10   alleged *alter egos*, and Capella-Mowry based upon the allegedly unlawful conduct asserted in the

11   other counts.

12       Defendants deny liability on all counts.  Toyama claims that the late fees identified in the

13   Amended Lease are unenforceable penalties, and that the Amended Lease provides an exclusive

14   remedy to Dollar Tree of canceling the Lease.  Toyama also claims that it cured the breach by

15   offering Dollar Tree proposals for alternate space in the Shopping Center.  Mr. Pau, Susanna Pau,

16   and Sand Hill Property Management Company contend that they have operated separately from

17   Toyama and should not be held liable for its debts.  Capella-Mowry denies that it ever assumed

18   Dollar Tree's lease when it purchased the Shopping Center.  Capella-Mowry, Toyama, and Mr.

19   Pau assert that they were permitted to amend the Shopping Center Sale Agreement retroactively.

20       Mr. Pau disputes that Dollar Tree's breach of fiduciary duty claim on the basis that Dollar

21   Tree allegedly did not have a valid claim against Toyama when he distributed the proceeds of the

22   Shopping Center sale.  Mr. Pau also contends that his acts as Toyama's manager were a

23   legitimate exercise of his business judgment.  Finally, Defendants contend that Dollar Tree's

24   unfair competition claim is not supported by any unlawful conduct by Defendants.  Defendants

25   have asked for declaratory judgments that they are not liable on any of Dollar Tree's claims.

26       As of the filing of this Statement, none of the claims or defenses set forth above have

27   been decided.

JOINT PRETRIAL CONFERENCE STATEMENT        CASE NO:  CV-10-0325 SI

**Defendants' Proposed Joint Statement**

The currently operative pleadings are Dollar Tree's First Amended Consolidated Complaint (Doc. No.338; the "FACC"), the Counterclaim for Declaratory Relief by Toyama, Capella, and Pau (Doc. No.288), which incorporates by reference the Counterclaim for Declaratory Relief by Capella (Doc. No.204) and the Counterclaim for Declaratory Relief by Pau, Susanna Pau, and Sand Hill Management Company (Doc. No.206) (Doc. Nos. 204, 206, and 288 collectively hereinafter referred to as the "CC"), and the respective answers thereto (Doc Nos. 414 ["Defendants' Answer"] and 211, 212 and 303 ["Dollar Tree's Answers"]).

As of the filing of this Statement, none of the claims or defenses set forth in the foregoing pleadings has been decided. Thus, all such claims and defenses remain to be decided including the following: (1) Dollar Tree's first claim for Breach of Contract (i.e., the Amended and Restated Lease [the "Amended Lease"] between Dollar Tree and Toyama) (against Toyama, Pau, Ms. Pau, Sand Hill Property Company, and Sand Hill Property Management Company); (2) Dollar Tree's second claim for Declaratory Judgment for Breach of Amended and Restated Lease (against all Defendants); (3) Dollar Tree's third claim for Fraudulent Conveyance (against Toyama, Capella, and Pau); (4) Dollar Tree's fourth claim for Breach of Fiduciary Duty (against Pau); (5) Dollar Tree's fifth claim for Unfair Competition (against all Defendants); (6) Defendants' affirmative defenses to such claims contained in Defendants' Answer; (7) Capella's counterclaim for declaratory relief (against Dollar Tree); (8) Pau's, Susanna Pau's, and Sand Hill Proper Management Company's counterclaim for declaratory relief (against Dollar Tree); (9) Toyama's, Capella's, and Pau's first counterclaim for declaratory relief (against Dollar Tree); (10) Toyama's, Capella's, and Pau's second counterclaim for declaratory relief (against Dollar Tree); (9) Toyama's, Capella's, and Pau's third counterclaim for declaratory relief (against Dollar Tree); and (10) Dollar Tree's affirmative defenses to such claims contained in Dollar Tree's Answers.

  **B.**  **Relief Prayed.**

    **1.**  **Relief Sought by Dollar Tree:**

      a.  Judgment in favor of Dollar Tree and against Defendants Toyama

4

Partners, LLC ("Toyama"), Peter Pau d/b/a Sand Hill Property Company ("Pau"), Pau in his individual capacity and as partner of Sand Hill Property Management Company, Susanna Pau in her capacity as partner of Sand Hill Property Management Company, and Sand Hill Property Management Company (collectively, the "Pau Defendants") and Capella-Mowry, LLC ("Capella") on the First and Second Causes of Action in Dollar Tree's First Amended Consolidated Complaint for breach of contract and declaratory judgment in the amount of $10,539,395.00, plus 10% post-judgment interest, plus reasonable attorneys' fees and costs to be awarded by the Court after Dollar Tree files a petition;

b. In the alternative on the Second Cause of Action, a declaration adjudging and declaring that from June 15, 2009 until such date as the Pau Defendants and/or Capella deliver possession of the Premises identified in the Amended and Restated Lease, the Pau Defendants and Capella are liable to pay $2,500 per day in liquidated damages to Dollar Tree, interest at the Default Rate specified in Section W(23) of the Amended Lease, and Dollar Tree's reasonable attorneys' fees and costs.

c. On the Third Cause of Action in Dollar Tree's First Amended Consolidated Complaint:

(i) Judgment in favor of Dollar Tree and against Defendants Toyama, Capella, and Pau on the Third Cause of Action in Dollar Tree's First Amended Consolidated Complaint for fraudulent conveyance;

(ii) A declaration adjudging and declaring that the Second Amendment to Sale Agreement is avoided, and has no past, present, and/or future legal effect; and

(iii) An Order Dollar Tree shall be granted an attachment against the Mowry Crossing Shopping Center in the amount of its damages set forth in paragraph a;

d. On the Fourth Cause of Action in Dollar Tree's First Amended Consolidated Complaint:

(i) Judgment in favor of Dollar Tree and against Defendant

1  Pau for breach of fiduciary duty in the amount of $956,656.05, plus an award of pre-judgment

2  interest beginning on February 16, 2011 in an amount to be determined at the discretion of the

3  Court, plus 10% post-judgment interest;

4          (ii)    Damages for breach of fiduciary duty based upon the sale

5  price for the Mowry Crossing Shopping Center to be determined by the Court; and

6          (iii)    An award of punitive damages against Pau;

7      e.    Judgment in favor of Dollar Tree and against Defendant Capella on

8  Capella's first Counterclaim for Declaratory Judgment (Docket No. 204).

9      f.    Judgment in favor of Dollar Tree and against Defendants Toyama,

10 Capella, and Pau on Toyama, Capella, and Pau's first, second, and third Counterclaims for

11 Declaratory Judgment (Docket No. 288).

12     **2.**    **Relief Sought by Defendants.**

13     Defendants object to the foregoing section entitled Relief Sought by Dollar Tree prepared

14 by Dollar Tree as including information and assertions not contained in Dollar Tree's operative

15 pleading.

16     The relief sought by Defendants is as follows:

17 a.    As to all of Dollar Tree's claims in its FACC:

18     (i)    Judgment be entered in favor of Toyama Partners, LLC,

19 Peter Pau d/b/a Sand Hill Property Company, Pau in his individual capacity and as partner of

20 Sand Hill Property Management Company, Susanna Pau in her capacity as partner of Sand Hill

21 Property Management Company, and Sand Hill Property Management Company and Capella-

22 Mowry, LLC ("Defendants");

23     (ii)    Defendants recover their costs of suit, including reasonable

24 attorneys' fees, costs and expenses incurred herein;

25     (iii)    Dollar Tree receive nothing on its claims.

26     b.    As to the claims set forth in the CC:

27     (i)    For a judicial declaration that:

28     (a)    The Amended Lease does not prohibit the sale of the

6

1   Mowry Crossing by Toyama;

2         (b)     The sale of the Property does not constitute a breach

3   of the Amended Lease;

4         (c)     Any purchaser of the Mowry Crossing is not

5   automatically bound by the terms of the Amended Lease;

6         (d)     Any purchaser of the Mowry Crossing is only liable

7   under the terms of the Amended Lease if the purchaser assumes those obligations;

8         (e)     Any purchaser of the Mowry Crossing is not

9   obligated by law or contract to assume the terms of the Amended Lease;

10         (f)     The liquidated damages clause of the Amended

11   Lease is unenforceable because it represents an unenforceable penalty under Civil Code section

12   1671;

13         (g)     The Amended Lease only affords Dollar Tree two

14   remedies for the landlord's breach:  recovery of liquidated damages or termination of the

15   Amended Lease;

16         (h)     Capella is not a successor in interest to Toyama on

17   the Amended Lease.

