# EXHIBIT 2

**PLAINTIFF DOLLAR TREE STORES, INC.'S EXPERT WITNESSES**

| Witness | Substance of Testimony |
|---|---|
| Walter Ricci | <u>Testimony to be Given</u>:<br><br>Walter Ricci of Hamilton, Ricci & Associates, Inc. will give expert testify regarding the market value of the Mowry-Crossing Shopping Center ("Shopping Center") as of February 16, 2011, the date it was sold by Toyama Partners, LLC to Capella-Mowry LLC. Mr. Ricci may also testify in rebuttal to Defendants' expert Gene Williams.<br><br><u>Theories and Conclusions and the Basis Therefor</u>:<br><br>Mr. Ricci concluded that the "as is" market value of the Shopping Center as a whole is $28,650,000. Mr. Ricci reached this conclusion after examining each section of the Shopping Center, each of the Shopping Center's leases, a number of comparable commercial properties and commercial leases, capitalization rates in the subject market, and other relevant information detailed in his report. Mr. Ricci separately calculated the market value of each section of the Shopping Center under both the Sales Comparison Approach and the Income Approach. Mr. Ricci then considered together the market values of the various sections of the Shopping Center under both the Sales Comparison and Income approaches in reaching his final conclusion as to the Shopping Center's market value.<br><br><u>Curriculum Vitae</u>: Found at the end of his expert report.<br><br><u>Service of Expert Report on Opposing Counsel</u>: Previously completed. |

| Witness | Substance of Testimony |
|---|---|
| Gary Tenzer | <u>Testimony to be Given</u>:<br><br>Gary Tenzer of George Smith Partners, Inc. will give expert testimony regarding the capitalization of Toyama Partners, LLC regarding its ownership of the Mowry-Crossing Shopping Center ("Shopping Cente r").  Mr. Tenzer may also testify in rebuttal to Defendants' expert Keith Brown.<br><br><u>Theories and Conclusions and the Basis Therefor</u>:<br><br>Mr. Tenzer concluded that the adequacy of Toyama's capitalization should be measured from its acquisition of the Shopping Center on November 16, 2005, through its sale of the Shopping Center on February 16, 2011.  Mr. Tenzer also concluded that throughout this period, Toyama was undercapitalized for he purpose of owning and operating the Shopping Center.  Mr. Tenzer reached his conclusion regarding the proper time period to evaluate after considering the fundamental change that purchase and sale of the Shopping Center represented to Toyama, a single-asset entity, and after examining other relevant information detailed in his report.  Mr. Tenzer reached his conclusion regarding Toyama's undercapitalization after examining the source of the funds used to purchase of the Shopping Center, Toyama's need to renovate the Shopping Center at considerable cost, the terms of the loans used to fund the renovations, Comerica Bank's aggressive decision to violate its lending policies in granting the renovation loans, Peter Pau's use of personal guarantees to secure renovation loans, Pau's use of personal funds to support Toyama's operation, and other relevant information detailed in his report.<br><br><u>Curriculum Vitae</u>:  Found at the end of his expert report.<br><br><u>Service of Expert Report on Opposing Counsel</u>:  Previously completed. |

| Witness | Substance of Testimony |
|---|---|
| Michael Wagner | <u>Testimony to be Given</u>:<br><br>Michael Wagner, Managing Director of LitiNomics, will give expert testimony regarding the indicia of alter ego liability as they relate to Toyama Partners, LLC ("Toyama"); Peter Pau d/b/a Sand Hill Property Company; Peter Pau ("Pau"), in his individual capacity as partner of Sand Hill Property Management Company; Susanna Pau, in her capacity as partner of Sand Hill Property Management Company; and Sand Hill Property Management Company (collectively referred to as the "Pau Defendants"). Mr. Wagner will also testify regarding damages suffered by Dollar Tree as a result of Pau Defendants' and Capella-Mowry, LLC's breach of contract. Mr. Wagner will testify regarding the reasonableness of the liquidated damages provision contained in Dollar Tree's Amended and Restated Lease. Mr. Wagner will testify as to (i) Dollar Tree's damages under the liquidated damages provision contained in Dollar Tree's Amended and Restated Lease; and (ii) Dollar Tree's actual damages under a lost profit analysis. Mr. Wagner may also testify in rebuttal to Defendants' experts Dale Gillespie and Patrick Kennedy.<br><br><u>Theories and Conclusions and the Basis Therefor</u>:<br><br>Mr. Wagner concluded that the Pau Defendants are alter egos of each other because (i) Toyama was undercapitalized and depended financially on Peter Pau and Sand Hill Property Company; (ii) the Pau Defendants were not operated as separate entities, have acted as a single enterprise, and third parties dealing with them were often confused regarding with whom they were dealing; and (iii) Peter Pau dominated and controlled each of the entities and commingled assets. Mr. Wagner also concluded that the liquidated damages provision in the Amended and Restated Lease of $2,500 per day was reasonable. Mr. Wagner concluded that the total liquidated damages during the 17-year lease period are $15,522,500, and the present value of the liquidated damages at the estimated judgment date of February 1, 2012 is $10,539,395, including interest of $387,057. Mr. Wagner further concluded that Dollar Tree's lost profits resulting from the Defendants' breach of the Amended and Restated Lease Agreement are $16,873,558, and the present value of lost profits at the estimated judgment date of February 1, 2012 is $10,318,140, including interest of $280,280. Mr. Wagner reached his conclusion regarding the alter ego relationships of the Pau Defendants after examining Toyama's reliance on funds provided by Peter Pau and Sand Hill Property, Toyama's inability to pay its debts as they became due, Toyama's insufficient capital, the personal guaranties provided by Pau to Comerica Bank in connection with Toyama's loans, the special treatment given to Toyama by Sand Hill Property Company and Sand Hill Property Management Company, the lack of separateness and confusion about corporate identity, the identical office resources of Toyama, Sand Hill Property Company and Sand Hill Property Management Company, Pau's domination and control of the Pau Defendants, and other relevant information detailed in his report. Mr. Wagner reached his conclusion regarding the reasonableness of the liquidated damages provision by |

|  | considering Dollar Tree's estimated profits during the entire 17-year lease period, as well as other damages that Dollar Tree has incurred and might reasonably expect to incur in the future as a result of the breach of the Amended and Restated Lease, including harm to its goodwill and disruption to its business operations.  Mr. Wagner reached his conclusion regarding the total liquidated damages by taking $2,500 per day and multiplying by the total number of days liquidated damages are available under the Amended and Restated Lease.  Mr. Wagner reached his conclusion regarding Dollar Tree's lost profits by considering estimated first-year sales after reopening the Dollar Tree store in the Shopping Center, along with historical ramp results for Bay Area Dollar Tree stores, cost of sales and operating expenses, and other relevant information detailed in his report.<br><br>Curriculum Vitae:  Found at Tab C in his expert report.<br><br>Service of Expert Report on Opposing Counsel:  Previously completed. |
|---|---|