18         ii.     For a judicial declaration that Toyama, Capella, and Pau

19   owed no fiduciary duties to Dollar Tree as a matter of law at the time of the sale of the Mowry

20   Crossing.

21         iii.     For a judicial declaration that Toyama, Capella, and Pau

22   were not obligated to transfer the Amended Lease to Capella as part of the sale of the Mowry

23   Crossing to Capella and further that Capella was not obligated to assume the obligations of the

24   Amended Lease.

25         iv.     For a judicial declaration that Capella did not expressly or

26   otherwise assume the Amended Lease, that there is no privity of contract between Capella and

27   Dollar Tree, that there is no privity of estate between Capella and Dollar Tree, that Capella did

28   not take title "subject to" the Amended Lease, that Capella is not a "legal successor" to Toyama

7

under the Amended Lease, that Capella is not jointly and severally or otherwise liable to Dollar Tree, that Dollar Tree has no rights or interests as to or in Mowry Crossing, and that Capella does not have any liability or obligations to Dollar Tree.

v. For a judicial declaration that neither the managers (Pau, Susanna Pau, and Sand Hill Property Management Company) nor any of them are alter egos and that neither the Managers nor any of them are liable for Toyama's alleged obligations under the Amended Lease or for Toyama's alleged unfair competition based on Toyama's alleged breach of the Amended Lease.

vi. All counterclaimants be awarded their attorneys' fees and costs of suit;

## II. THE FACTUAL BASIS OF THE ACTION

### A. Undisputed Facts.

Dollar Tree first received Defendants' proposed Statement of Undisputed Facts after the close of business (EDT) on the date of filing, March 20, 2012. Accordingly, agreed-upon facts could not be negotiated prior to the filing deadline. The parties will continue to seek accord on the undisputed facts of this case after filing.

### <u>Dollar Tree's Statement of Undisputed Facts</u>

1. Dollar Tree Stores, Inc., or "Dollar Tree," is a Virginia corporation with its principal place of business in the city of Chesapeake, Virginia.

2. Dollar Tree operates a chain of variety retail stores selling all items for one dollar or less.

3. Peter Pau is a real estate developer who resides at 20 Brooke Court, Hillsborough, California 94010.

4. Peter Pau owns and operates a sole proprietorship, Sand Hill Property Company with a principal place of business at 200 Redwood Shores Parkway, Suite 200, Redwood City, California 94065.

5. Susanna Pau is the spouse of Peter Pau and also lives at 20 Brook Court, Hillsborough, California 94010.

6. Sand Hill Property Management Company is a general partnership consisting of two partners, Peter Pau and Susanna Pau, with its principal place of business at 200 Redwood Shores Parkway, Suite 200, Redwood City, California 94065.

7.  Toyama Partners, LLC, or "Toyama," is a California limited liability company with its principal place of business at 200 Redwood Shores Parkway, Suite 200, Redwood City, California 94065.

8.  Capella-Mowry, LLC, or "Capella," is a California limited liability company with its principal place of business at 200 Redwood Shores Parkway, Suite 200, Redwood City, California 94065.

9.  Peter Pau is the managing member of both Toyama and Capella, which means that he exercises day-to-day control over their management and decisions.

10. Peter Pau also exercises day-to-day control over the management and decisions of Sand Hill Property Company and Sand Hill Property Management Company.

11. Sand Hill Property Company, Sand Hill Property Management Company, Toyama, and Capella all utilize the same offices, telephone lines, and employees.

12. Sand Hill Property Management Company, Toyama, and Capella do not have employees, but instead utilize the services of employees of Sand Hill Property Company. Sand Hill Property Company does not charge Sand Hill Property Company, Toyama, or Capella for the services of its employees.

13. Dollar Tree entered into a lease with Pacific/DSLA No. 2, dated June 9, 2003, for a 17,635 square foot store in the Mowry Crossing Shopping Center located at 5777 Mowry Avenue, Newark, California.

14. On November 16, 2005, Toyama purchased the Mowry Crossing Shopping Center from Pacific DSLA/No. 2 and assumed Dollar Tree's lease.

15. Toyama was a single-purpose LLC whose only asset as of November 16, 2005 was the Mowry Crossing Shopping Center.

16. Toyama acquired the Mowry Crossing Shopping Center for the purpose of redeveloping the property.

17. Dollar Tree's lease with Pacific DSLA/No. 2 commenced on August 25, 2003, and extended for a total possible term of twenty (20) years, including all renewals.

18. On January 9, 2008, Dollar Tree timely exercised its first option to extend the term of its Mowry Crossing lease for a period of five (5) years to expire on August 31, 2013.

19. On June 10, 2005, Sand Hill Property Company sent a letter to Dollar Tree asking that Dollar Tree agree to terminate its lease. Dollar Tree rejected the request.

20. On multiple occasions from 2005 through the first half of 2008, Sand Hill Property Company made proposals for Dollar Tree to either relocate its store or terminate its lease in connection the planned redevelopment of the Shopping Center. Each time, Dollar Tree declined.

9

21.   Toyama proceeded with plans to redevelop the Mowry Crossing Shopping Center that involved demolishing most of the existing buildings, including Dollar Tree's store, and building new stores for new national and regional retailers.

22.   On May 18, 2007, Toyama entered into a Ground Lease Agreement for Mervyn's to occupy an 82,000 square foot store that was intended to become the anchor of the redeveloped shopping center.

23.   To finance the redevelopment and pay off a loan taken out to buy the Shopping Center, Toyama obtained a $39 million construction loan and a $3.265 million unsecured loan from Comerica Bank on August 21, 2007. Both the construction loan and the unsecured loan were personally guaranteed by Peter Pau.

24.   In addition to guarantying Toyama's construction and unsecured loans, Peter Pau executed a  Completion Agreement and Guaranty that, among other terms, required him to personally complete and fund the cost of the redevelopment project in the event that Toyama abandoned construction or failed to complete it within the maximum construction time for any reason.

25.   Shortly after obtaining the construction financing, Toyama began building the Mervyn's store in a parking lot adjacent to Dollar Tree's store.

26.   Dollar Tree complained to Sand Hill Property Company that the construction activity was substantially interfering with the operation of Dollar Tree's Mowry Crossing store.

27.   Dollar Tree was forced to install a banner sign on the outside of its store during construction to notify customers that the store was still open.

28.   On or about June 2, 2008, Toyama signed a lease with BJ's Restaurant and Brewhouse for an 8,600 square foot BJ's restaurant to be constructed in the parking lot facing Dollar Tree's storefront.

29.   Dollar Tree and Toyama resolved Dollar Tree's complaints about interference with the operation of its store by entering into an Amended and Restated Lease on July 18, 2008.

30.   The Amended and Restated Lease was negotiated by counsel for both sides, who exchanged multiple drafts and sets of comments.

31.   The Amended and Restated Lease provided, among other terms, that (i) Dollar Tree would vacate its store in the Mowry Crossing Shopping Center within 60 days of the effective date of the Amended and Restated; (ii) that Toyama would deliver possession of a new, 15,000 square foot store in the redeveloped shopping center by June 15, 2009; and (iii) that the term of the Amended and Restated Lease would be eleven years, with a six-year renewal term.

32.   As consideration for executing the Amended and Restated Lease, Dollar Tree received, among other terms, (i) a cash payment of $500,000, (ii) fifteen (15) months of free rent totaling $234,375, and (iii) a tenant allowance of $270,000 to help offset the costs of building out the new store.

33.   Dollar Tree vacated its store in the Mowry Crossing Shopping Center, as required by the Amended and Restated Lease, on September 15, 2008.

34.   On November 13, 2008, Comerica Bank notified Toyama that Comerica would no longer fund draw requests made against the construction loan. Comerica Bank asserted that Mervyn's filing for bankruptcy protection on July 29, 2008, was a breach of Mervyn's lease, which in turn breached the Building Loan Agreement between Toyama and Comerica.

35.   Following the cessation of funding by Comerica, Toyama did not possess adequate capital to pay all of its debts and obligations.

36.   Toyama was unable to complete redevelopment of the Shopping Center and failed to deliver possession of Dollar Tree's new store by June 15, 2009.

37.   Dollar Tree filed this lawsuit on January 22, 2010.

38.   While the lawsuit was pending, Peter Pau executed a Sale Agreement on behalf of both Toyama and Capella, bearing a date of January 18, 2012. Pursuant to the Sale Agreement, Toyama agreed to sell the Mowry Crossing Shopping Center to Capella for $21 million.

39.   Peter Pau executed a First Amendment to the Sale Agreement with a date of January 24, 2011, the sole purpose of which was to reduce the purchase price from $21 million to $19.2 million.

40.   The closing for the sale of the Shopping Center from Toyama to Capella occurred and was recorded on February 16, 2012.

41.   Capella paid Toyama $19.2 million at the closing, of which Comerica Bank received $16,050,000.  From the remaining proceeds of the sale of the Shopping Center, Pau (i) paid Sand Hill Property Company $899,456.99 for amounts advanced to Toyama, (ii) paid $106,832 to his attorneys, Coontz & Matthews, LLP, (iii) paid $45,675 to Terranomics Retail Service, and (iv) paid claims to other creditors of Toyama.

42.   Toyama did not pay any of the proceeds from the sale of the Shopping Center to Dollar Tree.

43.   Toyama, Peter Pau, and Capella first disclosed the closing of the sale to Dollar Tree on March 11, 2011.

44.   Dollar Tree subsequently amended its Complaint to allege that Capella was a successor to Toyama's obligations under the Amended and Restated Lease.

45.   On April 21, 2012, Pau executed a Second Amendment to the shopping center Sale Agreement on behalf of Toyama and Capella, which was dated February 15, 2012.

46.   After learning of the Second Amendment to the shopping center Sale Agreement, Dollar Tree further amended its Complaint to allege that the Second Amendment was a fraudulent transfer intended to negatively impact its claims against Capella.

**Defendants' Statement of Undisputed Facts.**

11

Defendants first received Dollar Tree's first draft of the proposed Joint Pretrial Conference Statement after hours (PDT) on Friday, March 16, 2012, two business days before the filing deadline on March 20, 2012.  At approximately 11:15 a.m. on the morning of the date of filing, Dollar Tree's counsel advised that they would not consider any further comments after 1:00 p.m. PDT that day and would not wait to file the document past 3:30 p.m.  Neither then nor at any other time did Dollar Tree provide comments to Defendants' proposed statement of undisputed facts had been provided to Dollar Tree's counsel.  Ultimately, Dollar Tree's counsel agreed to Defendants' proposal that their counsel file the statement prior to the actual filing deadline at midnight PDT.  However, Defendants have objected to Dollar Tree's statement and Dollar Tree has not commented on Defendants' statement, so the parties are submitting separate proposals. The parties will continue to seek accord on the undisputed facts of this case after filing.

1. Dollar Tree is a Virginia corporation with its principal place of business in the city of Chesapeake, Virginia.  Dollar Tree operates a chain of variety retail stores selling all items for one dollar or less.

2. Peter Pau ("Pau") and Susanna Pau are married and reside in San Mateo County, California.

3. Toyama is a duly formed California limited liability company, and Pau is its manager.  Toyama was originally formed on June 20, 1997 by all of its seven members other than Pau, and on October 26, 2005, Toyama admitted Pau as a member and as its sole manager.

4. Sand Hill Property Company is a sole proprietorship owned and operated by Pau.

5. Sand Hill Property Management Company is a duly organized California general partnership consisting of two partners, Pau and Susanna Pau.

6. Capella is a duly formed California limited liability company, and Pau is its manager.  Capella is wholly owned by Capella Holdings, LLC, a duly formed California limited liability company.  Capella Holdings, LLC has five members and investors in addition to Pau.

7. On or about June 9, 2003, Dollar Tree entered into a lease with a prior owner of the Shopping Center, Pacific/DSLA No. 2, for a 17,635 store in the Shopping Center.

8. On November 16, 2005, Toyama purchased the Shopping Center from Pacific/DSLA No. 2.

9. Toyama and Mervyn's executed a ground lease agreement on or about May 18, 2007.  The Mervyn's store was to be the anchor/major store in the Shopping Center.

12

JOINT PRETRIAL CONFERENCE STATEMENT                    CASE NO:  CV-10-0325 SI

10. On August 21, 2007, Comerica Bank ("Comerica") agreed to lend to Toyama the sum of $39 million, secured by a first deed of trust on the Shopping Center, and the sum of $3,265,000, on an unsecured basis (the "Comerica Loans") to construct improvements at the Shopping Center. The loan documents for the Comerica Loans included, among other things, a Business Loan Agreement and two guaranties.

11. On July 18, 2008, Toyama and Dollar Tree entered into the Amended Lease.

12. On July 29, 2008, Mervyn's filed for bankruptcy.

13. On September 15, 2008, Dollar Tree closed its store and vacated its original premises in the Shopping Center. Upon Dollar Tree closing its store, Toyama paid Dollar Tree a closing fee of $500,000.00. Dollar Tree never regained possession.

14. On November 13, 2008, Comerica notified Toyama that it was ceasing its funding under the Comerica Loans.

15. The Anticipated Delivery Date under the Amended Lease for the replacement premises was June 15, 2009.

16. On February 24, 2010, Comerica commenced its non-judicial foreclosure proceeding against its deed of trust on the Shopping Center by recording a Notice of Default.

17. On August 9, 2010, Toyama and Comerica entered into a Settlement Agreement and Release ("August Agreement") which was terminated on December 28, 2010.

18. In or about December 2010 and January 2011, Toyama and Dollar Tree discussed a potential resolution, under which, among other things, Toyama would have provided a $1 million letter of credit in favor of Dollar Tree, Toyama and Dollar Tree would have entered into a new replacement lease agreement, and Dollar Tree's replacement premises would be located in a portion of Major 1.

19. On February 15, 2011, Toyama and Comerica entered into an agreement entitled "Settlement Agreement and Release (Short-Sale Payoff)."

20. The sale of the Shopping Center by Toyama to Capella closed on February 16, 2011. Capella paid reasonably equivalent value for the Shopping Center. The terms of the sale of the Shopping Center by Toyama to Capella are set forth in the following written documents: the Sale Agreement, First Amendment to Sale Agreement, and Second Amendment to Sale Agreement. At the time the Shopping Center was sold to Capella, Pau had a 31% ownership interest in Capella Holdings, LLC.

21. On and after February 16, 2011, Toyama paid all of the proceeds from the sale of the Shopping Center to its creditors, including Comerica and Sand Hill Property Company. Toyama did not pay any of the proceeds to Dollar Tree.

22. Dollar Tree was unaware of the terms of the sale of the Shopping Center to Capella until April 22, 2011.

13

B.      **Disputed Factual Issues.**

### Dollar Tree's Statement of Disputed Factual Issues

1.      Whether the daily late fee and the liquidated damages clause in the Amended and Restated Lease ("Amended Lease") bear a reasonable relationship to the range of harm that the parties might reasonably have anticipated when they entered into the Amended Lease.

2.      Whether Peter Pau ("Pau"), individually and as Manager of Toyama Partners, LLC ("Toyama") and Capella-Mowry, LLC ("Capella") acted with intent to hinder, delay or defraud Dollar Tree Stores, Inc. ("Dollar Tree") when entering into the Second Amendment.

3.      To what extent did the "as is" fair-market value of the Shopping Center exceed the amount of the encumbrances on the Shopping Center at the time of its sale to Capella?

4.      Whether Pau was mistaken at the time of the closing on the sale of the Shopping Center whether a settlement with Dollar Tree would occur prior to closing.

5.      Whether the Assignment attached to the Shopping Center Sale Agreement at Exhibit B was executed in conjunction with the closing on the sale of the Shopping Center.

6.      If the Liquidated Damages Clause is declared unenforceable, what are Dollar Tree's actual damages?

7.      Over what time period may Dollar Tree recover damages for its breach of contract claim?

8.      If the Court holds that the liquidated damages clause is unenforceable, whether Dollar Tree acted reasonably to mitigate its damages?

9.      If the Court holds that Dollar Tree was required to mitigate its damages, whether Dollar Tree was justified in refusing to accept Toyama's offer of alternate performance and demand that it waive its claims against Toyama.

10.     If the Court holds that the liquidated damages clause is unenforceable, did the parties to the Amended Lease intend that Dollar Tree would be able to collect actual damages if liquidated damages were unavailable.

11.     Did the parties to the Amended Lease intend that the general cure provision in the Amended Lease, Section P.2., would apply to a breach of the delivery conditions for the new store?

12.     If the Count finds that Section R of the Amended Lease is ambiguous, whether the parties intended that Toyama would be required to ensure that any purchaser of the Shopping Center assume the Amended Lease.

13.     Whether, by suggesting alternative performance, in the form of a space in the Shopping Center other than the Major 3 space, conditioned on Dollar Tree waiving its claims, Toyama cured its breach of the Amended Lease.

14.     Whether as of the February 16, 2011, closing on the sale of the Shopping

14

Center, under the terms of the Sale Agreement and its Assignment, Toyama assigned the Amended Lease to Capella.

15. Whether as of the February 16, 2011, closing on the sale of the Shopping Center, under the terms of the Sale Agreement and its Assignment, Capella assumed the Amended Lease from Toyama.

16. Whether, as Manager of Toyama and Capella, Pau controlled the Shopping Center both before and after its sale from Toyama to Capella.

17. Whether, as Manager of Toyama and Capella, Pau controlled the Amended Lease before the sale of the Shopping Center to Capella, between the sale and the execution of the Second Amendment, and after the execution of the Second Amendment.

18. Whether Toyama received any consideration for executing the Second Amendment.

19. Whether Capella received any consideration for executing the Second Amendment.

20. Whether Toyama was insolvent both before and after the sale of the Shopping Center to Capella.

**Defendants' Statement of Disputed Factual Issues**

As set forth in Defendants' pending motions for summary judgment, it contends that there are no genuine issues of material fact precluding judgment in its favor on all counts, and as set forth in Defendants' pending opposition to motion for summary judgment, Defendants also contend that there are no genuine issues of material fact precluding judgment in Defendants' favor on the claims subject to Dollar Tree's motion but there are additional disputed facts on other elements that further prevent entry of partial summary judgment in Dollar Tree's favor. This statement may change depending on the outcome of the pending motions.

C.     **Agreed Statement.**

The parties do not believe that all or part of the action may be presented upon an agreed statement of facts.

D.     **Stipulations.**

The parties stipulate that, subject to orders made on the parties' respective motions *in limine*, the parties' proposed trial exhibits identified in their respective indices of trial exhibits are authentic and constitute business records within the meaning of the hearsay exception, but preserve for trial all other objections to the documents, including without limitation (i) objections to hearsay within the document, and (ii) objections to the admission of any document to which

15

1   Dollar Tree might assert an objection pursuant to Federal Rule of Evidence 408.  Dollar Tree

2   objects to defendants' exhibit list because the documents are contained in Dollar Tree's exhibit

3   list.  There is no reason to have duplicative exhibits.   Moreover, Dollar Tree further objects to

4   the defendants' exhibit list to the extent defendants have failed to adequately identify the

5   document.

6        The parties further stipulate that, given Section 6 of the Pretrial Instructions, should the

7   Court not permit filing of motions *in limine* under seal, the party bringing the motion will ensure

8   that no information designated as confidential by another party under the parties' Stipulation for

9   Protective Order and Order thereon will be disclosed in the motions or papers filed therewith.

10        **Note by Defendants only**:  The foregoing section last revised by Dollar Tree should be

11   revised to substitute "any party" with "Dollar Tree" in the first sentence.

12   **III.   DISPUTED LEGAL ISSUES**

13        **A.   Points of Law.**

14        <u>**Dollar Tree's Statement of Disputed Legal Issues**</u>

15        Dollar Tree's concise statements of each disputed point of law are attached hereto at

16   Exhibit 3.

17        1.   **Breach of Contract**

18            a.   Whether the liquidated damages provision, Section D.1.a.1. of the

19                Amended Lease, "bears a reasonable relationship to the range of harm that

20                the parties might reasonably have anticipated when they entered into the

21                contract," and is therefore and enforceable, or whether it is an

22                unenforceable penalty.

23            b.   Whether, if the Liquidated Damages Provision is deemed unenforceable

24                and of no effect, the exclusive remedy clause should likewise be stricken.

25            c.   Whether, if the Liquidated Damages Provision is deemed unenforceable,

26                Dollar Tree is entitled to recover actual damages.

27            d.   Whether, if the Liquidated Damages Provision is deemed unenforceable,

28                the Court should reform the Liquidated Damages Provision based on a

16

1    mutual mistake of law.

2        e.    Whether Defendants' argument regarding the Judgments/Non-Recourse

3              clause, Section U.1., is ripe for decision at this time.

4        f.    Whether the Judgments/Non-Recourse clause, Section U.1., can be

5              enforced if the Shopping Center and Amended Lease are not held by the

6              same entity.

7              i.    Whether Toyama breached the implied covenant of good faith and

8                    fair dealing by seeking to deny Dollar Tree its contracted-for

9                    remedy, justifying an implied covenant precluding Defendants

10                   from relying on the Judgments/Non-Recourse clause to the extent

11                   that the Shopping Center is not owned by Dollar Tree's landlord.

12             ii.   Whether the Amended Lease contains an implied covenant

13                   precluding Defendants from applying the Judgments/Non-Recourse

14                   clause at any time when the Shopping Center is not owned by

15                   Dollar Tree's landlord.

16             iii.  Whether Dollar Tree's landlord's possession of the Shopping

17                   Center is a condition precedent to the landlord's reliance on the

18                   Judgments/Non-Recourse clause.

19       g.    If the liquidated damages provision is enforceable, whether the Amended

20             Lease's general cure provision, Section P.2., applies to a breach of the

21             delivery conditions, given the more specific cure provision contained

22             within the Liquidated Damages Provision.

23       h.    Whether, if the general cure provision at Section P.2. of the Amended

24             Lease is found to apply to a breach of the delivery conditions, Toyama

25             complied with the provision's requirements that it "commence" and

26             "proceed to complete performance required to cure," given that it did not

27             commence or complete building Dollar Tree's new store.

28             i.    Whether Toyama "cured" its breach by offering Dollar Tree various forms

17

1    of alternate performance not provided for in the Amended Lease.

2    j.    Whether Defendants may rely upon emails and other communications that

3          were part of settlement discussions as evidence of Toyama's supposed

4          "cure" of its breach of the Amended Lease or as evidence of Dollar Tree's

5          mitigation efforts.

6    k.    If the breaching party to a contract offers alternative performance

7          conditioned on the plaintiff waiving all claims and damages, whether (i)

8          the offer of alternative performance is part of the plaintiff's duty to

9          mitigate; and (ii) is admissible to prove a failure to mitigate damages.

10   l.    Whether Dollar Tree had a duty to mitigate its damages given the presence

11         of the liquidated damages clause in the Amended Lease.

12   m.    Whether Capella expressly assumed the Amended Lease at the February

13         16, 2011 closing through the Sale Agreement and its Assignment.

14         i.    Whether between the closing on the sale of the Shopping Center

15               and the execution of the Second Amendment two months later

16               Capella had assumed the Amended Lease and was Dollar Tree's

17               landlord under the Amended Lease.

18   n.    Whether an unsigned Assignment that is attached to and incorporated into

19         a signed Sale Agreement is enforceable under California law.

20   o.    Whether Capella is liable for Toyama's breach of the Amended Lease as a

21         successor to Toyama because it expressly assumed the Amended Lease in

22         the Sale Agreement and its Assignment, and because the Second

23         Amendment is avoided as a fraudulent transfer.

24   p.    Whether Capella is liable for Toyama's breach of the Amended Lease as a

25         successor to Toyama by operation of law because it acquired the Shopping

26         Center with actual and constructive knowledge of the Amended Lease.

27         i.    Whether, under the terms of the Amended Lease that required

28               Dollar Tree to vacate its store, Dollar Tree was required to stay in

the store in order to have privity of estate with respect to the
Shopping Center.

   2.  **Declaratory Judgment**

      a.  *See* the issues identified in the Breach of Contract section regarding the
enforceability of the Liquidated Damages Provision, cure, mitigation, and
Capella's sucessorship/assumption of the Amended Lease.

      b.  Whether enforcement of the Liquidated Damages Clause would be limited
to the maximum lease term envisioned by the Amended Lease, 17 years.

   3.  **Fraudulent Conveyance**

      a.  Whether Capella can avoid liability under the Amended Lease by
fraudulently amending the Sale Agreement after the fact.

      b.  Whether Dollar Tree had a "claim" under the UFTA against Capella and/or
Toyama, given that its claim in this litigation has not been reduced to
judgment.

      c.  Whether Dollar Tree had a "claim" under the UFTA, given Defendants'
defense based on the Judgments/Non-Recourse clause, Section U.1., and
given that Defendants' use of this clause is not yet ripe.

      d.  Whether the Shopping Center is an "asset" under the UFTA.

      e.  Whether the Amended Lease was an "asset" under the UFTA at the time of
its alleged transfer to Toyama under the Second Amendment.

      f.  Whether the Second Amendment is a "transfer" under the UFTA.

         i.  Whether the Second Amendment, while effective as part of the
February 16, 2011 closing, is a distinct transfer that it can be
avoided without altering the Sale Agreement or any other part of
the February 16, 2011, closing.

      g.  Whether the Second Amendment is fraudulent under the UFTA.

         i.  Whether the Second Amendment is fraudulent on its face because
its terms conceal its later drafting, execution, and backdating, and

because its terms reveal its sole intent to separate the Amended
Lease from the Shopping Center.

    ii.    Whether Dollar Tree has adduced sufficient evidence of "badges of
fraud" under the UFTA to permit an inference of fraudulent intent.

h.    Whether the Court can avoid the Second Amendment under the UFTA.

4.  **Breach of Fiduciary Duty**

a.    Whether Peter Pau, as managing member of an insolvent Toyama, owed
fiduciary duties to Dollar Tree as a creditor of Toyama under the trust fund
doctrine.

b.    Whether Pau breached his fiduciary duties to Dollar Tree by distributing
proceeds of the sale of the Shopping Center to himself and to the exclusion
of Dollar Tree, and thereby engaging in self-dealing.

c.    Whether Pau breached his fiduciary duties to Dollar Tree by distributing
proceeds of the sale of the Shopping Center to other unsecured creditors to
the exclusion of Dollar Tree, thereby preferring certain creditors over
Dollar Tree.

d.    Whether Pau breached his fiduciary duties as manager of Toyama and
Capella to Dollar Tree by selling the Shopping Center for less than market
value and in a manner purporting to leave the Amended Lease with an
asset-less Toyama, and thereby engaging in self-dealing.

e.    Whether Pau's conduct as manager of Toyama and Capella relating to the
sale of the Shopping Center is protected by the business judgment rule.

f.    Whether Dollar Tree was harmed by Pau's breach of fiduciary duty.

5.  **Unfair Competition**

a.    Whether Defendants' breach of the Amended Lease is unlawful,
fraudulent, and/or unfair under the California Unfair Competition Law.

b.    Whether Defendants' fraudulent conveyance is unlawful, fraudulent,
and/or unfair under the CUCL.

20

c.   Whether Pau's breach of fiduciary duty is unlawful, fraudulent, and/or unfair under the CUCL.

d.   Whether Dollar Tree can receive an injunction under the CUCL.

6. **Alter Ego**

a.   Whether Toyama, Peter Pau d/b/a Sand Hill Property; Peter Pau in his individual capacity and as partner of Sand Hill Property Management, Susanna Pau in her capacity as partner of Sand Hill Property Management and Sand Hill Property Management (collectively, "Pau Defendants") are *alter egos* of each other.

b.   Whether there is such a unity of interest and ownership between the Pau Defendants that their separate personalities do not in reality exist, and (b) it would be inequitable to treat the acts in question as those of Toyama alone.

**Defendants' Statement of Disputed Legal Issues**

1.   As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, does the LD Clause impose an illegal and unenforceable penalty as a matter of law?

2.   As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, does the liquidated damages amount represent the result of a reasonable endeavor by Dollar Tree and Toyama to estimate a fair average compensation for the range of loss that could have been anticipated to flow from a breach of the Amended Lease by Toyama at the time it was executed?

3.   As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, does the liquidated damages amount lack proportionality to the range of damages that may have been anticipated would flow from a breach of the Amended Lease by Toyama at the time it was executed?

4.   As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, does the Amended Lease limit the remedies available to Dollar Tree to liquidated damages or cancellation?

5.   As to Dollar Tree's First Claim for Breach of Contract and Second Claim for

21

Declaratory Relief, if the LD Clause imposes an illegal and unenforceable penalty, does the Amended Lease limit the remedies available to Dollar Tree to cancellation of the Amended Lease?

6.      As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, if the LD Clause does not impose an illegal and unenforceable penalty, is Dollar Tree entitled to default interest on the liquidated damages amount under the Amended Lease?

7.      As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, is Dollar Tree's claim barred by the Amended Lease's notice and cure provisions?

8.      As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, does the non-recourse provision of the ARL, section U.1., bar and render moot Dollar Tree's claim for breach of contract?

9.      As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, were any of the defendants, other than Toyama, a party to the Amended Lease?

10.      As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, has Dollar Tree met its burden of proof establishing that Capella, or any other defendant, expressly, impliedly, or by operation of law, assumed any or all of Toyama's obligations under the Amended Lease?

11.      As to Dollar Tree's First Claim for Breach of Contract and Second Claim for Declaratory Relief, did Capella acquire its interest in the Shopping Center subject to Dollar Tree's interest in the Shopping Center under the Amended Lease?

12.      As to Dollar Tree's Third Claim for Fraudulent Conveyance, is the Amended Lease – the same contract on which Dollar Tree commenced this action and on which it is seeking damages in excess of $15 million – an asset under the UFTA?

13.      As to Dollar Tree's Third Claim for Fraudulent Conveyance, was there a transfer of the Amended Lease under UFTA?

14.      As to Dollar Tree's Third Claim for Fraudulent Conveyance, was the Shopping

22

Center over-encumbered at the time of the transfer?

15.     As to Dollar Tree's Third Claim for Fraudulent Conveyance, can Dollar Tree present a claim under the UFTA even though Dollar Tree does not seek to avoid the transfer of the Shopping Center?

16.     As to Dollar Tree's Third Claim for Fraudulent Conveyance, is Comerica an indispensible party because Comerica dictated whether or not the short sale transaction occurred?

17.     As to Dollar Tree's Fourth Claim for Breach of Fiduciary Duty, did Pau owe Dollar Tree a fiduciary duty?

18.     As to Dollar Tree's Fourth Claim for Breach of Fiduciary Duty, if Pau owed Dollar Tree a fiduciary duty, did he breach that fiduciary duty?

19.     As to Dollar Tree's Fourth Claim for Breach of Fiduciary Duty, if Pau owed Dollar Tree a fiduciary duty and he breach that duty, was his breach malicious, wanton, or undertaken with reckless disregard so as to warrant the imposition of punitive damages?

20.     As to Dollar Tree's Fourth Claim for Breach of Fiduciary Duty, did Pau have a legal obligation not to prefer other creditors of Toyama over Dollar Tree?

21.     As to Dollar Tree's Fourth Claim for Breach of Fiduciary Duty, did Pau have an irreconcilable conflict of interest by executing the Second Amendment to Sale Agreement on behalf of Toyama and Capella, and, if there was a conflict, does Dollar Tree have standing to raise the conflict?

22.     As to Dollar Tree's Fifth Claim for Unfair Competition, did the defendants' actions constitute unlawful, unfair and fraudulent business acts pursuant to California's Unfair Competition Law (Bus. & Prof. Code §17200 et seq.).

23.     As to Dollar Tree's Fifth Claim for Unfair Competition, are the alleged unlawful, unfair and fraudulent business acts of the defendants the proximate cause of Dollar Tree's alleged injuries?

24.     As to Dollar Tree's Fifth Claim for Unfair Competition, did the defendants' actions constitute unlawful, unfair and fraudulent business practices pursuant to California's Unfair Competition Law (Bus. & Prof. Code §17200 et seq.).

25.     As to Dollar Tree's Fifth Claim for Unfair Competition, are the alleged unlawful,

unfair and fraudulent business practices of the defendants the proximate cause of Dollar Tree's alleged injuries?

26.     As to Dollar Tree's Fifth Claim for Unfair Competition, is Dollar Tree entitled to equitable relief directing the original premises to be restored or the replacement premises constructed so that Dollar Tree may reopen its store?

27.     As to all of Dollar Tree's claims, is there such a unity of interest between Toyama and the Pau, Susanna Pau, Sand Hill Property Company, and/or Sand Hill Property Management Company as to require the application of the alter ego doctrine?

28.     As to all of Dollar Tree's claims, was Toyama so undercapitalized at its formation, in spite of the $9.2 million invested by its members, that it could be considered a "sham" and to have been formed in bad faith?

29.     As to all of Dollar Tree's claims, would an inequitable result would occur if Toyama's veil is not pierced when it is undisputed that Toyama existed as an entity for eight years before Peter Pau became involved and operated for another three years thereafter before experiencing financial difficulties?

30.     As to all of Dollar Tree's claims, do any of Defendants' affirmative defenses bar such claims?

31.     As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), did Capella assume, expressly, impliedly, or by operation of law, any obligations under the Amended Lease?

32.     As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), if Capella did assume any obligations under the Amended Lease, is it liable for any breach and that occurred prior to it becoming the owner of the Shopping Center and any damages arising from said breach(es)?

33.     As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), did Capella take the Shopping Center subject to the Amended Lease, including Dollar Tree's rights under the Amended Lease?

34.     As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), is Capella liable to Dollar Tree for Toyama's obligations under the Amended Lease?

35.     As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), is Capella

liable to Dollar Tree for Toyama's alleged unfair competition?

36. As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), is Capella the alter ego of Toyama?

37. As to Capella's Counterclaim for Declaratory Relief (Doc. No. 204), is there privity of contract and/or privity of estate between Capella and Dollar Tree?

38. As to Pau's, Susanna Pau's and Sand Hill Property Management Company's Counterclaim for Declaratory Relief (Doc. No. 206), are counterclaimants liable to Dollar Tree for Toyama's obligations under the Amended Lease?

39. As to Pau's, Susanna Pau's and Sand Hill Property Management Company's Counterclaim for Declaratory Relief (Doc. No. 206), are counterclaimants liable to Dollar Tree for Toyama's alleged unfair competition?

40. As to Pau's, Susanna Pau's and Sand Hill Property Management Company's Counterclaim for Declaratory Relief (Doc. No. 206), are counterclaimants the alter egos of Toyama?

41. As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), did the Amended Lease prohibit Toyama from selling the Shopping Center?

42. As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), did the sale of the Shopping Center by Toyama constitute a breach of the Amended Lease?

43. As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), is a purchaser of the Shopping Center automatically bound by the terms of the Amended Lease?

44. As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), is a purchaser of the Shopping Center only liable under the Amended Lease if it assumes those obligations?

45. As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), is a purchaser of the Shopping Center obligated by law or contract to assume the terms of the Amended Lease?

JOINT PRETRIAL CONFERENCE STATEMENT                    CASE NO: CV-10-0325 SI

46.     As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), is the liquidated damages provision in the Amended Lease unenforceable because it constitutes an unenforceable penalty under California Civil Code section 1671?

47.     As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), does the Amended Lease limit Dollar Tree's available remedies for landlord's failure to satisfy the delivery conditions to liquidated damages or cancellation, and, if so, is the limitation enforceable against Dollar Tree?

48.     As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), is Capella the successor-in-interest to Toyama under the Amended Lease?

49.     As to the First Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), if Capella the successor-in-interest to Toyama under the Amended Lease, is it liable for any damages to Dollar Tree?

50.     As to the Second Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), did counterclaimants owe a fiduciary duty to Dollar Tree and, if so, did counterclaimants owe a fiduciary duty to Dollar Tree at the time the Shopping Center was sold to Capella?

51.     As to the Second Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), if counterclaimants owed a fiduciary duty to Dollar Tree, are counterclaimants liable for any damages to Dollar Tree?

52.     As to the Third Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), were any or all of the counterclaimants obligated to transfer the Amended Lease to Capella as part of the sale of the Shopping Center to Capella and, if so, was Capella obligated to assume any obligations under the Amended Lease?

**53.**     As to the Third Claim for Declaratory Relief in Toyama's, Capella's and Pau's Counterclaim (Doc. No. 288), if the counterclaimants were obligated to transfer the Amended Lease to Capella as part of the sale of the Shopping Center to Capella and Capella was obligated to assume any obligations under the Amended Lease, are counterclaimants liable for any

26

1  damages to Dollar Tree?

2        **B.**      **Proposed Conclusions of Law.**

3        Pursuant to the parties' Stipulation Regarding Jury Trial Issues, Proposed Jury

4  Instructions, and Proposed Findings of Fact and Conclusions of Law, as approved by the Court

5  (Doc. No. 475), proposed findings of fact and conclusions of law may be submitted within seven

6  (7) days after the Court rules on the parties' positions regarding the scope of claims to be tried to

7  the jury.

8  **IV.**     **TRIAL PREPARATION**

9        **A.**      **Witnesses to be called.**

10             **1.**      **Dollar Tree's Fact Witnesses:**

11        Plaintiff Dollar Tree expressly reserves the right to (i) supplement this list prior to trial;

12  (ii) call additional witnesses in rebuttal; and (ii) call all witnesses included on Defendants'

13  witness list. Dollar Tree's fact witnesses are identified at Exhibit 1 hereto.

14             **2.**      **Dollar Tree's Expert Witnesses:**

15        Dollar Tree's expert witnesses are identified at Exhibit 2 hereto.

16             **3.**      **Defendants' Fact Witnesses:**

17        Defendants expressly reserves the right to (i) supplement this list prior to trial; (ii) call

18  additional witnesses in rebuttal; and (ii) call all witnesses included on Dollar Tree's witness list.

19  Defendants' fact witnesses are identified at Exhibit 5 hereto.

20             **4.**      **Defendants' Expert Witnesses:**

21        Defendants' expert witnesses are identified at Exhibit 6 hereto.

22        **B.**      **Exhibits, Schedules and Summaries.**

23             **1.**      **Plaintiff's Exhibits:**

24        An index of Plaintiff's Exhibits 1 through 600 is attached hereto as Exhibit 4.

25             **2.**      **Defendants' Exhibits:**

26        An index of Defendants' Exhibits is attached hereto as Exhibit 7.

27        **C.**      **Estimate of Trial Time.**

28        The parties estimate that 16 to 20 trial days (four to five calendar weeks) will be required

27

1   for trial.

2        **D.**     **Use of Discovery Responses.**

3             **1.**     **<u>Dollar Tree's Use of Discovery Responses.</u>**

4                  a.     Toyama's response to plaintiff DT's Third Request for Production

5   of Documents, Request Nos. 5, 6, 7, 8, 12, 13 dated April 21, 2011.

6                  b.     Peter Pau dba Sand Hill Property Company and as partner of sand

7   hill property management company's response to DT's first request for production of documents,

8   Request Nos. 5, 6, 7, 8, 12, 13 dated April 21, 2011.

9                  c.     Toyama partner's response to DT's first request for admissions,

10  Nos.3, 6, 7 (September 21, 2011)

11                 d.     Toyama partner's supplemental response to DT's first request for

12  admissions, Nos.8, 9, 10, 11 (November 29, 2011)

13                 e.     Capella's Mowry's response to DT's first request for admissions,

14  Nos.3, 6, 7 (September 21, 2011)

15                 f.     Capella Mowry's supplemental response to DT's first request for

16  admissions, Nos.8, 9, 10, 11 (February 21, 2012)

17                 g.     Corporate designee designation for Peter Pau,  Pau 30(b)(6) pages,

18  lines:   12, lines 9-11; 84, lines 15-18, 21-23; 141, lines 4-11, 190, lines 12-25 to 191, lines 1-5;

19  233, lines 21-25 to 234, lines 1-25 to 235, lines 1-24; 250, lines 15-25 to 251, lines 1-6, 262, lines

20  17-24; 459, lines 12-17 and 462, lines 14-25 to 463, lines 1-6; 473, lines 19-25 to 474, lines 1-8;

21  504, lines 19-24; 507, lines 8-12, 526, lines 7-15; 561, lines 1-4, 23-25 to 562, lines 1-4; 569,

22  lines 20-24, 583, lines 17-25; 591, lines 21-25 to 592, lines 1-3, 615, lines 6-25, 619, lines 23-25

23  to 620, lines 1-18, 625, lines 3-8, 653, lines 12-16, 662, lines 2-7, 666, lines 16-20, 668, lines 5-

24  24, 673, lines 12-23, 674, lines 19-25 to 675, lines 1-25 to 676, lines 1-9, 679, lines 19-21, 23-25,

25  681, lines 10-11, 15-16, 22-25 to 682,lines 1-3, 16-18, 690, lines 13-18, 21-25, 696, lines 16-25

26  to 697, lines 1-13, 716, lines 11-15, 723, lines 1-8, 14-19, 772, lines 13-16, 773, lines 22-25 to

27  774, lines 1-21, 778, lines 18-25 to 779, lines 1-9, 782. lines 9-25 to 783, ones 1-4,

28                 h.     Pau Individual deposition designations, Pau Individual pages, lines:

5, lines 10-16. 5, lines  21-25 to 6, lines 1-25, to 7, lines 1-19, 9, lines 1-13, 18-25 to 10, lines 1-16, 25, to 11, lines 1-25 to 12, lines, 1-3, 13, lines 13-25 to 14, lines 1-12, 17, lines 23-25 to 18, lines 1-7, 40, lines 16-25 to 41, line 1, 43, lines 4-9, 57, lines 15-25 to 58, lines 1-24, 72, lines 20-25 to 73, lines 1-9, 104, lines 7-25 to 105, lines 1, 9-17, 106, ones 3-17, 110, lines 5-25 to 111, lines 1-8, 121, lines 9-21, 118, lines 18-25 to 119, lines 1-3, 153, lines 1-10 to 154, lines 14-21, 157, lines 20-25 to 158, lines 1-14, 18-25 to 159, lines 1-5, 159, lines 17-22, 167, lines 15-25 to 178, lines 1-25 to 169, lines 1-25 to 170, lines 1, 12-24, 191, lines 18-25 to 192, lines 1-4, 193, lines 5-13, 205, lines 7-13, 220, lines 21-25 to 221, lines 1-25 to 222, lines 1-7, 238, lines 15-19, 240, lines 14-25 to 241, lines 1-4, 246, lines 14-18,  276, lines 13-15, 18-19, 294, lines 17-25 to 295, lines 1-5, 304, lines 21-25 to 305, lines 1-2, 325, lines 24-25 to 326, lines 1-3, 6-9, 336, lines 14-19, 338, lines 1-8, 12-17, 341, line 25 to 342, lines 1-4, 11-15, 19-25 to 343, lines 1-18, 352, lines 6-14, 365, lines 3-6, 9-15, 17-25 to 367, lines 1-9, 377, lines 24-25 to 378, lines 1-2, 384, lines 18-24 to 385, lines 1-4, 397, lines 13-25 to 398, line 1,405, lines 4-11, 17-25, 407, lines 19-22, 25 to 408, lines 1-25 to 409, lines 3-4, 430, lines 11-15, 22-25 to 431, lines 1-17, 20-25, to 432, lines 1-8, 434, lines 11-15, 446, lines 14-17, 20-25 to 447, lines 1, 3, 448, line 24-25 to 449, lines 1-8, 455, lines 23-25 to 456, lines 1-4.

          i.    Corporate designee designation for Rochelle Lopez, Lopez 30(b)(6) pages, lines:  Page 276, lines 12-13, 283, lines 13-16, 290, lines 24-25 to 291, lines 1-2, 6-9, 308, line 25 to 409, lines 1-6, 21-24, 301, lines 9-19, 21-24, 311, lines 18-23, 337, lines 20-25 to 338, line 1, 14-19, 25 to 339, lines 1-3, 9-13, 357, lines 1-3, 23-25 to 358, 1-3, 9-12, 17, 18, 383, lines 23-25 to 384, lines 1-7, 10-18, 386, lines 2-7, 387, lines 1-8, 390, lines 21-25 to 391, lines 1-24, 402, lines 23-25 to 403, lines 1-10, 439, lines 20-23

          j.    Rochelle Lopez Individual deposition designations:  Page 12, lines 23-24 to 13, line 1, 18, lines 11-23, 101, lines 4-6, 10, 19-21, 103, lines 15-21, 111, lines 9-18, 20-22, 114, 14-21, 141, lines 12-16, 142, lines 3-5, 7-8, 19-22, 24-25 to 143, lines 1-8, 11, 145, lines 3-6, 9, 146, lines 7-21, 24, 147, lines 1-6, 147, lines 10-25 to 148, lines 1-10, 152, lines 4-17, 21-25 to 153, lines 1-3, 155, lines 18-25 to 156, lines 1-9, 13-18, 156, lines 22-25 to 157, lines 1-13, 17-22, 158, lines 1-8, 159, lines 18-21, 160, lines 8-13, 17-21, 161, lines 5-16, 162,

JOINT PRETRIAL CONFERENCE STATEMENT        CASE NO:  CV-10-0325 SI

1 | lines 7-12, 16-19, 21, 25 to 163, lines 1-16, 20-25, 164, lines 4-15, 165, lines 2-11, 166, lines 2-3,

2 | 6, 189, lines 1-8, 192, lines 6-9, 11-12, 206, lines 4-15

3 |                       k.        Lisa Roberts:  Page 6, lines 1-4, 7-10, 8, lines 22-25 to 9, 1-25 to

4 | 10, line 1, 15-25 to 11, lines 1-3,   14, lines 1-25 to 15, lines 1-21, 18, lines 15-25 to 19, lines 1-

5 | 10, 24-25 to 20, lines 1-10, 24-25 to 21, lines 1-6, 16-25 to 22, lines 1-10, 25, line 25 to 26, line

6 | 1, 8-13, 25 to 27, lines 1-3, 25,   28, line 1-6, 29, line 18-22, 30, lines 3-13, 30, lines 22-25 to 31,

7 | lines 1-18, 33, lines 13-25 to 34, lines 1-21, 38, lines 16-25 to 39, lines 1-2, 42, lines 17-22, 43,

8 | lines 1-13,  49, lines 2-25 to 50, lines 1-7, 51, lines 6-12, 52, lines 8-12, 53, lines 6-11, 14-18, 21-

9 | 25 to 54, lines 1-12, 58, 15-25 to 59, lines 1-10, 60, lines 19-21, 24-25 to 61, lines 1-10,13, 64,

10 | lines 14-24, 65, lines 21-25 to 66, lines 1-3, 87, lines 1-5, 91, lines 2-20, 92, lines 7-9, 98, lines

11 | 22-24, 99, lines 2-6, 101, lines 21-25 to 102, 1-10, 12-16, 112, lines 21-25 to 113, lines 1-8, 115,

12 | lines 13-16, 117 17-25, 118, lines 11-24, 130, lines 1-7, 19-24, 150, lines 6-10, 24-25, 151, 1-16,

13 | 23-25 to 152, line 1, 156, line 9-14, 157, lines 14-20, 158, lines 14-18, 162, lines-25 to 163, 1-8,

14 | 166, lines 9-13, 167, lines 2-16, 172, lines 13-25 to 173, lines 1-14, 17-25, to 174, line 1, 175,

15 | line 25 to 176, lines 1-15, 180, lines 6-14, 181, lines 7-17, 183, lines 9-16, 184, lines 2-11, 18-22,

16 | 187, lines 8-15, 189, lines 8-25 to 190, lines 1-12, 191, line 25, 192, lines 1-5, 194, lines 20-25,

17 | 195, line 1, 17-21, 24-25, 196, lines 1-7, 197, lines 20-25, 198, lines 6-25, 199, lines 1-5, 200,

18 | lines 22-25, 201, lines 1-5, 18-25, 202, 1-5, 16-25, 203, lines 1-11, 205, lines 15-25, 206, lines 1-

19 | 4,  217, lines 2-8, 11-22, 223, lines 11-24, 226, lines 21-25, 227, lines 1-5, 19-25, 228, lines 1-25,

20 | 229, lines 1-4, 232, lines 3-7, 24-25, 233, lines 1-18, 234, lines 19-25, 235, lines 1-3, 246, lines 1-

21 | 23, 248, lines 8-12, 20-25, 249, lines 1-3, 250, lines 23-25, 251, 1-3, 252, lines 1-12, 16-25.

22 |                       l.        Milburn Matthews, September 12, 2011 deposition designations:

23 | Page 18, lines 14-25, p. 19, lines 1-8; p. 22, lines 23-25; p. 23, lines 1-25; p. 24, lines 1, 15-19; p.

24 | 25, lines 18-22; p. 26, lines 8-12; p. 36, lines 17-25; p. 37, line 1; p. 39, lines 24-25; p. 40, line 1;

25 | p. 58, lines 6-15, 21-25; p. 59, lines 1-11; p. 61, lines 16-21; p. 62, lines 6-9; p. 67, lines 14-20; p.

26 | 68, lines 3-4, 16-22; p. 72, lines 4-15; p. 74, lines 5-8, 21-25; p. 75, lines 1-11; p. 79, lines 17-25;

27 | p. 80, line 1; p. 88, lines 23-25; p. 89, lines 1-12; p. 95, lines 14-20; p. 103, lines 9-15; p. 113,

28 | lines 15-20; p. 117, lines 1-7, 17-25; p. 118, lines 1-9; p. 156, lines 21-24; p. 158, lines 6-18; p.

1    159, lines 18-25; p. 159, lines 1-3; p. 168, lines 11-14, 19-21; p. 169, lines 16-19, 21-25; p. 170,

2    lines 9-11, 14-15; p. 174, lines 20-23; p. 176, lines 20-25; p. 177, lines 1-9; p. 183, lines 7-17.

3                    m.     Milburn Matthew, February 1, 2012 deposition designations:  Page

4    12, lines 8-14; p. 13, lines 7-10; p. 15, lines 23-25; p. 35, lines 18-25; p. 36, lines 1-25; p. 37,

5    lines 1-2; p. 46, lines 2-22; p. 55, lines 4-25; p. 56, lines 1-3; p. 58, lines 14-25; p. 59, lines 1-13;

6    p. 63, lines 18-22; p. 68, lines 14-22; p. 70, lines 10-23; p. 71, lines 3-7, 10-16, 18-25; p. 72, lines

7    1-14; p. 76, lines 16-25; p. 77, lines 1-7; p. 80, lines 15-22; p. 89, line 25; p. 90, lines 1-6, 13-24;

8    p. 93, lines 11-19; p. 103, lines 18-25; p. 104, lines 1-14; p. 105, lines 23-25; p. 106, lines 1-3; p.

9    108, lines 3-20, 23-25; p. 109, lines 3-25; p. 110, lines 1-7, 10-16; p. 111, lines 2-6, 9, 12-25; p.

10   112, lines 1-3, 20-25; p. 113, lines 1-2; p. 115, lines 9-17; p. 117, lines 10-25; p. 119, lines 11-25;

11   p. 120, lines 1-11; p. 121, lines 6-19; p. 123, lines 14-25; p. 124, lines 1-12; p. 125, lines 12-14,

12   16, 23-25; p. 126, lines 1-25; p. 127, lines 1, 15-25; p. 128, lines 1-2, 17-25; p. 129, line 1; p.

13   130, lines 8-25; p. 132, lines 22-25; p. 133, lines 1-6, 13-25; p. 134, lines 1-25; p. 135, lines 1-4;

14   p. 144, lines 12-25; p. 156, lines 1-15; p. 166, lines 13-16, 20-25; p. 167, lines 1-16; p. 169, lines

15   15-25; p. 170, lines 1-16; p. 172, lines 23-25; p. 173, line 1; p. 183, lines 23-25; p. 184, lines 1-

16   23; p. 186, lines 20-25; p. 187, lines 1-22; p. 189, lines 14-25; p. 190, lines 1-2; p. 195, lines 19-

17   25; p. 196, lines 1-17; p. 197, lines 2-6; p. 199, line 1; p. 200, lines 1-13; p. 210, lines 23-25; p.

18   211, lines 1-6, 8-25; p. 212, lines 1-8; p. 218, lines 15-21; p. 221, lines 8-12; p. 227, lines 4-25; p.

19   228, lines 1-14; p. 239, lines 21-25; p. 240, lines 1-22; p. 258, lines 22-25; p. 259, lines 1-10; p.

20   260, lines 5-15.

21              **2.     Defendants' Use of Discovery Responses.**

22                    **a.     Objection to Dollar Tree's Designations**

23       Defendants object to inclusion of the foregoing responses in this Statement and to

24   presentation of any of the foregoing other than solely for impeachment or rebuttal.  Section

25   1(a)(4)(D) of the Pretrial Instructions instructs the parties to cite possible presentation of

26   discovery responses and deposition transcripts "other than solely for impeachment or rebuttal,"

27   yet Dollar Tree has not established or articulated any purpose for which it would present the

28   foregoing other than for impeachment or rebuttal, and, even if admissible for impeachment or

31

1   rebuttal, the foregoing would not be admissible for any other purpose.  Dollar Tree asserts that

2   the foregoing constitute "admissions," but they do not constitute admissions (particularly the

3   testimony of non-designees) and still would not be admissible other than for impeachment or

4   rebuttal.

5                      **b.      Defendants' Designations.**

6          Defendants are not aware of any witnesses who were deposed in this action who will be

7   unavailable for trial.  It will amend this designation should it learn of any such witness.

8          **E.      Further Discovery or Motions.**

9                 **1.      Dollar Tree's Motions in Limine.**

10                      a.      Motion in Limine to Exclude Evidence of Peter Pau's and Susanna

11  Pau's Religious Beliefs.

12                      b.      Motion in Limine to Exclude Argument Regarding Comerica's

13  Decision to Proceed with Short Sale Transaction.

14                      c.      Motion in Limine to Exclude Evidence that Comerica Bank

15  Concluded that Toyama is Adequately Capitalized, Creditworthy, and Properly Formed as a

16  Legal Entity.

17                      d.      Motion in Limine to Restrict Evidence Regarding Settlement

18  Negotiations and Mitigation of Damages.

19                      e.      Motion in Limine to Exclude Argument that Dollar Tree Claims to

20  Be a Third Party Beneficiary of the Sale Agreement.

21                      f.      Motion in Limine to Exclude the Testimony and Report of

22  Defendants' Expert Witness Dale N. Gillespie Regarding Real Estate Industry Practices.

23                      g.      Motion in Limine to Exclude Evidence that the Parties Referred to

24  the Late Fee as a "Penalty."

25                      h.      Motion in Limine to Exclude the Testimony and Report of

26  Defendants' Expert Witness E. Keith Brown Regarding Defendants' Accounting Procedures.

27                      i.      Motion in Limine to Exclude Argument that it is Significant that

28  the Assignment Attached to the Sale Agreement Was Not Signed.

1          j.      Motion in Limine to Exclude Argument that Undercapitalization

2   Must be Analyzed at Time of Incorporation.

3          **2.      Defendants' Motions in Limine.**

4          a.      Defendants' And Counterclaimants' Motion In Limine No. 1 To

5   Exclude All Evidence Or References To Any Papers, Findings, And/Or Orders Issued In

6   Connection With Plaintiff's Motion To Compel Production of Withheld Documents Under The

7   Crime Fraud Exception; And Declaration of Peter M. Rehon And Memorandum Of Points And

8   Authorities In Support Thereof.

9          b.      Defendants' And Counterclaimants' Motion In Limine No. 2 To

10  Exclude All Evidence Of, Or References To, Any Discovery Disputes; And Declaration of Peter

11  M. Rehon And Memorandum of Points And Authorities In Support Thereof.

12         c.      Defendants' And Counterclaimants' Motion In Limine No. 3 To

13  Exclude Any References To The Court's Rulings On: (i) Defendants' Motion to Dismiss Under

14  Rule 12(b)(6); (ii) Dollar Tree's Motion for Leave to File Second Amended Complaint; or (iii)

15  Dollar Tree's Motion to Consolidate; And Declaration of Peter M. Rehon; And Memorandum of

16  Points and Authorities In Support Thereof.

17         d.      Defendants' And Counterclaimants' Motion In Limine No. 4 To

18  Exclude All Evidence Relating To Alleged Breach of Original Lease; And Memorandum of

19  Points And Memorandum of Points and Authorities In Support Thereof.

20         e.      Defendants' And Counterclaimants' Motion In Limine No. 5 To

21  Exclude Parol Evidence To Vary, Alter, or Supplement Terms of Amended Lease; And

22  Memorandum of Points and Authorities In Support Thereof.

23         f.      Defendants' And Counterclaimants' Motion In Limine No. 6 To

24  Exclude Parol Evidence To Vary, Alter, Supplement, Or Explain Terms Of Sale Agreement; And

25  Memorandum of Points and Authorities In Support Thereof.

26         g.      Defendants' And Counterclaimants' Motion In Limine No. 7 To

27  Exclude Evidence of A Unity Of Interest Between Some Defendants As Showing A Unity Of

28  Interest With Toyama Partners; And Memorandum of Points and Authorities In Support Thereof.

33

1            h.     Defendants' And Counterclaimants' Motion In Limine No. 8 To

2     Exclude Evidence That Capella Is The Alter Ego Of Toyama Or Any Other Defendant Or Insider

3     of Toyama; And Memorandum of Points and Authorities In Support Thereof.

4            i.     Defendants' And Counterclaimants' Motion In Limine No. 9 To

5     Exclude Beneficiary, Reliance, Or Assumption Evidence As To Sale Agreement; And

6     Memorandum of Points and Authorities In Support Thereof.

7            j.     Defendants' And Counterclaimants' Motion In Limine No. 10 To

8     Exclude Evidence That Capella Is Liable To Dollar Tree Under Privity Of Estate Or Operation

9     Of Law; And Memorandum of Points and Authorities In Support Thereof.

10           k.     Defendants' And Counterclaimants' Motion In Limine No. 11 To

11    Exclude Evidence That The Amended And Restated Lease Is An Asset Under UFTA; And

12    Memorandum of Points and Authorities In Support Thereof.

13           l.     Defendants' And Counterclaimants' Motion In Limine No. 12 To

14    Exclude Of Preferential Payments To Show Fraudulent Transfer.

15           m.     Defendants' And Counterclaimants' Motion In Limine No. 13 To

16    Exclude Evidence That Defendants Made A Transfer To An Insider Under UFTA; And

17    Memorandum of Points and Authorities In Support Thereof.

18           n.     Defendants' And Counterclaimants' Motion In Limine No. 14 To

19    Exclude Evidence That Debtor Retained Possession Under UFTA; And Memorandum of Points

20    and Authorities In Support Thereof.

21           o.     Defendants' And Counterclaimants' Motion In Limine No. 15 To

22    Exclude Evidence That The Transfer Was not Disclosed Or Was Concealed Under UFTA; And

23    Memorandum of Points and Authorities In Support Thereof.

24           p.     Defendants' And Counterclaimants' Motion In Limine No. 16 To

25    Exclude Evidence That Defendants Absconded With Any Funds Under UFTA; And

26    Memorandum of Points and Authorities In Support Thereof.

27

28

34

1    q.    Defendants' And Counterclaimants' Motion In Limine No. 17 To

2    Exclude Evidence That Defendants Removed Or Concealed Assets Under UFTA; And

3    Memorandum of Points and Authorities In Support Thereof.

4    r.    Defendants' And Counterclaimants' Motion In Limine No. 18 To

5    Exclude Evidence Of no Reasonably Equivalent Value For Sale Of Center; And Memorandum of

6    Points and Authorities In Support Thereof.

7    s.    Defendants' And Counterclaimants' Motion In Limine No. 19 To

8    Exclude Testimony Of Plaintiff's Expert Witness Michael Wagner; Memorandum of Points And

9    Authorities; And Declaration In Support Thereof.

10    t.    Defendants' And Counterclaimants' Motion In Limine No. 20 To

11    Exclude Evidence Of Defendants' Settlement Offers To Show Liability; And Memorandum of

12    Points and Authorities In Support Thereof.

13    u.    Defendants' And Counterclaimants' Motion In Limine No. 21 To

14    Exclude Evidence Of Defendants' Financial Condition; And Memorandum of Points and

15    Authorities In Support Thereof.

16    v.    Defendants' And Counterclaimants' Motion In Limine No. 22 To

17    Prohibit Use Of Pejorative Or Prejudicial Terms Or Phrases; Memorandum Of Points And

18    Authorities; And Declaration In Support Thereof.

19    w.    Defendants' And Counterclaimants' Motion In Limine No. 23 To

20    Prohibit Misleading References To The Defendants In The Collective; Memorandum Of Points

21    And Authorities; And Declaration In Support Thereof.

22    x.    Defendants' And Counterclaimants' Motion In Limine No. 24 To

23    Exclude Evidence Of Actual Damages And Limit Evidence Pertaining To The Reasonableness

24    Of Liquidated Damages To Those Circumstances in Existence At The Time The Amended Lease

25    Was Made; Memorandum of Points And Authorities; And Declaration Of Peter M. Rehon In

26    Support Thereof.

27

28

1    y.    Defendants' And Counterclaimants' Motion In Limine No. 25 To

2  Exclude Evidence of Default Interest on Liquidated Damages; And Memorandum of Points and

3  Authorities In Support Thereof.

4    z.    Defendants' And Counterclaimants' Motion In Limine No. 26 To

5  Exclude Trial Counsel As Witness; And Memorandum of Points and Authorities In Support

6  Thereof.

7    aa.    Defendants' And Counterclaimants' Motion In Limine No. 27 To

8  Exclude Evidence For Reformation Of Amended Lease; And Memorandum of Points and

9  Authorities In Support Thereof.

10    bb.    Defendants' And Counterclaimants' Motion In Limine No. 28 To

11  Exclude Evidence For Enterprise Theory of Piercing The Corporate Veil; And Memorandum of

12  Points and Authorities In Support Thereof.

13    cc.    Defendants' And Counterclaimants' Motion In Limine No. 29 To

14  Exclude Non-Disclosed Witnesses; And Memorandum of Points and Authorities In Support

15  Thereof.

16    **3.    Scope of Issues to the Tried to the Jury.**

17  Pursuant to the parties' Stipulation Regarding Jury Trial Issues, Proposed Jury

18  Instructions, and Proposed Findings of Fact and Conclusions of Law, as approved by the Court

19  (Doc. No. 475), on or before March 27, 2012, the parties will file memoranda of points and

20  authorities regarding the scope of claims for which a jury trial is available and will present

21  argument on those memoranda at the pretrial conference on April 3, 2012.

22    **4.    Courtroom Technology.**

23  The parties respectfully request that the Court make a time available in advance of trial

24  for the parties to familiarize themselves with the courtroom's trial presentation technology and

25  test the compatibility of that technology with their equipment.

26    **5.    Jury Instructions.**

27  Pursuant to the parties' Stipulation Regarding Jury Trial Issues, Proposed Jury

28  Instructions, and Proposed Findings of Fact and Conclusions of Law, as approved by the Court

36

1   (Doc. No. 475), proposed jury instructions may be submitted within seven (7) days after the

2   Court rules on the parties' positions regarding the scope of claims to be tried to the jury.

3   **IV.**     **TRIAL ALTERNATIVES AND OPTIONS**

4         **A.**     **Settlement Discussions.**

5         A full-day mediation was held on April 27, 2011 before Howard A. Herman.  The

6   mediation failed to resolve the case.

7         **B.**     **Consent to Trial Before a Magistrate Judge.**

8         The parties do not consent to trial before a Magistrate Judge.

9         **C.**     **Amendments, Dismissals.**

10         The parties do not request any amendments or dismissals at this time.

11         **D.**     **Bifurcation, Separate Trial of Issues.**

12         Defendants believe that bifurcation or a separate trial of specific issues is feasible and

13   desirable and will present to the Court and counsel their proposal/motion.  Dollar Tree contends

14   that bifurcation is not proper.

15

16   Dated:  March 20, 2012

17                         Respectfully submitted,

18                         FOX ROTHSCHILD LLP

19                         /s/ Jay D. Marinstein_____

20                         JAY D. MARINSTEIN
                        Attorney for Plaintiff

21                         DOLLAR TREE STORES, INC.

22

23                         REHON & ROBERTS

24                         /s/ Peter S. Rehon_____
                        PETER S. REHON

25                         Attorney for Defendants

26                         TOYAMA PARTNERS, LLC, PETER PAU
                        individually and d/b/a SAND HILL PROPERTY

27                         COMPANY, SUSANNA PAU, SAND HILL
                        PROPERTY MANAGEMENT COMPANY and

28                         CAPELLA-MOWRY, LLC COMPANY